## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF DELAWARE

_____

|  |  |  |
|---|---|---|
| In Re: | ) | Chapter 7 |
|  | ) |  |
| DIAMONDHEAD CASINO | ) | C. A. No. 24-11354-JKS |
| CORPORATION, | ) |  |
|  | ) | RE: D.I. No. 47, 77 |
| ALLEGED DEBTOR. | ) |  |
|  | ) | Hearing Date: September 3, 2025 |
| _____ ) |  | @ 3 p.m. |

**REPLY OF THE ALLEGED DEBTOR, DIAMONDHEAD CASINO CORPORATION, IN SUPPORT OF ITS MOTION FOR A STAY OF THE COURT'S OPINION (D.I. 42) AND ORDER (D.I. 43) DATED JULY 30, 2025 AND ORDER (D.I. 45) DATED JULY 31, 2025, PENDING RESOLUTION OF THE APPEAL**

On August 13, 2025 the Alleged Debtor, Diamondhead Casino Corporation, ("Debtor" or the "Company") by and through undersigned counsel, moved for a stay of this Court's Opinion (D.I. 42), Order (D.I. 43) dated July 30, 2025 and Order (D.I. 45) dated July 31, 2025 (the "Motion").

Thereafter, the Court held a Status Conference on August 21, 2025. At that conference the Court set a hearing date for the Motion of September 3, 2025 at 3:00 p.m. Thereafter, on August 28, 2025 Petitioners filed their Omnibus Objection to all pending motions, including the Motion to stay.

1

This pleading responds only to Petitioner's Objection on the issue of the stay as set forth in their Omnibus Objection.  For ease of reference, the Roman numeral numbering on each of the following captions is the same as that used by Petitioners in their Omnibus Objection with respect to Debtor's Motion for a Stay.

## I.    THE BANKRUPTCY COURT IS THE PROPER FORUM FOR DIAMONDHEAD'S STAY MOTION TO BE HEARD AND HAS JURISDICTION TO DO SO.[1]

Petitioners argue that the Debtor had no authority to file the Motion due to the "divesture rule."  Petitioners contend that the divestiture rule preserves the integrity of the appeal process by avoiding the confusion that would occur if two courts considered the same matter at the same time.  However, the "divesture rule" is not a hard and fast jurisdictional rule.  It is instead a judicially fashioned rule meant to among other things, promote judicial economy.

> There are certainly good reasons for the divestiture rule. But to call it jurisdictional is a misnomer.38 Indeed, the Supreme Court itself - recognizing its "past sometimes-loose use of the word" - has acknowledged the need "to bring some discipline" to how it uses the term "jurisdiction."39 Perhaps a better construct, then, is to consider the divestiture rule one of comity or deference, rather than jurisdiction. As such, the divestiture rule is still an important doctrine [*11]  of judicial economy that courts must carefully consider and apply; it just doesn't speak to the power of a court to hear a matter.

---

[1] Counsel for Petitioners chastises Debtor's counsel for failing to file a supplemental pleading on the question of jurisdiction.  Counsel has looked at his notes from the scheduling conference and it appears that he may have misread the due date. I apologize to the Court and Counsel for doing so.

*Acute Inc. v. ECI Pharms. LLC* (*In re ECI Pharms. LLC*) (2025 Bankr. LEXIS 1232, *9)

In the Bankruptcy Court, one of the Petitioners, Mr. Emerson, misrepresented to the Court that he was an assignee of a Diamondhead debenture. He further misrepresented in an affidavit he submitted in the District Court that he was attaching a copy of the assignment to his affidavit. No such affidavit exists in that Court record. See, *Arneault, et al. v. Diamondhead Casino Corporation* (In the United States District Court for the District of Delaware (C.A. No. 1:16-cv-00989-LPS).

This issue is not pending before the District Court and there is therefore no threat that the District Court and the Bankruptcy Court will be considering it at the same time.

The issue was not raised in the Bankruptcy Court because Debtor was unaware of it at the time the petition was filed. As explained by Deborah Vitale, she only became aware of this following the evidentiary hearings and the submission of briefs in the case at bar. (See affidavit of Deborah A. Vitale D.I. - 49-7 at par. 17). Thus, only recently, after Debtor discovered this evidence, was it possible to bring this matter before the Court.

