UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | Chapter 7 |
| ) | |
| DIAMONDHEAD CASINO ) | C. A. No. 24-11354-JKS |
| CORPORATION, ) | |
| ) | RE: D.I. No. 47, 77 |
| ALLEGED DEBTOR. ) | |
| ) | Hearing Date: September 3, 2025 |
| ) | @ 3 p.m. |

**OBJECTION OF DEBORAH A. VITALE
TO TRUSTEE'S APPLICATION
TO EMPLOY MILLER COFFEY TATE LLP
AS ACCOUNTANTS AND BANKRUPTCY CONSULTANTS**

Deborah A. Vitale, ("Appellant"), an aggrieved party, creditor, and equity security holder, respectfully submits this objection to the Application of Chapter 7 Trustee, George L. Miller, to employ Miller Coffey Tate LLP ("MCT") as accountants and bankruptcy consultants (D.I. 65) and, as grounds therefore, states as follows:

**I.     Introduction**

The Trustee, George L. Miller, seeks to employ Miller Coffey Tate LLP ("MCT"), a firm he originally founded and in which he remains a principal. According to the Declaration of Mr. Homony, which was filed in support of the Application to employ MCT, the Trustee "is a partner" of MCT. However, the Declaration, fails to disclose the nature and extent of the Trustee's financial interest in MCT and, in particular, how the Trustee is compensated, including any compensation or profit-sharing which may be tied to business income which the Trustee generates for the firm.

This arrangement raises serious concerns. The Trustee, an experienced accountant and bankruptcy professional, stands to benefit directly from fees paid to MCT. In effect, he is hiring himself, an act that undermines the integrity of the estate administration.

The Trustee's fiduciary obligation is to maximize the value of the estate and minimize costs, fees and expenses. The retention of his own firm creates an incentive for the Trustee to unnecessarily incur and/or inflate fees. This proposed retention raises serious issues regarding self-dealing, conflicts of interest and breach of fiduciary duty to the estate. The Trustee's interests are aligned with those of his own firm, which has an interest in generating fees. The Trustee has no incentive to reduce accounting fees when he and his own firm are the beneficiaries of those fees. On the other hand, the creditors of the estate have an interest in minimizing fees. This actual conflict of interest compromises the neutrality of the Trustee and requires that the application be denied.

The integrity of the bankruptcy process demands independence and the avoidance of self-dealing and the appearance of impropriety. This is especially true in a case involving a small, publicly traded company, which did not file for bankruptcy, opposed Chapter 7, and has been forced into Chapter 7. The stockholder value and the entire investment of approximately 2,000 shareholders now rests in the hands of a Trustee they did not elect or choose. To them, the mere fact that the Trustee would even think of using his own accounting firm is troubling. Moreover, the creditors are watching anxiously as the Trustee, charged with getting them paid, is unnecessarily depleting the estate for his own benefit and that of his professional colleagues. Perceptions are important and the optics of this unnecessary self-dealing are unacceptable.

## II. Legal Standard

Under 11 U.S.C. §327(a), the Trustee may employ professional employees who do not represent an interest adverse to the estate and who are "disinterested persons." The Trustee, as a person in control of the Debtor corporation, is an "insider" under 11 U.S.C. §101(31)(B). Under 11 U.S.C. §101(14), an insider is not a "disinterested person." The MCT firm, by virtue of the Trustee's position with the firm, is an insider, too, and, therefore, is not a "disinterested person."

**Conflict of Interest and Lack of Disinterest**

The Trustee's affiliation with MCT creates an actual conflict of interest. The Trustee's obvious professional ties to his own firm and the financial benefits he would obtain from using his own firm totally undermines the neutrality required of a Trustee. Each and every use of the Trustee's own firm gives rise to ethical issues about self-enrichment at the expense of the estate. The fact that the MCT firm is financially connected to the Trustee creates a material, disqualifying conflict of interest.

