**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| DIAMONDHEAD CASINO | ) | C. A. No. 24-11354-JKS |
| CORPORATION, | ) | |
| | ) | RE: D.I. No. 47, 77 |
| ALLEGED DEBTOR. | ) | |
| | ) | Hearing Date: September 3, 2025 |
| | ) | @ 3 p.m. |

RECEIVED
2025 SEP -2  AM 10: 51
CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

**REPLY OF DEBORAH A. VITALE
TO PETITONERING CREDITIORS' OMNIBUS OBJECTION TO
MOTION FOR STAY PENDING APPEAL**

Deborah A. Vitale, ("Appellant"), an aggrieved party, creditor, equity security holder, and Trustee of the Europa Cruises Corporation Employee Stock Ownership Plan (ESOP), respectfully submits this Reply to the Petitioning Creditors' Omnibus Objection to Motion for Stay Pending Appeal. (D.I. 77) and, as grounds therefore, states as follows:

## I.        Introduction

The Debtor and Appellant have timely appealed the Court's Opinion (D.I. 42) and Order (D.I. 43) dated July 30, 2025 and its Order (D.I. 45) dated July 31, 2025.  On August 13, 2025, to preserve the status quo and prevent irreparable harm, the Debtor and Appellant filed motions to stay the Opinion (D.I. 42) and Order (D.I. 43) dated July 30, 2025 and the Order (D.I. 45) dated July 31, 2025, pending resolution of the appeal. On August 28, 2025, the Petitioning Creditors filed their Omnibus Objection to the motions filed, including the motions for a stay. The hearing on the motion for a stay was originally set for October 7, 2025. On August 21, 2025, the Court advanced the hearing date on the motion for a stay to September 3, 2025. This Reply addresses only the Petitioning Creditors' Omnibus Objection to Motion for Stay Pending Appeal.

1

## II.    Argument

### A.    The Stay is Warranted-Now More Than Ever

The Petitioners argue that a stay is unwarranted. Yet, their own filings underscore the urgency and need for preserving the status quo. No estate funds are currently being spent. The Petitioners, who warranted that they could hold their debentures for an indefinite period of time, face no material prejudice from a delay. In contrast, the Debtor is facing imminent liquidation and irreversible harm absent a stay. Indeed, counsel for the Trustee informed this Court at the status hearing on August 21, 2025, that the Trustee was already calling auctioneers. The Appellant, the ESOP, the shareholders, and the secured and unsecured creditors, many of whom are also shareholders, face imminent and total loss of millions of dollars in property value and millions of dollars in shareholder value.

### B.    The Petitioners' Fraud on Two Federal Courts Demands this Court's Intervention and an Immediate Stay of Proceedings

The Petitioners' August 28, 2025 Objection to the stay confirms that they perpetrated a fraud on two federal courts. The Petitioners make no attempt to deny the Debtor's contentions, nor could they. The unrebutted facts supporting the Debtor's allegations are found in the very files of two federal courts.

### C.    There Were No Assignments of any Debentures as Claimed

The Debtor alleged that the pleadings signed and filed by four attorneys in the United States District Court for the District of Delaware in 2016 and the Declaration signed by Mr. Emerson in the case, were false. The Debtor alleged that there was no Assignment of a debenture from the Debenture Holder, Millenium Trust Company **LLC**, Custodian FBO: J. Steven Emerson Roth IRA to the Plaintiff in that case, the J. Steven Emerson Roth **IRA**. Moreover, contrary to the

2

representations made to the Court in pleadings signed by the four attorneys and Mr. Emerson, there was no Assignment attached to the pleadings and Declarations as claimed.

The Petitioners do not deny this. They make no attempt to explain how an exhibit, which never even existed, is alleged to be attached to the pleadings. The Petitioners' defense is that it's all the Debtor's fault for not detecting the fraud sooner!  In fact, they are attempting to rely on payoff letters drafted in 2023, seven years *after* the fraud, to excuse their fraud on the court in 2016! The Petitioners' defense is legally and ethically untenable.

The Petitioners relied on the Consent Judgment obtained in the United States District Court for the District of Delaware to claim they were justified in filing a bankruptcy petition in this Court. "Here…Petitioning Creditors, …they've got a judgment against Diamondhead so, there's no prohibition for them operating under that, including Diamondhead Casino Corporation, into bankruptcy." (Tr.  1-16-25, at pp. 112-113) The Judgment on which Petitioners relied, as we now know, was procured by perpetrating a fraud on the District Court.

Using the fraudulently-procured Judgment, the Petitioners then claimed in *this* case that each of the Petitioners in this case had a Consent Judgment. The contention was false. The largest Petitioner herein was not even a Plaintiff in the District Court case. Now, thanks to the repeated, false representations of the Petitioners, this Court has issued multiple findings of fact that are clearly erroneous.

