**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 7 |
| DIAMONDHEAD CASINO CORPORATION, | Case No. 24-11354 (JKS) |
| Debtor. |  |

**MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ORDERS**
**(A) ESTABLISHING BIDDING PROCEDURES IN CONNECTION WITH SALE OF**
**DEBTOR'S ASSETS AND AUTHORIZING TRUSTEE'S ABILITY TO SELECT**
**STALKING HORSE AND PROVIDE BID PROTECTIONS; (B) APPROVING THE**
**FORM AND MANNER OF NOTICES; (C) SCHEDULING A SALE HEARING;**
**(D) AUTHORIZING THE SALE OF THE ASSETS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, INTERESTS, AND ENCUMBRANCES;**
**AND (E) GRANTING RELATED RELIEF**

George L. Miller, chapter 7 trustee (the "Trustee" or "Seller") to the estate of the

above-captioned debtor (the "Debtor"), hereby files this motion (the "Motion") for the entry of

orders:  (a) establishing bidding procedures (the "Bid Procedures") in connection with a sale or

sales (collectively, the "Sale") of substantially all of the Debtor's assets (the "Assets"), free and

clear of all liens, claims, interests, and encumbrances, and authorizing the Trustee's ability to select

a stalking horse bidder and provide bid protections, in his business judgment; (b) approving the

form and manner of notices of the Sale and Bid Procedures; (c) scheduling a hearing to consider

the approval of the Sale (the "Sale Hearing"); (d) authorizing the Sale of the Assets free and clear

of all liens, claims, interests, and encumbrances, subject to higher or otherwise better offers; and

(e) granting related relief.  In support of the Motion, the Trustee respectfully represents as follows:

## Jurisdiction

1.      The United States District Court for the District of Delaware has jurisdiction

over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy

Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

### Background

4.     On June 12, 2024 (the "Petition Date"), creditors Edson Arneault, Kathleen and James Devlin, Emerson Partners, J. Steven Emerson as Successor to Steven Emerson Roth IRA, J. Steven Emerson, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, and Barry and Irene Stark (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor.

5.     On July 18, 2024, the Debtor filed the *Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to a Chapter 11* [Docket No. 9] (the "Motion to Dismiss").

6.      On July 30, 2025, the Court entered an opinion [Docket No. 42] and order [Docket No. 43] (the "MTD Order") denying the Debtor's Motion to Dismiss.  On July 31, 2025, the Court entered the *Order for Relief in an Involuntary Case* [Docket No. 45].

7.      The Trustee was appointed in these cases on August 1, 2025 [Docket No. 46] and is so qualified and acting.

### The Proposed Asset Purchase Agreement

8.      In accordance with Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1, the relevant terms of the proposed form of Sale Agreement are as follows:[1]

- Proposed Buyer.  To be determined.

- Sellers.  George L. Miller, chapter 7 trustee to the Debtor's estate.

- Purchase Price.  To be determined.

- Asset Acquisition.  The Assets consist of: (a) the Debtor's interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC"), the fee owner of certain real property consisting of an approximate 400-acre undeveloped property known as and located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (including any related or contiguous parcels, all improvements now or hereafter made, and all appurtenances thereto, the "Property"); and (b) a residential lot in Diamondhead, Mississippi.[2]

- Assumed Liabilities.  N/A

- Excluded Assets.  N/A

- Excluded Liabilities.  N/A

- Court Orders.  The Trustee is seeking entry of the proposed Bid Procedures Order on or before **November 7, 2025**.

---

[1]  A copy of the form of APA is attached hereto as Exhibit A and is incorporated herein by reference.

[2] The Trustee may sell the Assets separately in one or more transactions.  In addition, the Sale may include a transaction structured as a sale of equity of the Debtor's wholly-owned subsidiary, MGC, the fee owner of the Property, and the Trustee reserves all rights and discretion with respect to the nature of the Sale and structure of the transaction.

- Bidding Protections.  The Trustee requests authority to award any stalking horse purchaser with bidding protections, including in the form of a breakup fee and/or expense reimbursement, which shall not exceed 3% of the Purchase Price, subject to the Stalking Horse Selection Notice and objection procedures below.

- Deposit.  10% of any proposed Purchase Price.

- Requested Findings as to Successor Liability.  For the reasons discussed below, pursuant to sections 363(f) and 105(a) of the Bankruptcy Code, the Trustee is seeking to sell the Assets free and clear of all liens, claims, and encumbrances.

