**<u>Exhibit C</u>**

**Agreement**



**Exclusive Right Agreement**
**(Sale)**

This Exclusive Right Agreement ("Agreement") made as of October 10, 2025 (the "Effective Date") between **George Miller, Chapter 7 Trustee for Diamondhead Casino Corporation (the "Company"), Case No.: 24-11354 (JKS) (Bankr. D. Del.)** and having an office at 8 Penn Center, Suite 950, 1628 John F. Kennedy Boulevard, Philadelphia, PA 19103 hereinafter referred to as "Owner", and Colliers Louisiana, LLC having its principal office at 205 Holiday Blvd, Suite 100, Covington, LA 70433, hereinafter referred to as "Agent." Agent represents that it is a duly licensed real estate broker in the State of Mississippi. Owner and Agent intending to be legally bound hereby agree as follows:

1.      Owner hereby appoints Agent as its sole and exclusive agent with the sole and exclusive right to procure a sale, sale/leaseback, net or ground lease or any other transfer, including at auction (a "Sale") of the assets owned by the Company and/or its affiliates and subsidiaries, including, without limitation that certain real property consisting of an approximate 400-acre undeveloped property known as and located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (including any related or contiguous parcels, all improvements now or hereafter made, and all appurtenances thereto, the "Property"), and Agent accepts such exclusive right consistent with the terms of this Agreement (the "Assignment"). References herein to the Property shall be understood to include all or any portion of the Property. Owner represents that it is the Chapter 7 Bankruptcy Trustee for the estate of Diamondhead Casino Corporation, the parent company of Mississippi Gaming Corporation ("MGC"), the fee owner of the Property and the Trustee has the legal and beneficial right, subject to Court approval, to sell or transfer the Property or direct the sale or transfer of the Property and that a sale, sale/leaseback, net or ground lease or any other transfer of the Property, on behalf of MGC, shall be deemed to be a Sale covered by the terms of this Agreement. For the avoidance of doubt, it is agreed that if: (a) Owner contributes or conveys the Property to an individual, partnership, joint venture, or other business entity, or (b) the fee owner is a partnership, corporation or other business entity and an interest in the partnership, corporation or other business entity is transferred, whether by merger, outright purchase, or otherwise, in lieu of a sale, (c) the Property is conveyed or transferred to a creditor of the fee owner of the Property whose consideration for the Property is in part or in whole by means of a credit bid after the full marketing of the Property and the solicitation of bids therefor, or (d) the Sale of the Property may be structured as a sale of substantially all of the Debtor's assets, including, but not limited to, a sale of equity of MGC, for purposes of effectuating the transfer of the Property to a purchaser, then in any such case a Sale shall be deemed to have occurred under this Agreement.

2.      Agent agrees to use commercially reasonable efforts to procure a prospective purchaser at auction via a Ten-X auction for the Property, and Owner agrees to sell the Property upon such terms which Owner may accept. Owner shall be responsible for all costs and/or fees associated with listing the Property on Ten-X not paid by the auction winner including, without limitation, Agent's reasonable attorneys' fees and costs, in preparing any fee applications, and related documents, associated with this Agreement, and, if necessary, in the enforcement of this Agreement. Owner agrees to enter into any written agreements or authorizations required to list the Property on Ten-X by Agent.

3.      During the Term of this Agreement, Owner agrees to refer to Agent all offers, inquiries and solicitations related in any way to the Assignment, and Agent agrees to investigate and develop such offers, inquiries or solicitations, to canvas, solicit and otherwise employ its commercially reasonable efforts to complete the Assignment. All negotiations shall be conducted through Agent with assistance and input from Owner. Owner shall make an independent determination as to the credit worthiness of any prospective purchasers or auction winners (including any successor, assign, designee or affiliate thereof hereinafter "Prospect(s)") and shall not rely on Agent, and Agent shall have no liability, to investigate the financial condition or credit worthiness of a Prospect. Owners failure to refer to Agent an offer, inquiry and solicitation related to the Assignment shall not invalidate Agent's right to commissions therefrom.