The rules of the Bankruptcy Court clearly permit a request for a stay in the Bankruptcy Court in the first instance. As prescribed by Bankruptcy Rule 8007:

> (1) *In General* . Ordinarily, a party must move first in the bankruptcy court for the following relief:
> (A) a stay of the bankruptcy court's judgment, order, or decree pending appeal…

*Federal Rules of Bankruptcy Procedure*, Section 8007(a)(1)(A)

Because this is new matter which the Court has not previously considered, it is appropriate for it to be heard in the first instance by the Bankruptcy Court. It is not yet an issue for the appellate court to consider. Indeed, the *Federal Rules of Bankruptcy Procedure*, Section 8007(b)(2)(A) require a movant to show that it would be impracticable to file a stay motion in the bankruptcy court before filing such a motion in the appellate court. Accordingly, the Motion is certainly appropriately filed in this Court.

It is important to note that, in terms of judicial efficiency, this is an issue which can and should be decided in the Bankruptcy Court in the first instance. First, if the Bankruptcy Court decides in favor of Debtor, the appeal may become unnecessary. Second, even if the Bankruptcy Court decides against Debtor, there would then be a full and complete record for the appellate court to review which would include all the issues. Third, whatever the outcome, there would be no instance at which both courts would be considering the same matter at the same time.

## II.    THE DEBTOR DOES NOT LACK STANDING

Petitioners claim that Debtor lacks the capacity to appeal the Court's rulings because a Chapter 7 Trustee has been appointed. As evidenced at trial, the

4

Petitioners goal was to get paid. Counsel for the petitioners admitted as much in his closing statements to the Court as did Mr. Arneault who testified that he did not take into account the stockholders or other creditors when the filing of the involuntary bankruptcy was authorized. Thus, the only party to speak for the Debtor as a whole and all of its constituent parties is the Company itself.

In addition, the Trustee's mission is to sell the Company or its assets. Analyzing the pleadings in the case below and determining whether an appeal is merited for the benefit of the Company as a whole is not within the purview of the Trustee's duties. Thus, if the President of the Debtor cannot authorize or pursue an appeal on behalf of the Company, then the decision of the Bankruptcy Court is essentially unappealable. That need not be the case in this instance.

First, the Trustee has not fired the President. Debtor has surmounted many regulatory hurdles and it has received permission to construct a casino at the Property owned by its subsidiary, Mississippi Gaming Corporation. Thus, as the Trustee perhaps recognizes, it will benefit the bankrupt estate if Ms. Vitale is kept on as the President, although subject to the instructions of the Trustee.

To date, Ms. Vitale has received no formal notice from the Trustee that she is no longer an officer of the Debtor. In addition, the Trustee has not filed an objection to the appeal she authorized on behalf of the Debtor.

5

Finally, the Debtor has not spent Company funds on the appeal.  Thus, the Debtor is not being damaged nor is it spending funds on the appeal.  Thus, there is no downside for the Company or the Trustee to permit the appeal to move forward.

## IV.    THE MOTIONS ARE NOT UNTIMELY

Petitioners characterize the Motions filed by Debtor as motions to dismiss and then argue that they are untimely.  In so doing, they overlook the fact that, to the extent they seek dismissal, the Motions are based on evidence that was unavailable to Petitioners at the time the Petition was filed.  Two issues are relevant here.

First, it was the conduct of the Petitioners who concealed the fact that there never was an assignment of debentures to Mr. Emerson.  Not only did Mr. Emerson claim that there was an assignment, he also represented that there was an actual document and then said it was attached to an affidavit he filed.  No such document has been found in the pleadings and Petitioners have not even attempted to explain either why it hasn't been produced or why they represented it was produced and actually attached to Mr. Emerson's affidavit when it was not.  Instead, they try to shift the blame to Debtor for not discovering their deception sooner.

Second, the fact that Ms. Vitale believed the representations made to her should not be held against her or the Debtor.  Neither she nor the Debtor should be penalized for doing so, nor should Petitioners be absolved of blame simply because their deception went undiscovered for years.

6

## VI.    THE MOTION FOR A STAY SHOULD BE GRANTED

The four factors to be considered in determining whether to grant a stay are:

> [W]hether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)

Petitioners rely on Bankruptcy Rule 8007 and cases such as *In re: Transworld Airlines, Inc.* 2001 WL 1820325 (Bankruptcy D. Delaware March 27, 2001) and *In re W.R. Grace & Co.* (D. Del. 2012) for the proposition that the granting of a stay is discretionary with the Court, that the movant in such cases has the burden of establishing that a stay is warranted.  They further contend that a stay is an extraordinary remedy.  The implication here is that such relief should only be granted in unusual circumstances where justice require it.  In fact, this is just such a case.

### a.  The Motion is Likely to Succeed on the Merits

The discovery, as previously discussed *infra*, that the debentures of Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA were never assigned to Mr. Emerson, even though it was represented that they were, presents an unusual and compelling reason for this Court to hit the pause button, so that it can get to the bottom of this issue.  Despite having ample opportunity to do so, Petitioners have yet to either produce an assignment to Mr. Emerson or to explain

why Mr. Emerson represented that he had filed an assignment in the prior District Court case when, in fact, no such assignment was filed.