**Appearance of Impropriety**

The Trustee's decision to hire his own firm only erodes public confidence in the bankruptcy process. In this case, where the Company did not initiate the Chapter 7, and where its shareholders are already skeptical of the process, such conduct invites justified suspicion. The Trustee's use of estate funds to hire his own firm raises questions about the very need for his firm's services in the first place and will destroy any confidence the shareholders might have had in the liquidation process. In addition, it is impossible to see how the Trustee's own employees could objectively question or evaluate Trustee conduct or estate-related decisions made by the Trustee.

**Alternative Professionals Available**

According to its website, MCT "is a full service independent accounting firm which provides services involving audits, reviews and compilations and corporate and individual income taxes." There are other firms, truly independent of the Trustee, that could perform the same services without raising any ethical concerns. Moreover, in this case, there is a ready and immediate alternative.

While the Debtor has a number of creditors, the Debtor's financial affairs and associated accounting are simply not complicated. The Debtor has no complex financial transactions or ongoing business operations which require any extensive review. The Debtor holds a valuable registration as a fully-reporting, publicly traded company with the Securities and Exchange Commission. Its subsidiary holds very valuable land for development, together with the entitlements that go with it. The Debtor has debentures and promissory notes. It has only one employee and no payroll to issue. It writes few checks and every payment made in the last ten years is fully documented and has been reviewed and/or audited by its outside auditors. There is little accounting-related material to be reviewed that a competent Trustee, who is also an accountant, could not review in a single day.[1]

Since 2020, the Debtor has used an unrelated, third-party accounting firm, recommended by its unrelated, third-party Public Company Accounting Oversight Board auditors. The outside firm, EMS Consulting Services, LLC, charges $200 per hour. This firm has prepared all financial

---

[1] The Debtor is a development stage company whose major day-to-day activities related primarily to legal matters, including corporate matters, deal-related negotiations, due diligence and documentation, shareholder relations, SEC-related filings, federal, state and local government relations and issues, regional casino-related issues, environmental issues, engineering, water, electrical, and waste-related issues, entitlements, litigation matters, and property-related matters.

statements for the Forms 10-K and 10-Q filed for the periods ending December 31, 2020 to date. It has worked with the Company's outside auditors since 2020 to prepare the Form 10-K's and Form 10-Q's filed by the Company. The Company has never had a problem with these filings with the Securities and Exchange Commission, FINRA, or any other federal or state authority.

The EMS firm is intimately familiar with the Debtor's history, organization, financial affairs, bank accounts, debt instruments, including debentures and promissory notes, operating expenses, payables, receivables, taxes, and assets and liabilities. The retention of this firm would eliminate the wholly unnecessary, and significant expense, of having another accounting firm learn what the outside accountant already knows. This firm filed all federal tax returns for the Company for the years 2016 through 2023. Moreover, this firm charges $200 per hour for its accounting services.

Inasmuch as the Trustee has a duty to maximize the estate, avoid the appearance of impropriety, and avoid unnecessary costs, fees and expenses, the Trustee should have no objection to using this firm.

### III.   Conclusion

For the foregoing reasons, the undersigned respectfully requests that the Court deny the Trustee's Application to employ Miller Coffey Tate LLP and, instead, retain EMS Consulting Services, LLC or, alternatively, another truly independent firm.

Dated:  September 2, 2025

Respectfully submitted,
/s/ Deborah A. Vitale
Deborah A. Vitale
1866 Carpenter Road
Alexandria, VA 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, Objection of Deborah A. Vitale to Trustee's Application to Employ Miller Coffey Tate LLP as Accountants and Bankruptcy Consultants, was served, via United States mail, postage prepaid, this 2nd day of September, 2025, on the following:

Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801

Robert D. Goldberg
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE 19899-1489

Bradford J. Sandler
Pacholski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, DE 19801

George L. Miller
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd. #950
Philadelphia, PA 19103

/s/ Deborah Vitale
Deborah Vitale