**D.  The Largest Named Petitioner in this Case has No Debenture**

The unrebutted evidence establishes, based on Petitioners' own exhibits filed with this Court, that the largest Petitioner in this case, *J. Steven Emerson as Successor to Steven Emerson Roth IRA*, is not a debenture holder. This named Petitioner had no debentures on which to base the largest claim in the principal amount of $460,000. This Petitioner had no judgment as claimed in this case and had no valid assignment of any debenture. Incredibly, the Petitioners' argument is that, while they filed a false Petition in this Court, somehow it was the Debtor's fault for failing to catch the fraud within twenty-one days of the date the summons was served on the Debtor (D.I. 77, pp. 12-13, ¶53). Therefore, this Court should just ignore their fraud and move on as if nothing untoward happened here.

The Petitioners fraud did not end with the original filing of the Petition. After the Debtor filed a Motion to Dismiss the Petition (D.I. 9), the Petitioners filed an Answering Brief in Opposition to the Motion to Dismiss (D.I. 11). Instead of correcting their initial fraud, they committed another one. They submitted the Declaration of Mr. Arneault (D.I. 12), falsely claiming that each Petitioner had a debenture and that the debentures, including the non-existent debentures, were attached as Exhibit B to Mr. Arneault's Declaration.

Apparently, two prior frauds on two courts were not enough. Incredibly, in their Omnibus Objection, filed on *August 28, 2025*, the Petitioners again claim that each of the Petitioners are holders of debentures. (D.I. 77, p. 5, par. 18) ("The Petitioning Creditors, including the **IRA, are each holders** of collateralized convertible senior debentures…")(Emphasis added.). The statement is patently false. The fraud on this Court just continues.

The IRA is not and never has been a debenture holder. The IRA is not even a Petitioner in *this* case. The IRA was a Plaintiff in the first federal case. As the Petitioners' own Exhibit B to Mr. Arneault's Declaration proves, the largest Petitioner in this case, *J. Steven Emerson as Successor*

*to Steven Emerson Roth IRA*, is also not a Debenture Holder. At this point, there can be no excuse whatsoever for these continuing false statements of fact. Counsel for the Petitioners is deliberately attempting to confuse this Court.

The Petitioners do not even attempt to address the civil and criminal securities issues raised by the Debtor. The Petitioners never produced copies of any Assignments because there were none. They never produced copies of any Opinions of counsel because there were none. Apparently, they just declared another entity or person to be the new holder of a debenture whenever they needed to do so to manipulate jurisdiction, or for some tax or other reason. These securities could not be transferred without an Opinion of counsel acceptable to the Company. Any attempted transfer of a debenture without an Opinion of counsel was a clear violation of the Securities Act of 1933 by those involved, including Mr. Wurst, who served as *securities counsel* to the Debtor and drafted the Debentures![1]

A bankruptcy court is a court of equity. It cannot possibly put its stamp of approval on what happened here and the continuing fraud on this Court. Any contention that the Petitioners came into this Court with clean hands has been laid to rest. Any contention the Petitioners proceeded in good faith or are proceeding in good faith even now, cannot stand.

## THE MOTION FOR A STAY SHOULD BE GRANTED GIVEN THE FRAUDULENT CONDUCT OF PETITIONERS AND THEIR ATTORNEYS

The Debtor gave Petitioners the courtesy of producing the Assignments which obviously never existed or coming forward with an explanation to explain to this Court how this could have

---

[1] Mr. Wurst served as securities counsel to the Debtor in 2014 for the purpose of complying with the Blue Sky state laws which required that certain documents be filed in states where the securities were being offered and sold. His conflicts of interest in representing *every person and every entity* involved in this case, including the *Debtor,* likely led to this fiasco. Even now, the Petitioners all have the same attorney.

possibly happened, not once, but twice. This Court has not ruled on this matter or issued any Order addressing this matter yet. Obviously, if this case is not dismissed, these frauds and the continuing fraud on this Court will become the primary issue on appeal.

A stay pending appeal may be an extraordinary remedy, but this is an extraordinary situation. It involves a systemic, continuing fraud, conflicts of interest, and an abuse of process. A false claim for $460,000 in principal, exclusive of interest and attorneys' fees, is no small fraud. Moreover, the fraud is not confined to this Court. It is a fraud on a publicly-traded company, its other creditors, its former employees, its shareholders, and the investing public, who bought and sold stock based on this fraudulent filing. A stay pending appeal is not only justified, the situation demands it.