- Relief from Bankruptcy Rule 6004(h).  The Trustee is seeking a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) for the reasons discussed below.

**Proposed Sale and Bid Procedures and Sale Timeline**

9.      The Trustee believes that it is in the best interests of the estate and the Debtor's creditors to pursue the Sale under sections 105, 363, and 365 of the Bankruptcy Code. In connection with the Sale of the Assets, the Trustee believes that conducting an auction (the "Auction") in accordance with the Bid Procedures among Potential Bidders (as defined below) to obtain the highest or otherwise best offer will maximize the value of the estate.

10.      The Trustee's proposed timeline for this process reflects the best option available for the Trustee to maximize the value of the Assets under the circumstances and avoid incurring unnecessary administrative expense costs.  The Trustee proposes the following bid procedures and sale timeline:

| Date | Event |
|---|---|
| **On or before November 7, 2025** | Hearing on Motion |
| **January 7, 2026 at 4:00 p.m. (ET)** | Bid Deadline for Qualified Bids |
| **January 9, 2026 at 4:00 p.m. (ET)** | Notification of Qualified Bidders |
| **January 12, 2026 at 4:00 p.m. (ET)** | Deadline for Selection of Stalking Horse Bidder |
| **January 20, 2026 at 4:00 p.m. (ET)** | Objection Deadline for Selection of Stalking Horse Bidder |
| **January 22, 2026 at 10:00 a.m. (ET)** | Auction |
| **January 29, 2026 at 4:00 p.m. (ET)** | Deadline to file any objections to Sale |
| **February 5, 2026 at 10:00 a.m. (ET)** | Sale Hearing |

11.     In accordance with Local Bankruptcy Rule 6004-1, the material aspects of the proposed Bid Procedures[3] are set forth below.

**A.     Proposed Bid Procedures**

**i.     The Bidding Process**

12.     The Trustee will:  (i) determine whether any person is a Qualified Bidder (as defined below), (ii) coordinate the efforts of Potential Bidders in conducting their due diligence investigations of the Assets, (iii) receive offers from Qualified Bidders, and (iv) negotiate any offers made to purchase the Assets (collectively, the "<u>Bidding Process</u>").  Any person who wishes to participate in the Bidding Process must be a Potential Bidder, and any person who wishes to participate in the Auction must be a Qualified Bidder.

13.     The Trustee will have the right to adopt such other rules for the Bidding Process that, after consultation with his estate retained professionals, Pachulski Stang Ziehl & Jones, LLP and Miller Coffey Tate LLP, better promote the goals of the Bidding Process.

**ii.     Participation Requirements**

14.     To participate in the Bidding Process and obtain access to the due diligence materials, the Trustee proposes that each Potential Bidder must contact the Trustee to request such due diligence materials (a "<u>Potential Bidder</u>").

15.     To become a Qualified Bidder, each Potential Bidder must deliver to the Trustee and his counsel a "<u>Qualified Bid</u>" on or before **January 7, 2026, at 4:00 p.m. (ET)** (the "<u>Bid Deadline</u>").  To constitute a Qualified Bid, a bid must:

---

[3]  The Bid Procedures are attached as <u>Exhibit 1</u> to the proposed Bid Procedures Order, which itself is attached as **Exhibit B** to this Motion.  The summary of the Bid Procedures provided herein is qualified in its entirety by the proposed Bid Procedures Order.

a.  be in writing;

b.  provide an irrevocable offer in the form of asset purchase agreement ("<u>APA</u>") provided by the Trustee;

c.  offering to pay a price equal to or greater than (i) the Stalking Horse Overbid in the event that a Stalking Horse Selection Notice has been filed prior to the Bid Deadline with respect to the relevant Assets, or (ii) an amount that the Trustee determines constitutes a fair and adequate price, the acceptance of which would be in the best interests of the estate (the "<u>Minimum Bid</u>");

d.  provide a clean version of the asset purchase agreement containing all of the requested changes described above executed by the Potential Bidder;

1.  The Trustee may conclude, in his reasonable business judgment, that any such changes are detrimental to creditors and/or the estate and, based on such determination, decline to designate the Potential Bidder and the Potential Bid as qualified to participate in the Auction, unless such requested changes are acceptably modified or are eliminated.