1



4.    This Agreement shall become effective as of the date hereof and shall continue for an initial term of **twelve (12) months**. The term of this Agreement shall hereinafter be referred to as the "Term" and the date that this Agreement shall terminate shall hereinafter be referred to as the "Termination Date." The Termination Date may be extended by written agreement between the parties and, unless required by the Court, no further Court approval is necessary to extend the term Termination Date. Within thirty (30) days after the Termination Date, Agent shall deliver to Owner: (i) a list of all Prospects who have toured the Property and/or have submitted or received written offers with respect to a Sale of the Property and (ii) a list of any pending, proposed and incomplete transactions in connection with the Assignment. Even if not expressly identified, an owner, member, director, officer affiliate and insider of Diamondhead Casino Corporation is a "Prospect" as defined herein. Likewise, a "Prospect" shall also include all owners, members, directors, officers, affiliates and insiders of an otherwise identified Prospect. Excluding the Seminole Tribe of Florida, Inc., in the event that a transaction is closed (or a contract of Sale is executed) with any Prospect (including any successor, assign or affiliate thereof) appearing on the lists referenced in subparts (i) through (ii) above within one hundred eighty (180) days after the Termination Date, Agent shall be paid a commission in accordance with the terms of this Agreement as if such termination had not occurred. In the event a transaction is still being Actively Negotiated (defined below) with Owner at the time such one hundred eighty (180) day period expires, then the one hundred eighty (180) day period shall be further extended (without further order of Court) to the date that such transaction closes and Agent shall be compensated as if this Agreement were in full force and effect. For purposes of this section, "Actively Negotiated" shall mean that the Prospect and/or Owner is engaged in substantive discussions with respect to the Assignment.

5.    In connection with a Sale, Owner shall pay Agent commissions as set forth in this Agreement and in accordance with the terms and rates at Schedule A, attached hereto and made a part hereof. Agent is hereby authorized to cooperate with cooperating brokers (a "Cooperating Broker"). In the event that a Cooperating Broker shall procure a Prospect, Cooperating Broker shall be responsible to obtain its commission from its principal. Owner shall ensure that all written offers and the contract of sale provide that the Cooperating Broker be compensated by its principal and that Owner and Agent shall have no liability or responsibility to such Cooperating Broker. For purposes of this Agreement, any broker or salesperson associated with Agent other than the sales team of **Patrick Slagle, David Kaizer, Jarrett Morrell, Brendan Peel, David Keller, Chris Abadie** that procures a Prospect shall be treated as a Cooperating Broker.

6.    Agent shall have the sole and exclusive authority to market the Property for sale during the term of this Agreement and to offer the Property on an "exclusive right to sell" basis, subject to the terms hereof. Agent is exclusively authorized to advertise the Property and exclusively authorized to place a sign(s) on the Property if, in Agent's opinion, such would facilitate the Sale of the Property. Notwithstanding the foregoing, Agent acknowledges, and Owner authorizes that the Property will be posted on the Ten-X auction platform. Such advertising, Ten-X listing or promotional fee(s), and/or sign(s) shall be pre-approved and paid by Owner upon presentation of invoice. Owner and its counsel will be responsible for determining the legal sufficiency of a Sale and any other documents relating to any transactions contemplated by this Agreement. Owner shall provide Agent with a copy of all executed contracts of sale upon request by Agent.

7.    Agent shall not speak with, and is not authorized to speak with, any current or former employee, officer, or director of the Company without the prior express written consent of the Owner.

8.    Owner is a duly appointed Chapter 7 Trustee and has no direct knowledge of any material facts concerning the Property that is not already known to Agent. If Owner actually knows of any facts that materially affect the value of the Property, whether such facts are readily observable or not readily observable, Owner shall disclose all such facts to Agent. Agent agrees that Owner makes no representations or warranties about the Property.