In addition, prior to the filing of the Petition, Debtor had engaged Colliers, International, a large, well-respected firm to either sell the Mississippi Gaming property or to strike a deal to develop said property with Debtor. Colliers prepared two separate sets of marketing materials, one for each scenario. This marketing approach maximized the Debtor's value by presenting an alternative to just a sale of the land. Moreover, but for the Bankruptcy, the Debtor would have had time to deal with prospective purchasers and to craft a deal without the pressure of a looming auction.

In short, Colliers can still sell the Company or strike a deal with a purchaser of the Property. All its research has been done and its marketing materials prepared. Thus, the Debtor would not be wasting assets during the duration of the stay but would be actively marketing the property. Further, during a stay, Debtor's existence, its regulatory standing with the Securities and Exchange Commission, its shareholders' common stock, its employees' vested interest in the Company's Employee Stock Ownership Plan and the Company's standing with the Mississippi Gaming Commission would all be protected. If the Property is sold at auction, as the Trustee is apparently planning to do, there will be less opportunity to maximize the value of the Debtor by the use of two different sale alternatives.

### b. Debtor and its Stakeholders Will Suffer Irreparable Harm if Relief is not Granted

The trial record in this case is barren of Petitioners giving any consideration to any stakeholder in the Debtor, other than themselves. Petitioners are in a preferred position and stand to benefit fully however the assets of the Debtor are sold. As noted above, those stakeholders with less priority have much to lose if the debtor's sale price is not maximized. A stay would allow the Debtor to let Colliers finish the job it had already started and to avoid this result.

### c. The Issuance of the Stay Will Not Substantially Injure the Other Parties Interested in the Proceeding

Petitioners argue that a stay in the case would merely delay the inevitable sale of the Debtor's Property. They leave no room for a structured deal or for any other form of sale which could occur during a stay. An auction of the Property alone is the worst possible way to achieve a maximum return for the Company. Moreover, as stated above, Petitioners are in a preferred position and stand to benefit fully no matter how the assets of the Debtor are sold.

During any stay, the Company and the Property can be jointly marketed by Colliers and without the expenses of a Trustee or the duplication of the efforts and expenses already undertaken by Colliers. Moreover, this would give Mr. Slagle of Colliers needed leverage so that prospective buyers could not just wait until an auction took place. This could only benefit the stockholders and other creditors of

9

the Debtor.  In fact, if the Debtor is ultimately successful in its appeal or the motion to vacate, or if Ms. Vitale is successful in her appeal, the expenses incurred by the Trustee could well yield nothing of benefit to the Debtor.  Right now, the Debtor is not operating and has no paid employees, so its operating expenses are minimum.

### d. A Stay is in the Public Interest

As shown above, a stay would very well serve the public interest by actually maximizing the value of the Debtor and the Property.  Moreover, faith in the judicial system is integral to the judicial process.  The Petitioner's claim that there was an assignment of debentures, when in fact there was none is inimical to the smooth functioning of the judiciary system.  Petitioner's stonewalling on this issue and their refusal to explain what happened and how is not in the public interest. In this case, the public interest would be better served by a stay before moving forward with a sale based on the misrepresentations of the Petitioners with respect to the assignment of the debentures.

### e. A Bond is Not Necessary, But if One is Assessed it Should be Reasonable.

Petitioners and the Court are well aware that the Debtor has limited funds. Any bond in this case would have to come from the Company to protect the Company, a total *non-sequitur*.  Nonetheless, Petitioners seek a bond that would be prohibitively expensive based on accounting entries in the Company's 10-Q's and not on real expenditures by the Company.  Nor, does Petitioner's estimate take into

consideration the costs of placing the Company under the supervision of a trustee during the period of any stay.  A bond, if any, in this matter should be reasonable and based on realistic estimates of expenses.

## CONCLUSION

Based on the foregoing, Debtor respectfully requests that the Court grant Debtor's request for a stay.

Respectfully submitted,

BIGGS & BATTAGLIA
/s/ Robert D. Goldberg
Robert D. Goldberg (Delaware Bar ID #631)
921 N. Orange Street
Wilmington, DE  19899-1489
Telephone: (302) 655-9677
email: Goldberg@batlaw.com
Attorney for Diamondhead Casino
Corporation

Dated: September 2, 2025

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Reply was served

electronically, this 3rd day of September, 2025, on the following:

Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801

Bradford J. Sandler
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

/s/ Robert D. Goldberg
Robert D. Goldberg