An Involuntary Chapter 7 Petition can be devastating for any company and especially a small, publicly traded company. Bankruptcy courts must be able to rely on attorneys to conduct a careful examination of the basis for claims filed, especially in an Involuntary Chapter 7 case. That's why there are enormous risks attached to filing an Involuntary Chapter 7 Petition against a company. The filing of a false Chapter 7 Involuntary Petition simply cannot be tolerated. Besides the catastrophic consequences to the Debtor, false filings, if not punished, only erode trust in the whole bankruptcy system. Bankruptcy courts simply cannot allow false Involuntary Chapter 7 Petitions to be filed with impunity. The Petitioners herein assumed the well-known risks of filing a false Involuntary Chapter 7 Involuntary Petition and clearly deserve to face them here.

## A. Likelihood of Success on the Merits

The Petitioners concede that the most critical factors in considering a stay are: (1) likelihood of success and (2) irreparable harm. Thanks to the misrepresentations made by counsel

for Petitioners to the Court throughout this case, the Debtor already has strong grounds for appeal. Assuming, *arguendo*, this Court does not dismiss this case, the frauds involved here would completely tip the scales in favor of the Appellant. If this Court declines to dismiss this case, the Debtor will have exceptional grounds for appeal and an extremely high probability of success on the merits. To find otherwise requires this Court to conclude that an appellate court would condone a blatant fraud on two federal courts and a continuing fraud on this court.

### B.  Irreparable Harm

The harm to Debtor is neither speculative nor remote, but actual and imminent. The Debtor's stock price has collapsed to less than one cent, erasing millions in shareholder value. Trading has been halted by some brokerage firms. It cost the Petitioners a mere $338 to wipe out millions of dollars of shareholder value for over 2,000 shareholders and former employees. The Debtor's reputation in Mississippi has been ruined and getting it back will be irreversible absent a stay. The Debtor's registration with the Securities and Exchange Commission is at risk. Once lost, it may never be reinstated. The officers and directors have already suffered damage to their reputations which can only lead to further embarrassment and loss of future employment and opportunities. The integrity and reputation of this Court and the bankruptcy courts is at risk. There will be no way to undo this damage if a stay is not granted. The Trustee has not even begun to liquidate the Debtor's assets and already, potential purchasers and investors are taking advantage of the situation. A stay is clearly warranted.

Ironically, a stay is in the best interest of Petitioners and their counsel given their extraordinary exposure to liability, ethical breaches and serious conflicts of interest in this case. It is hard to believe that Mr. Emerson, who signed a Declaration attesting to a document that didn't even exist, does not have independent counsel. Likewise, it is hard to believe that Mr. Arneault,

who also signed a Declaration stating that he was attaching a document to his Declaration that didn't even exist, does not have independent counsel. Their financial exposure here is enormous.

Finally, the Petitioners' conduct falls within the scope of bankruptcy fraud as defined by 18 U.S.C. §157, which was amended, effective January 2024, before the Petition herein was filed, and explicitly includes "a fraudulent involuntary petition under section 303." (18 U.S.C. §157(1). The statute applies to any scheme or artifice to defraud using the bankruptcy process to execute the scheme. The statute outlines specific actions that constitute the crime including making "a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, **at any time before or after filing of the petition**." (Emphasis added.) Thus, the statute applies regardless of whether the Involuntary Petition has been granted and regardless of whether the petitioners met the technical procedural requirements for filing under Section 303.

Here, the Petitioners filed an Involuntary Chapter 7 Petition, based in large part, on a debenture that did not exist and, obviously, was not attached to the Arneault Declaration as was falsely represented to this Court. The Petitioners' false statements throughout this bankruptcy case were central to the largest claim filed and the legitimacy of the case. The fact that counsel continues to claim that debentures exist for an IRA and the largest Petitioner herein, when no such debentures exist, is illustrative of the repeated false representations made to the Court throughout this case. There can be no contention here that what occurred was a mere mistake. The pleadings prove this was a calculated, long-running, and continuing fraud.

A stay is not only justified, it is imperative. This Court must not allow its equitable powers to be abused through false filings. The integrity of the entire bankruptcy system demands intervention and the imposition of a stay. The Appellant respectfully urges the Court to stay all proceedings pending full adjudication of these issues on appeal.

8

## Conclusion

For the foregoing reasons, the undersigned respectfully requests that the Court stay its Opinion and Orders pending resolution of the appeal.

Dated:  September 2, 2025

Respectfully submitted,
/s/ Deborah A. Vitale
   Deborah A. Vitale
1866 Carpenter Road
Alexandria, VA 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com
Appellant Pro Se

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, was served, via United States mail,

postage prepaid, this 2nd day of September, 2025, on the following:


Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801

Robert D. Goldberg
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE  19899-1489

Bradford J. Sandler
Pacholski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, DE 19801

George L. Miller
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd. #950
Philadelphia, PA 19103


/s/ Deborah Vitale
Deborah Vitale