2.  The asset purchase agreement shall not include any financing, due diligence, or other contingencies and must, by its terms, remain open and binding on the Potential Bidder until the conclusion of the Auction. If a Potential Bidder and a Potential Bid are deemed qualified to participate in the Auction, and the Auction concludes with such Qualified Bid being determined by the Trustee, in his reasonable business judgment as the highest or otherwise best received at the Auction ("<u>Prevailing Bid</u>"), the asset purchase agreement with respect to such Qualifying Bid, by its terms, shall remain binding upon the Prevailing Bidder submitting such Qualified Bid.

3.  If the Auction concludes with the Qualified Bid being determined by the Trustee, in his reasonable business judgment, to be the second highest or otherwise best, the asset purchase agreement, by its terms, shall remain binding as the backup bid ("<u>Backup Bid</u>") until the closing of a transaction. If the Prevailing Bidder fails to timely close the transaction pursuant to the terms of the Prevailing Bid asset purchase agreement, the Trustee may, in his reasonable business judgment, elect to deem the Backup Bid as the Prevailing Bid and the Backup Bidder as the Prevailing Bidder and such bidder shall be obligated to close the

transaction within seven (7) business days following such election pursuant to the terms of its Backup Bid, or such later time as the Trustee and the Backup Bidder may agree.  If a Qualified Bid is neither the Prevailing Bid, nor the Backup Bid, the asset purchase agreement, by its terms, shall cease to be binding and any deposit shall be returned to the Qualified Bidder as soon as practicable following the conclusion of the Auction.

e.    Provide a clean and redline version of the proposed sale order to approve the APA, marked to show all changes requested by the Potential Bidder from the form of sale order attached to this Motion as Exhibit D.

f.    include a good faith deposit (the "Deposit") in an amount equal to ten percent (10%) of the Purchase Price offered to purchase the Asset, which Deposit must be submitted in the form of a certified or bank check (or other form acceptable to the Trustee) payable to the order of the Trustee.   All Deposits will be held in a segregated account by the Trustee until no later than ten (10) days after the Auction and thereafter returned to the respective bidders in accordance with these Bid Procedures, unless the bidder has been selected as the successful bidder or, in the case of the Backup Bidder the Deposit shall be held by the Trustee until the Closing of the Sale to the Prevailing Bidder;

g.    fully disclose the identity of the Potential Bidder and the Potential Bidder's sponsors ("Sponsors") (if any), and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction. A Qualified Bid also shall identify if any of the principals, investors, officers or directors of the Potential Bidder are principals, investors, officers, directors or employees the Debtor or the Trustee;

h.    contain written evidence reasonably acceptable to the Trustee indicating that the Potential Bidder is authorized to submit a bid;

i.    not contain a request for any break-up fee, termination fee, expense reimbursement or similar type of payment (unless the Trustee determines to select the potential Bid as a Stalking Horse Bid). Moreover, neither the tendering of a Potential Bid, nor the determination  that a Potential Bid is a Qualified Bid, shall entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Notwithstanding the foregoing, by this Motion the Trustee requests authority to award any stalking horse purchaser with bidding protections, including in the form of a breakup fee and/or expense reimbursement, which

shall not exceed 3% of the Purchase Price, subject to the Stalking Horse Selection Notice and objection procedures below.

j.    Contain a written statement that the bidder (a) has not and will not engage in any collusion with respect to the bidding process, and (b) its bid is a good faith *bona fide* offer that it intends to consummate if selected as the Prevailing Bidder.

The Trustee, in his reasonable discretion, may agree to waive some or all of the requirements set forth above. Each Potential Bidder shall comply with all reasonable requests for information and access by the Trustee or his advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale.

### iii.    Notification of Qualified Bidders

16.    The Trustee shall identify and notify the Qualified Bidders of their selection on or before **January 9, 2026 at 4:00 p.m. (ET).**

17.    A "Qualified Bidder" under the Bid Procedures is a Potential Bidder who, no later than the Bid Deadline, delivers the Potential Bid Package to the Trustee and counsel that satisfies the requirements for a "Qualified Bid" under the Bid Procedures.  The Trustee shall determine whether a Potential Bidder has submitted a bid that qualifies as a Qualified Bid.

### iv.    Minimum Overbid

18.    The Minimum Overbid proposed by the Potential Bid can include only cash and the aggregate consideration of the Potential Bid must equal or exceed the Initial Bid plus the required Overbid increment of $250,000, and in the event a Stalking Horse Bidder is selected, the Stalking Horse Overbid or such other amount as the Trustee may determine in his business judgment (the "Minimum Overbid").