9.    Owner acknowledges that Agent is not obligated to and has made no independent investigation of the physical conditions of the Property including, but not limited to, the condition of any structures (exterior and interior) on the Property, the electrical and mechanical systems thereof, the fixtures, personal property and equipment therein, or of any environmental matters with respect thereto, or of hazardous substances thereon, if any (collectively, the "Physical Conditions"). All documents and materials, investigations, reports and information with respect to the Physical Conditions shall be prepared by or for the Owner and shall be furnished to Prospects on behalf of Owner who (as between Owner and Agent) shall be solely responsible for same.

10.    All obligations and terms of this Agreement shall be subject to: (i) the Chapter 7 bankruptcy proceeding of Diamondhead Casino Corporation, Case Number 24-11354 (JKS) pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and (ii) the terms of an order, to be entered by said Court, approving the engagement and retention of Agent (the "Broker Order"). Prior to the execution hereof, Owner has provided Agent with a copy of a proposed order approving Agent's retention, and shall provide Agent with an as-entered copy of, the Broker Order. Agent agrees to cooperate with Owner and his counsel, if any, in seeking the entry of the Broker Order and the approval of its engagement and retention by the Court. Owner acknowledges that Agent or its affiliated entities may be engaged to sell or lease similar assets by other persons or entities, and that any such engagement shall not constitute or be deemed to be a violation of this Agreement. This Agreement is executed by Owner, not individually, but solely as Chapter 7 Trustee for the Property in the exercise of power and authority conferred upon and vested in him as a Chapter 7 Trustee by the Court and the United States Bankruptcy Code. By executing this Agreement, Agent agrees, on its behalf and on behalf of all others that benefit and are bound by this Agreement, that no personal liability or responsibility is assumed by or shall at any time be asserted or enforced against Owner or his successors, assigns, affiliates, or agents, and, except as to any conduct that is found by the Bankruptcy Court to be gross negligence, willful misconduct or bad faith, all such personal liability and responsibility, if any, being expressly waived and released by said parties.

11.    Owner shall defend, indemnify and hold harmless Agent, its parent, subsidiaries, affiliates, shareholders, officers, managers, directors, employees and agents, from and against any and all claims, lawsuits, harm, costs, demands, settlements, judgments, losses, liabilities, damages and expenses, including, but not limited to, attorneys' fees, costs and related expenses, through the appellate and bankruptcy levels (collectively, "Liabilities"), relating to, arising out of or in connection with (i) any sale or exchange of the Property pursuant to this Agreement, (ii) the use of, or access to, the Property by any person pursuant to this Agreement, or (iii) Agent's performance of its obligations under this Agreement.  Owner shall not be responsible for indemnification for Liabilities to the extent caused by Agent's gross negligence or willful misconduct in performing its obligations under this Agreement. Neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if the party has knowledge of the possibility of such damages; and in no event shall Agent's liability to Owner for any claim or action related to this Agreement exceed the fees paid to Agent in connection with the Assignment.

12.    The validity and interpretation of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the state where the Property is located applicable to agreements made and to be fully performed therein (excluding the conflicts of laws rules).  The parties hereto irrevocably submit to the jurisdiction of the court of the state and county where the Property is located for the purpose of any suit, action, or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby.  In the event that any litigation is brought with respect to any dispute between the parties hereto, the losing party in such litigation shall reimburse the prevailing party for all of its reasonable out-of-pocket costs

3



incurred, including reasonable attorney's fees and disbursements, in connection with such litigation and the costs of collection of any settlement or judgment thereon. OWNER AND AGENT KNOWINGLY AND VOLUNTARILY WAIVE THE RIGHT TO A JURY TRIAL IN THE EVENT OF A DISPUTE ARISING UNDER THIS AGREEMENT.

13.    This Agreement constitutes the entire agreement between Owner and Agent and supersedes all prior discussions, negotiations and agreements, whether oral or written with respect to the subject matter hereof. No amendment, alteration, cancellation or withdrawal of this Agreement shall be valid or binding unless made in writing and signed by both Owner and Agent. This Agreement shall be binding upon, and shall benefit, the heirs, successors and assignees of the parties. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute a fully executed agreement, with the same effect and validity as a single, original agreement signed by all of the parties. PDF signatures shall have the same validity and effect as original signatures.