### V.    Due Diligence

19.    The Trustee shall provide reasonable access to due diligence materials for the Assets to each Potential Bidder.  The Trustee may designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence

access from such bidders.  The Trustee shall not be obligated to furnish any due diligence information after the Bid Deadline.  Potential Bidders acknowledge that the sale of the Assets is a sale "as is," "where is," and with all faults.  Neither the Trustee nor any of his representatives will be obligated to furnish any information relating to the Assets to any person except to a Potential Bidder.  Potential Bidders will be advised to exercise their own judgment and discretion before relying on any information regarding the Assets provided by anyone other than the Trustee or his representatives.

**B.**     **Stalking Horse Selection and Bid Protections**

20.     The Bid Procedures contemplate that the Trustee may, in his discretion, solicit a "stalking horse" bid (a "Stalking Horse Bid," and any agreement governing the Stalking Horse Bid that memorializes the proposed transaction by and between the Stalking Horse Bidder and the Trustee for the Assets, a "Stalking Horse Agreement"), which will be binding on such bidder (a "Stalking Horse Bidder") and will set the floor for all Qualified Bids for applicable Assets at the Auction.

21.     The Trustee seeks authority to provide any Stalking Horse Bidder with customary bid protections as may be agreed between the Trustee and the Stalking Horse Bidder, in the event the Stalking Horse Bid is contingent on such Bid Protections being awarded; *provided, however*, that the Bid Protections in the aggregate shall be no more than 3% of the cash amount of any sale (collectively, the "Bid Protections").

22.     The Trustee proposes that, no later than one business day after the selection of a Stalking Horse Bidder (if such selection is made), the Trustee will file with the Court, serve via email (if available) on the Objection Notice Parties (as defined below), a notice that contains information about the Stalking Horse Bidder, such Stalking Horse Bidder's bid (each such bid,

a "Stalking Horse Bid"), and attaches the proposed Stalking Horse Agreement (the "Stalking Horse Selection Notice").

23.    The Trustee expressly reserves the right to designate a Stalking Horse Bidder in accordance with the exercise of his business judgment and will file the Stalking Horse Selection Notice on or before **January 12, 2026 at 4:00 p.m. (ET)**.

24.    The Objection Notice Parties shall be:  (a) the Office of the United States Trustee; (b) all persons and entities known by the Trustee to have asserted any lien, claim, interest or encumbrance in the Assets (for whom identifying information and addresses are available to the Trustee); and (c) all parties that have filed a notice of appearance and request for service pursuant to Bankruptcy Rule 2002.  Parties in interest may file an objection to the designation of the Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including to any of the proposed Bid Protections (each, a "Stalking Horse Objection") on or before **January 20, 2026 at 4:00 p.m. (ET)**, or such other date as ordered by the Court, after service of the Notice of Stalking Horse Bidder (the "Stalking Horse Objection Deadline").  If a timely Stalking Horse Objection is filed and served in accordance with the Bidding Procedures, the proposed designation of a Stalking Horse Bidder and Stalking Horse Bid Protections provided for under such agreement will not be deemed approved until either the Stalking Horse Objection is resolved by agreement of the objecting party and the Trustee or by order of the Court.  If no timely Stalking Horse Objection is filed and served with respect to a Stalking Horse Bid in accordance with the Bidding Procedures, the Bid Protections contemplated by such bid shall be deemed approved without further order of the Court upon the expiration of the Stalking Horse Objection Deadline and payable in accordance with, and subject to the terms of, any Stalking Horse Agreement.  Except as expressly provided

for herein or in any Stalking Horse Agreement, no other termination payments are authorized or permitted under this Order.

25.     With respect to the Assets subject to an accepted Stalking Horse Bid, all Potential Bidders on the Assets will be required to submit a bid in the amount of at least the sum of (i) the Stalking Horse Bid, (ii) any break-up fee and/or expense reimbursement, if and to the extent approved by prior order of the Court prior to the Bid Deadline, and (iii) a reasonable minimum overbid amount to be calculated by the Trustee, in his reasonable discretion, based on the aggregate price set forth in the Stalking Horse Bid (clauses (i) through (iii), the "Stalking Horse Overbid") in order to meet the criteria of a Qualified Bid for the Assets.