The undersigned hereby acknowledges receipt of a copy of this Agreement, the Agency Relationship Disclosure Form contained in Exhibit A, and if applicable, receipt of and/or any such required materials of the state where the Property is located.

*Agreed and Accepted:*

*Agreed and Accepted:*

**George Miller as the Chapter 7 Trustee for Diamondhead Casino Corporation**

**Colliers Louisiana, LLC**

By: _____

By: _____

Name:  George Miller, solely in his capacity as
Chapter 7 Trustee
Case No.: 24-11354 (JKS) (Bankr. D. Del.)

Name:  Christopher Abadie

**Consult your advisors.** This document has legal consequences. No representation or recommendation is made by Agent as to the legal or tax consequences of this Agreement or the transaction(s) which it contemplates. These are questions for your attorney and financial advisors.

4



## SCHEDULE A

### Sales Commissions

Owner shall pay a commission to Agent equal to three percent (3%) of the gross purchase price or other consideration (including without limitation any existing mortgage that is assumed) (the "Commission Fee"). The commission shall be earned, due and payable in full on the earlier of the transfer of title, closing of the Sale or execution of contract, in the event of an installment Sale or contribution of the Property to an individual partnership, joint venture or other entity.

In the event Owner conveys or contributes the Property or any interest therein to an individual, joint venture, partnership, or other business entity, the commission shall be calculated on the fair market value of the Property, less the value of the interest in the Property retained by Owner, and shall be paid at the time of the contribution or transfer.

If the fee owner is a partnership, corporation, or other business entity, and an interest in the partnership, corporation, or other entity is transferred, whether by merger, outright purchase, or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a commission in connection with such a transfer or sale, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid at the time of the transfer.

In the event Owner conveys or contributes the Property or any interest therein to a creditor of Diamondhead Casino Corporation via credit bid subsequent to full marketing of the Property by Agent, then Owner shall pay a commission to Agent equal to one (1%) of the fair market value of the Property (the "Credit Bid Fee"). The commission shall be earned, due and payable in full on the earlier of the transfer of title, closing of the Sale or execution of contract, in the event of an installment Sale or contribution of the Property.

In the event the Sale of the Property includes a mixed component of a gross purchase price or other consideration and a credit bid, Agent shall be paid the greater of the Commission Fee or Credit Bid Fee, but not both.

### Miscellaneous

**In the event Owner fails to make payments within the time limits set forth herein, then from the date due until paid the delinquent amount shall bear interest at the lesser of the maximum rate permitted by law in Mississippi or the rate of fifteen percent (15%) per annum; provided, however, that Agent must first file a final fee application with the Bankruptcy Court and obtain approval of such fee application before Owner is obligated to pay any fees, compensation, or expenses under this Agreement**



## EXHIBIT A



MREC Agency Disclosure Form A

# WORKING WITH A REAL ESTATE BROKER

**THIS IS NOT A LEGALLY BINDING CONTRACT**

Approved 05/14/2024 by
MS Real Estate Commission
P. O. Box 12685
Jackson, MS 39236

### GENERAL

Before you begin working with any real estate agent, you should know whom the agent represents in the transaction. Mississippi real estate licensees are required to disclose which party they represent in a transaction and to allow a party the right to choose or refuse among the various agency relationships. Several types of relationships are possible, and you should understand these at the time a broker or salesperson provides specific assistance to you in a real estate transaction. The purpose of this Agency Disclosure form is to document an acknowledgement that the consumer has been informed of various agency relationships which are available in a real estate transaction. For the purposes of this disclosure, the term Seller and/or Buyer will also include those other acts specified in Section 73-35-3(1), of the Miss. Code, "...list, sell, purchase, exchange, rent, lease, manage, or auction any real estate, or the improvements thereon including options."

### SELLER'S AGENT

A property Seller can execute a "listing agreement" with a real estate firm authorizing the firm and its agent(s) to represent the Seller in securing a Buyer. A licensee who is engaged by and acts as the agent of the Seller only, is a Seller's Agent. A Seller's agent has the following duties and obligations:
➤ **To the Seller:** The fiduciary duties of loyalty, confidentiality, obedience, disclosure, full accounting, and the duty to use skill, care, and diligence.
➤ **To the Buyer and Seller:** A duty of honesty and fair dealing.