26.     In the event that no Stalking Horse Bid is submitted with respect to the Assets, the Trustee will select the highest or otherwise best Qualified Bid for the Assets (the "Starting Bid").  In no event shall Qualified Bidders that submit a Starting Bid be entitled to seek any break-up fee or expense reimbursement.

**C.      Representations, Warranties, and Covenants**

27.     The Sale of the Assets shall be on an as-is, where-is basis, and subject to such limited representations, warranties, and covenants as set forth in the APA.  Except as otherwise provided in any APA, all of the Debtor's rights, title, and interests in and to the Assets shall be sold free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, with such liens, claims, interests, or encumbrances to attach to the net proceeds (if any) of the Sale of the Assets.

28.     Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it relied solely upon its own independent review, investigation, and/or inspection of

any documents and/or Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bid Procedures or, as to the Prevailing Bidder, in its own purchase agreement and that the Assets are being sold as is, where is, and with all faults.  The Trustee is a post-bankruptcy appointed chapter 7 trustee who has no direct knowledge of, or involvement in, the affairs of the Debtor prior to the Conversion Date, and, as such, any information provided to the Trustee by the Debtor and by the Trustee to the Potential Bidders and the sale of the Assets is a sale "as is," "where is," and with all faults.  The Trustee disclaims any representations and warranties with respect to the accurateness or completeness of any information regarding the Assets.

**D.      Auction**

29.      After all bids of the Potential Bidders have been received, the Trustee shall determine if any of them constitutes a Qualified Bid and which, among all of the Qualified Bids constitutes the highest or otherwise best bid.  The Trustee shall communicate his determination to all Qualified Bidders not later than **4:00 p.m. (ET) the day before the start of the Auction.**  The Trustee may disregard any Potential Bids received after the Bid Deadline and any such bids shall be deemed not to be Qualified Bids.

30.      Thereafter, the Trustee will conduct an Auction.  The Auction will be conducted utilizing the real estate broker's Ten-X online platform, or, if necessary, either in person at Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19899, telephonically and/or via Zoom videoconference on **January 22, 2026, at 10:00 a.m. (ET)** or such later time or other place as the Trustee may determine.  The Trustee will distribute instructions for

participation to Qualified Bidders in advance of any Auction.  The Auction shall be governed by the following procedures, set forth in the Bid Procedures:

a.     Attendance at and Participation in the Auction.

In addition to the Trustee, his representatives and advisors, the only parties (and their respective representatives and advisors) eligible to participate in the Auction shall be: (i) those parties who have been selected as Qualified Bidders; (ii) the Office of the United States Trustee; and (iii) any creditor who requests to listen telephonically on or before three (3) business days before the Auction.

b.     The Auction Process.

1.     The Trustee shall conduct the Auction.

A.     The Trustee and his professionals shall direct and preside over the Auction.  At the commencement of the Auction bidding shall commence with the highest or otherwise best Qualified Bid ("Initial Bid"), as determined by the Trustee, in his reasonable business judgment.  The foregoing determination shall take into account any factors the Trustee reasonably deems relevant to the value and benefit to the Debtor's estate of the Qualified Bid, including, inter alia, the following:  (A) the amount and nature of the consideration; (B) the ability of the Qualified Bidder to timely close the transaction; (C) the proposed closing date; and (D) the likelihood, extent and impact of any potential delays in closing (collectively the "Bid Criteria").  The Trustee or his representative will determine and announce the bidding order.  The Trustee or his representative will solicit an oral Bid from each Bidder in each round.  In the event that there are more than two Bidders, each Bidder must bid in its round of bidding or forfeit their standing in the Auction.   All Bids made following the Initial Bid shall be Overbids (as defined below), and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders.  The Trustee shall maintain a transcript of all Bids made and announced at the Auction, all Overbids and the Prevailing Bid.

B.  **Terms of Overbids**.  An "<u>Overbid</u>" is any bid made at the Auction's subsequent to the Trustee's announcement of the Initial Bid.  To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

    i.  <u>Minimum Overbid Increment</u>.  Each Overbid after the Initial Bid shall be made in increments of at least $250,000, plus, in the event a Stalking Horse Bidder is selected, the Stalking Horse Overbid, or such other amount as the Trustee may determine in his business judgment in excess of the prior bid (including any Bid Protections for the Stalking Horse Bid).

    ii.  <u>Remaining Terms are the Same as for Qualified Bids</u>.  Except as modified below, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Trustee accepts a higher or better Qualified Bid as an Overbid.