### BUYER'S AGENT

A Buyer may contract with an agent or firm to represent him/her. A licensee who is engaged in a Buyer Agency Agreement as the agent of the Buyer only is known as the Buyer's Agent in purchasing a property. A Buyer's Agent has the following duties and obligations:
➤ **To the Buyer:** The fiduciary duties of loyalty, confidentiality, obedience, disclosure, full accounting, and the duty to use skill, care, and diligence.
➤ **To the Seller and Buyer:** A duty of honesty and fair dealing.

### DISCLOSED DUAL AGENT

A real estate licensee or firm may represent more than one party in the same transaction. A Disclosed Dual Agent is a licensee who, with the informed written consent of the Seller and Buyer, is engaged as an agent for both the Seller and Buyer. As a Disclosed Dual Agent, the licensee shall not represent the interests of one party to the exclusion or detriment of the interests of the other party. A Disclosed Dual Agent has all the fiduciary duties to the Seller and Buyer that a Seller's agent or a Buyer's agent has except the duties of full disclosure and undivided loyalty.
➤ **A Disclosed Dual Agent may not disclose:**
a) To the Buyer that the Seller will accept less than the asking or listed price, unless otherwise instructed in writing by the Seller.
b) To the Seller that the Buyer will pay a price greater than the price submitted in a written offer to the Seller, unless otherwise instructed in writing by the Buyer.
c) The motivation of any party for selling, buying, or leasing a property, unless otherwise instructed in writing by the respective party, or
d) That a Seller or Buyer will agree to financing terms other than those offered, unless otherwise instructed in writing by the respective party.

### IMPORTANT NOTICE: UNREPRESENTED "CUSTOMER"

"Customer" shall mean a person not represented in a real estate transaction. It may be the Buyer, Seller, Landlord or Tenant. A Buyer may decide to work with a firm that is acting as the agent for a Seller (a Seller's Agent or Subagent). If a Buyer does not enter into a Buyer Agency Agreement with the firm that shows him properties, that firm and its agents may show the Buyer properties as a Seller's Agent or as a Subagent working on the Seller's behalf. Such a firm represents the Seller (not the Buyer) and must disclose that fact to the Buyer. Regarding the price and terms of an offer, the Seller's Agent will ask you (the Customer) to decide how much to offer for the property and upon what conditions. They can explain your options to you, but the final decision is yours, as they cannot give you legal or financial advice. They will attempt to show you property in the price range and category you desire so that you will have information on which to base your decision. The Seller's Agent will present to the Seller any written offer that you ask them to present. You should not disclose any information that you do not want the Seller to know (i.e. the price you are willing to pay, other terms you are willing to accept, and your motivation for buying) because the Seller's Agent would be required to tell all such information to the Seller. As a Customer dealing with a Seller's Agent, you might desire to obtain the representation of an attorney, another real estate licensee, or both.

---

### THIS IS NOT A CONTRACT, THIS IS AN ACKNOWLEDGEMENT OF DISCLOSURE

The below named Broker or Salesperson has informed me that real estate brokerage services may be provided to me as a:

☐ Client (The Licensee is my Agent. I am the Seller or Landlord.)
☐ Client (The Licensee is my Agent. I am the potential Buyer or Tenant.)        ☐ Customer (The Licensee is not my Agent.)
☐ Client (All Licensees of the Brokerage Firm may become Disclosed Dual Agents.)        **Use "Customer signature" space, below**

By signing below, I acknowledge that I received this informational document and explanation prior to the exchange of confidential information which might affect the bargaining position in a real estate transaction involving me.

| (Client signature)            (Date) | (Licensee signature)            (Date) | (Customer signature)            (Date) |
|---|---|---|
| (Client signature)            (Date) | (Licensee Brokerage) | (Customer signature)            (Date) |

LICENSEES: Provide a copy of this disclosure acknowledgement form to all signatories and retain signed original for your files.        MREC Rev. 05/14/2024

6