C.  <u>Consideration of Overbids</u>.  The Trustee reserves the right, in his reasonable business judgment, to vary the Bid Procedures prior to or after the Auction has commenced aimed at maximizing value to the Debtor's estate.  By way of example, and not by way of limitation, the Trustee may take breaks during the Auction to facilitate discussions between the Trustee and his representatives and advisors, as well as with individual bidders and their respective representatives and advisors; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Trustee with such additional evidence as the Trustee, in his reasonable business judgment, may require, that the Bidder has sufficient internal resources to consummate the proposed transaction at the prevailing Overbid amount.

D.  <u>Announcing Overbids</u>.  The Trustee shall announce at the Auction the material terms of each Overbid, the basis for the calculation of the total consideration

offered in each such Overbid, and the resulting benefit to the Debtor's estate based, among other things, on the Bid.

E.      Conditions To, and the Closing Of, the Auction.  The Auction shall continue until there is only one Qualified Bid that the Trustee determines, in his reasonable business judgment, is the highest or otherwise best Qualified Bid.   In making this decision, the Trustee shall consider the Bid Criteria. The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid.  Thereafter, the Trustee shall identify which Qualified Bidder, in the reasonable business judgment of the Trustee, has made the highest or otherwise best bid, as determined by, among other things, the Bid Criteria.   The Auction shall then be closed.  The Trustee retains the authority, in the exercise of his reasonable business judgment, not to move forward with any Prevailing Bid.

F.      Additional Procedures.  The Trustee may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g. and not by way of limitation, the amount of time to make subsequent overbids) for conducting the Auction.

G.      Consent to Jurisdiction as Condition to Bidding.  All Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the sale of the Property and the transaction and enforcement of the applicable asset purchase agreement.

## E.      Acceptance of Qualified Bids

31.      The Trustee shall sell the Assets for the highest or otherwise best bid received as determined by the Trustee pursuant to the Bid Procedures and approved by the Court. The Trustee's presentation to the Court for approval of a particular bid does not constitute the

Trustee's acceptance of the bid.  The Trustee will be deemed to have accepted a bid only when the bid has been approved pursuant to an order of the Court.

**F.      Sale Hearing**

32.      The Trustee requests that the Sale Hearing take place on **February 5, 2026,** or as soon thereafter as the Court is available.  Objections, if any, to the Sale will be then required to be filed in the Court and served so as to be received by on or before **January 29, 2026 at 4:00 p.m. (ET)**.  The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date at the Sale Hearing.

33.      Promptly upon entry of the proposed Bid Procedures Order, substantially in the form attached hereto as **Exhibit B**, the Trustee will commence service of the notice of the Bid Procedures, Auction, and the Sale Hearing (the "Sale Notice"), substantially in the form attached hereto as **Exhibit C**, by mailing the Sale Notice and Bid Procedures Order via email (if available, or first class mail if no email is available) to: (a) the Office of the United States Trustee; (b) all persons and entities known by the Trustee to have expressed an interest to the Trustee in the Assets since the Petition Date; (c) all persons and entities known by the Trustee to have asserted any lien, claim, interest or encumbrance in the Assets; (d) counterparties, if any, to potential assumed contracts and leases; and (e) parties requesting notice in these cases pursuant to Bankruptcy Rule 2002 (the "Notice Parties").

**G.      Modifications**

34.      The Trustee may (a) determine, in his business judgment which Qualified Bid is the highest or otherwise best offer; and (b) reject at any time before entry of an Order of the Court approving a Qualified Bid, any bid that, in the Trustee's discretion is (i) inadequate or insufficient or (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid

Procedures, or the terms and conditions of the Sale.  The Trustee's business judgment is used to determine the highest or otherwise best offer.

**H.     Reservation of Rights**

35.     The Trustee reserves the right to modify the Bid Procedures as necessary or as he deems appropriate to maximize value for the Debtor's estate and creditors, consistent with the Trustee's fiduciary duties.  The Trustee asserts that the proposed Bid Procedures are appropriate and will maximize recoveries for the Debtor's estate.

**Relief Requested**

36.     By this Motion, the Trustee respectfully requests the entry of orders (a) establishing the Bid Procedures in connection with the Sale of the Assets and approving the Trustee's authority to provide Bid Protections to a Stalking Horse Bidder, (b) approving the form and manner of the Sale Notice, (c) setting a date for the Sale Hearing, (d) authorizing the Sale of the Assets free and clear of all liens, claims, interests, and encumbrances, and (e) granting related relief.

**Basis for Relief Requested**

**A.     Approval of the Sale is Warranted Under Sections 105 and 363 of the Bankruptcy Code**

37.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of section 363. 11 U.S.C. § 105(a).

38.     Although the Bankruptcy Code does not explicitly set forth a standard for determining when it is appropriate for a court to authorize the sale of property of the estate, courts

in this district and elsewhere have found that a debtor's sale of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Eagle Picher Holdings, Inc.*, 2005 Bankr. LEXIS 2894, at *3 (Bankr. S.D. Ohio 2005); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Boston Generating, LLC*, 440 B.R. 302, 321 (Bankr. S.D.N.Y. 2010). Once the debtor articulates a valid business justification for the sale, the business judgment rule acts as "a presumption that in making the business decision the directors of [the] corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co*., 186 B.R. 98 (Bankr. N.D. Ill. 1995) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a Debtor's management decisions.").

39.     The sale of a debtor's assets is appropriate where there are sound business reasons behind such a determination. *See Myers*, 91 F.3d at 395; *see also Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (sale of substantially all assets of estate authorized where "a sound business purpose dictates such action").

40.     The Trustee has a sound business justification for selling the Assets pursuant to the Bid Procedures at this time. After consulting with his professionals and representatives, the Trustee has determined that a sale of the Assets, subject to higher and better

bids through an auction process, would be the most optimal manner to maximize value for the Debtor's estate.

41.     The Notice Parties will receive notice of this Motion, the Auction, the Bid Procedures, and the Sale Hearing.  In addition, parties identified by the Trustee that may have an interest in bidding on the Assets will receive the Sale Notice.  Such notice is reasonably calculated to provide timely and adequate notice to the major creditor constituencies, those parties potentially interested in bidding on the Assets, and others whose interests are potentially implicated by the proposed Sale.  As discussed in detail above, the Sale of the Assets will be subject to an auction and competing bids, thereby enhancing the ability to receive the highest and best value. Consequently, the fairness and reasonableness of the consideration to be received by the Trustee would ultimately be demonstrated by a "market check" through the Auction process, which is the best method to establish whether a fair and reasonable price is being paid.

42.     In order to effectuate the Sale, the Trustee requests authorization to sell the Assets free and clear of liens, claims, interests, and encumbrances.

43.     Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

1)  applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

2)  such entity consents;

3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

4)  such interest is in bona fide dispute; or

5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  *See In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the Trustee has the authority to conduct the sale free and clear of all liens."); *see also In re Kellstrom Indus.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994).

44.     With respect to parties that may assert a lien, claim, encumbrance, or interest on or against the Assets, such parties will have their interest (if any) attach to all proceeds (if any) ultimately attributable to the Assets in which such creditor alleges an interest, in the same order of priority and with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Trustee and the Debtor's estate may have with respect thereto.  *See Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000); *In re Elliot*, 94 B.R. at 345; *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979). Therefore, the Trustee may sell the Assets free and clear of all liens, claims, interests, and encumbrances.

## B.     The Bid Procedures Are Reasonable and Appropriate

45.     Bankruptcy Rule 6004(f)(1) provides that all "sales not in the ordinary course of business may be by . . . public auction."  The Trustee believe that the proposed Bid Procedures will ensure that the bidding process with respect to the Assets is fair and reasonable and will yield the maximum value for its estate and creditors.  The Bid Procedures provide for an Auction, and the bidder that submits the highest or otherwise best offer at the Auction will be selected as the Prevailing Bidder.

46.     The Bid Procedures set deadlines for submitting bids, determining Qualified Bids, conducting the Auction, and holding a hearing with respect to the Sale proposed herein.

Although the Trustee will engage in a full marketing, bidding, and auction process, the estate has limited resources to fund the process. Accordingly, the Trustee believes that he must be permitted to conduct the sale process in the manner and on the timetable set forth herein and in the Bid Procedures to maximize the value of the Assets. In light of the foregoing, the Trustee believes that the Court should approve the Bid Procedures, including the dates established thereby for the Auction and the Sale Hearing.

C.      **Approval of Authority to Provide Bid Protections and Select a Stalking Horse is Appropriate**

47.     The Trustee is also seeking authority to designate a Stalking Horse Bidder and offer the Bid Protections to each such Stalking Horse Bidder; *provided, however*, that the Bid Protections in the aggregate shall be no more than 3% of the Purchase Price. The use of a stalking horse in a public auction process is a customary practice for bankruptcy sales, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Official Comm. of Unsecured Creditors v. Interforum Holding LLC*, No. 11-cv-219, 2011 WL 2671254, at *1 n.1 (E.D. Wis. July 7, 2011). As a result, stalking horse bidders often require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing its bid to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id.* (citation omitted).

48.     Courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the

estate."). The Trustee believes that allowing Bid Protections is in the best interests of the Debtor's estate and creditors, as a Stalking Horse Bid (if any) will establish a floor for further bidding that may increase the consideration given in exchange for the Assets, which will inure to the benefit of the Debtor's estate.

49.     Here, the flexibility to offer Bid Protections is a critical component of the Trustee's ability to obtain the commitment of a Stalking Horse Bidder. To qualify as a Stalking Horse Bidder, a bidder will need to have expended and will continue to expend time and resources negotiating, drafting, and performing due diligence activities necessitated by Sale transactions, despite the fact that its bid will be subject not only to Court approval, but also to overbidding by third parties. Any Bid Protections offered to a Stalking Horse Bidder will have been negotiated in good faith and at arm's length and with significant give-and-take with respect to such Bid Protections. As a result, by preserving the flexibility to offer the Bid Protections, the Trustee ensures that the estate can realize the benefit of a transaction with a Stalking Horse Bidder without sacrificing the potential for interested parties to submit overbids at the Auction.

50.     If the Court does not approve the Bid Protections, the Trustee may not be able to induce a bidder to serve as a Stalking Horse Bidder, to the detriment of the Debtor's estate. Further, if the Trustee enters into a Stalking Horse Agreement with Bid Protections that were ultimately to be paid, it will be because the Trustee has received a higher or otherwise superior offer for the Assets. In short, the proposed Bid Protections are fair and reasonable under the circumstances because they constitute a "fair and reasonable percentage of the proposed purchase price" and are "reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662. Accordingly, the Bid Protections should be approved.

**D.      The Prevailing Bidder Should be Entitled to the Protections of Section 363(m)**

51.      Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser.  Specifically, section 363(m) provides "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." *See Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

52.      Although neither the Bankruptcy Code nor the Bankruptcy Rules define "good faith purchaser," the United States Court of Appeals for the Third Circuit has held that the misconduct that would destroy a purchaser's good faith status at a judicial sale typically involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies*, 788 F.2d 143, 147-48 (3d Cir. 1986) (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the

trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

53.     The terms and conditions of the Sale to are to be negotiated by the Trustee at arm's-length and in good faith with the assistance of counsel.  Accordingly, the Trustee will request the Court determine at the Sale Hearing that the winning bidder and proposed buyer be entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

### Notice

54.     The Trustee will provide notice of this Motion by serving a copy of the Motion via email if available (or first class mail if email is not available) upon:  (a) the Office of the United States Trustee; (b) all persons and entities known by the Trustee to have expressed an interest to the Trustee in the Assets since the Petition Date; (c) all persons and entities known by the Trustee to have asserted any lien, claim, interest, or encumbrance in the Assets; and (d) parties requesting notice in these cases pursuant to Bankruptcy Rule 2002.

55.     Upon entry of the Bid Procedures Order, the Trustee will serve a copy of the Sale Notice and Bid Procedures via email (if available, or first class mail if no email is available) on the same parties listed above.  In light of the foregoing and the nature of the relief requested, the Trustee submits that no further notice is required or needed under the circumstances.

### No Prior Relief

56.     No previous motion for the relief sought herein has been made to this Court or any other court.

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter the proposed Bid Procedures Order, substantially in the form attached hereto as **Exhibit B**, enter a Sale Order in substantially the form attached hereto as **Exhibit D** or in a revised form, at the Sale Hearing following the Auction, and grant the Trustee the relief requested herein and such other and further relief as may be just and proper.

Dated:  October 7, 2025          **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: bsandler@pszjzjlaw.com
         pkeane@pszjzjlaw.com
         ecorma@pszjlaw.com

*Counsel to George L. Miller, Chapter 7 Trustee*