**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DIAMONDHEAD CASINO CORPORATION.,<br><br>                    Debtor. | Chapter 7<br><br>Case No. 24-11354 (JKS)<br><br>**Objection Deadline: February 19, 2026 at 4:00 p.m. (ET)**<br>**Hearing Date: February 26, 2026 at 11:00 a.m. (ET)** |

**PETITIONING CREDITORS' FIRST MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §503(b)(3)(A) AND 503 (b)(4)**

Petitioning creditors Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to the J. Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, Barry and Irene Stark (collectively, the "Petitioning Creditors"), by and through their undersigned counsel, respectfully submit this motion (the "Motion"), pursuant to Sections 503(b)(3)(A) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code"), for the allowance, reimbursement and professional fees and expenses totaling $276,982.90 incurred though January 31, 2026 in connection with filing and pursuing the involuntary petition and related proceedings against the above-captioned debtor, Diamondhead Casino Corporation (the "Debtor"), and respectfully request the entry of an order, in substantially the form filed herewith (the "Proposed Order") and attached hereto as Exhibit A. In support of this Motion the Petitioning Creditors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

1

**BACKGROUND**

2.       The Debtor, a Delaware corporation, has had no operations since 2000. The Debtor is a holding company whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC"). MGC owns approximately 400 acres of undeveloped land located on Interstate 10 in Diamondhead, Mississippi (the "Property"). On August 21, 2014, the Mississippi Gaming Commission granted Gaming Site Approval to MGC for a 50-acre gaming site on the east end of the Property.

3.       On June 12, 2024, the Petitioning Creditors commenced this bankruptcy case by filing an involuntary petition (the "Involuntary Petition") under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") [D.I. 1]. The Debtor filed a motion to dismiss (the "Motion to Dismiss") the Involuntary Petition or, in the alternative, convert the case to a case under Chapter 11 of the Bankruptcy Code [D.I. 9].

4.       An evidentiary hearing on the Motion to Dismiss was held on December 4, 2024, and January 16, 2025. The Court heard testimony from five witnesses and considered various exhibits admitted into evidence. The parties also filed post-trial briefs.

5.       On July 30, 2025, the Court issued a memorandum opinion (the "Involuntary Opinion") [D.I. 42] and an order (the "Denial Order") [D.I. 43] denying the Motion to Dismiss. The Bankruptcy Court's denial of the Motion to Dismiss was based, in part, on a 2023 consent judgment (the "Consent Judgment") obtained by Petitioning Creditors in a case filed in 2016 in the United States District Court for the District of Delaware (the "2016 District Court Case"). *See, e.g.*, Involuntary Opinion at 7, 10.

6.       On July 31, 2025, this Court issued the Order for Relief in an Involuntary Case (the "Order for Relief" and, together with the Denial Order, the "Prior Orders") [D.I. 45].

7. On August 1, 2025, George L. Miller was appointed the Chapter 7 Trustee (the "Trustee") of the Debtor's bankruptcy estate [D.I. 46].

8. On August 13, 2025, a motion was filed purportedly on behalf of the Debtor titled "Motion of the Alleged Debtor, Diamondhead Casino Corporation, for a Stay of the Court's Opinion (D.I. 42) and Order (D.I. 43) Dated July 30, 2025 and Order (D.I. 45) Dated July 31, 2025, Pending Resolution of the Appeal" [D.I. 47] (the "Stay Motion"). The Stay Motion was filed by Robert D. Goldberg, allegedly on behalf of Diamondhead Casino Corporation. Mr. Goldberg has not been retained by the Chapter 7 Trustee to act on behalf of the Debtor's estate.

9. Also on August 13, 2025, a motion was filed, purportedly on behalf of the Debtor, titled Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders [D.I. 48] (the "Original MTV/MTD").

10. A brief in support of the Original MTV/MTD was filed concurrently with the Original MTV/MTD [D.I. 49] (the "Brief in Support").

11. A notice of appeal (the "Diamondhead Appeal") [D.I. 50] was filed on August 13, 2025, purportedly on behalf of the Debtor. The Diamondhead Appeal appealed the Denial Order. The Diamondhead Appeal was subsequently withdrawn.

12. Also on August 13, 2025, Deborah A. Vitale ("Vitale" and, together with the Debtor, the "Movants") filed an omnibus Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the Above Captioned Case; and Motion to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders; and Stay of the Court's Opinion (D.I.

3

42) and Order (D.I. 43) Dated July 30, 2025 and Order (D.I. 45) Dated July 31, 2025, Pending Resolution of the Appeal [D.I. 55] the ("Vitale Motion").  The Vitale Motion sought to allow her to intervene in this bankruptcy case and was also essentially a joinder to the Original MTV/MTD and Stay Motion, and incorporated the Brief in Support.

13. That same day, Vitale also filed a Notice of Appeal on behalf of herself on August 13, 2025 [D.I. 57] (the "First Vitale District Court Appeal").  Like the Diamondhead Appeal, the First Vitale District Court Appeal appealed the Denial Order.

14. On August 15, 2025, the Debtor withdrew the Original MTV/MTD [D.I. 61] but then filed a new document, purportedly on behalf of the Debtor, entitled "Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order Dated July 31, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders [D.I. 63] (the "Operative MTV/MTD" and, together with non-stay related relief sought in the Vitale Motion, the "MTV/MTD Motions").

15. On August 28, 2025, Petitioning Creditors filed their *Omnibus Objection of Petitioning Creditors to: (A) Motion of "Alleged Debtor", Diamondhead Casino Corporation, to Vacate the Court's Opinion and Order Dated July 30, 2025 and Order dated July, 2025 and Dismiss the Involuntary Petition or, Alternatively, to Alter and Amend the Opinion and Orders [D.I. 63]; (B) Motion of the "Alleged Debtor", Diamondhead Casino Corporation for a Stay of the Court's Opinion [D.I. 42] and Order [D.I. 45] Dated July 31, 2025, Pending Resolution of the Appeal [D.I. 47]; (C) Motion of Deborah A. Vitale for Leave to Intervene and be Heard in the Above Captioned Case and Joinders to "Alleged Debtor" Diamondhead Casino Corporation's Motion to Vacate/Dismiss and Motion for Stay Pending Appeal [D.I. 55]* (the "Omnibus Objection") [D.I. 77].

4

16. A hearing was held on September 3, 2025, at which time this Court denied the Stay Motion, the Vitale Motion, and the Operative MTV/MTD [D.I. 157].

17. Vitale filed another Notice of Appeal on behalf of herself on September 17, 2025 [D.I. 107] (the "Second Vitale Appeal", and together with the First Vitale Appeal, the "Vitale District Court Appeals"), appealing this Court's September 17, 2025 denial of the Vitale Motion in its entirety. The Second Vitale Appeal created a new District Court case. The Debtor also appealed the denial of its motions, but did so as a supplement to its appeal.

18. Vitale and the Debtor filed statements of issues on appeal and designations of the record on appeal. In each case, the Petitioning Creditors filed counter designations and, in the Second Vitale Appeal, a counter designation of issues on appeal.

19. On October 3, 2025, the Debtor filed emergency motions for a stay pending appeal in several of the District Court appeals. *See, e.g.*, Diamondhead Appeal D.I. 8; Case No. 1:25-cv-01022-MN (D. Del.) at D.I. 8-9.

20. On October 7, 2025, Vitale, the Debtor and Petitioning Creditors participated in an ADR teleconference with Magistrate Judge Burke. *See*, e.g. Case No. 1:25-cv-01018-MN (D. Del.) (the "Diamondhead Appeal"), at D.I 4; Case No. 1:25-cv-01022-MN (D. Del.) at D.I. 10.[1]

21. Petitioning Creditors filed their response in opposition to the Debtor's emergency motions for stay on October 14, 2025. *See* Diamondhead Appeal D.I. 8; Case No. 1:25-cv-01022-MN (D. Del.) at D.I. 13.

22. In an attempt to challenge the Consent Judgment, on October 15, 2025, the Debtor filed a motion to reopen the 2016 District Court Case. *See* Case No. 16-cv-00989-MN (D. Del.), at D.I. 76-77. The Debtor withdrew its motion on October 21, 2025. *Id.* at D.I. 78.

---

[1] References to the docket for Case No. 1:25-cv-01022-MN (D. Del.), shall hereinafter be referred to as "Vitale District Court Appeal D.I."

23. The Debtor also withdrew its District Court appeal on October 21, 2025.

24. That same day, Vitale filed an emergency motion for stay pending appeal on her own behalf in the Vitale District Court appeals. *See, e.g.* Case No. 1:25-cv-01022-MN (D. Del.) at D.I. 14-16.

25. Petitioning Creditors filed their response in opposition to Vitale's motions on October 29, 2025. *See, e.g.* Case No. 1:25-cv-01022-MN (D. Del.) at D.I. 18.

26. On November 11, 2025, the Vitale herself filed a motion to reopen the 2016 District Court Case, seeking to vacate the Consent Judgment (the "Vitale Motion to Reopen"). *Id.* at D.I. 79-81.

27. On November 25, 2025, Petitioning Creditors filed their opposition to the Vitale Motion to Reopen. *Id.* at D.I. 84.

28. The Vitale Motion to Reopen remains pending in the 2016 District Court Case.

29. On December 3, 2025, the United States District Court for the District of Delaware entered a memorandum opinion and order in both District Court Appeals, denying Vitale's emergency stay motions. While the District Court Memorandum Opinion and Order addresses Vitale's request to stay the bankruptcy, it does not resolve the Appeals themselves, and the Appeals remain pending at the time of filing of this Request.

30. On December 23, 2025, Vitale appealed the District Court Memorandum and Order to the United States Court of Appeals for the Third Circuit. *See* C.A. No. 25-3520 (3d Cir.) (the "Vitale 3rd Circuit Appeal") at D.I. 1.

31. The following day, the Third Circuit issued a letter advising that the case has been listed for possible dismissal due to jurisdictional defect. Vitale 3rd Circuit Appeal at D.I. 5.

32. On January 22, 2026, Vitale filed her opening brief in support of her appeals of the Bankruptcy Court rulings.

33. Additional events related to Vitale's challenge to the Involuntary Opinion and Denial Order are anticipate to occur, for which Petitioning Creditors will incur attorneys' fees and costs and for which they will seek reimbursement. This Motion, however, covers only the time period through January 31, 2026.

34. Petitioning Creditor will be filing additional motions for further payment of administrative expenses pursuant to Sections 503(b)(3)(A) and 503(b)(4), as warranted.

## RELIEF REQUESTED

35. Pursuant to Bankruptcy Code Sections 503(b)(3)(A) and 503(b)(4), the Petitioning Creditors seek the allowance, reimbursement and payment of expenses and professional fees incurred by the Petitioning Creditors in connection with filing and pursuing the involuntary Petition against the Debtor and related proceedings.

## BASIS FOR RELIEF

36. Section 503(b)(3) of the Bankruptcy Code provides that, after notice and a hearing, there shall be allowed as administrative expenses "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by (A) a creditor that files [an involuntary petition] under section 303 of [the Bankruptcy Code]." 11 U.S.C. § 503(b)(3)(A).

37. Section 503(b)(4) of the Bankruptcy Code, in turn, provides that there shall be allowed as an administrative expense the "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A) . . . of paragraph (3) of this subsection, based on the time, the nature, the extent,

7

and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]" 11 U.S.C. § 503(b)(4). "Section 503(b)(3)(A) serves to allow petitioning creditors their expenses in order to encourage them to bring the debtor into court so that there may be equitable marshalling and distribution of its assets, before they are squandered by the debtor." *In re On Tour, LLC*, 276 B.R. 407, 416-17 (Bankr. D. Md. 2002); *see also In re Hanson Industries, Inc.*, 90 B.R. 405, 410 (Bankr. D. Minn. 1988).

37. The Petitioning Creditors seek reimbursement of the $338.00 filing fee (the "Filing Fee") paid by the Petitioning Creditors to file the Involuntary Petition, pursuant to section 503(b)(3)(A), as well as reimbursement of professional fees incurred through January 31, 2026 in the aggregate amount of $270,576.00 (the "Professional Fees") and $6,068.90 in additional expenses (the "Additional Expenses"), for a total of $276,982.90, pursuant to Section 503(b)(4), as set forth in the detailed time records of the Petitioning Creditors' counsel, Armstrong Teasdale LLP ("AT") attached hereto as Exhibit B.

38. The types of reimbursable attorney's fees that can recovered under Section 503(b)(4) "include preparation and filing of the involuntary petition, contacting other creditors to join in the petition, legal and factual research regarding the grounds for filing the case and, if entry of an order for relief is contested by the debtor" and litigation concerning the entry of the order for relief. *In re Westek Georgia, LLC*, 317 B.R. 567, 570 (Bankr. M.D. Ga. 2004) ("The rationale for allowing a petitioning creditor to be reimbursed from the estate is that the petitioning creditor's actions benefitted the estate and other creditors. . . . The assumption that creating the case is beneficial to creditors is automatic."); *see also In re On Tour, LLC*, 276 B.R. 407, 416 (Bankr. D. Md. 2002) ("§

503(b)(3)(A) provides for fees and costs incurred in 'reasonable and necessary efforts to pursue the petition to successful conclusion by entry of the Order for Relief[.]'" (internal citation omitted)).

39. While the Petitioning Creditors acknowledge that the majority of courts have limited reimbursement of a petitioning creditor's professional fees under Section 503(b)(4) to the preparing and pursuing an involuntary petition up until the entry of an order for relief, the Petitioning Creditors contend that other courts have allowed professional fees and costs incurred by a petitioning creditor *after* the entry of an order for relief where the circumstances have so justified. *See, e.g., In re On Tour*, 276 B.R. at 417 (approving reimbursement of petitioning creditors' professional fees that were incurred after the entry of the order for relief where the debtor had not been responsive to court orders, there was no actively participating trustee, and the petitioning creditors "alone were responsible for the effective administration" of the case); *In re Hanson*, 90 B.R. at 408-11 (allowing the petitioning creditor's professional fees incurred from "the date between preparation of the petition and the last date the firm worked on preparation of schedules for the debtors[,] where "[f]ollowing entry of the order for relief [debtor] failed originally to file schedules, as a result of which the petitioning creditors began to prepare their own set of schedules."); *In re Rorabaugh*, 62 B.R. 623 (Bankr. D. Kan. 1986) (allowing compensation for work involved in the initiation of the involuntary bankruptcy case and for work performed by counsel in substantial efforts made during the bankruptcy case, including preparation of schedules and the statement of financial affairs).

40. The circumstances present in this case are similar to those in the *On Tour*, *Hanson* and *Rorabaugh* cases, which persuaded those courts to allow professional fees incurred after the entry of the order for relief. Here, the Vitale's and the Debtor's numerous motions, responses and appeals challenging the Involuntary Petition required the Petitioning Creditors to actively pursue

the entry of the Order for Relief and to preserve the Chapter 7 Bankruptcy following the Debtor's and Vitale's numerous challenges to the Involuntary Petition following entry of the Denial Order.

41.     The Petitioning Creditors further acknowledge that a party seeking professional fees under Section 503(b)(4) "bears the burden of establishing the reasonableness of the fees." *In re 29 Brooklyn Avenue, LLC*, 548 B.R. 642, 652 (Bankr. E.D.N.Y. 2016). "To meet that burden, the party must submit sufficiently detailed time records such that the court can determine whether all the fees requested are reasonable. The court applies an objective standard when determining reasonableness and does not judge the fee application through hindsight." *Id.* The factors examined for reasonableness under Section 503(b)(4) are "the time, the nature, the extent, and the value of such services, and the cost of comparable services under this title." *Id.* (quoting 11 U.S.C. § 503(b)(4)). In applying the foregoing factors, the Petitioning Creditors submit that the time spent and the services rendered by AT were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the tasks addressed, particularly where the Debtor was unresponsive and the Petitioning Creditors were compelled to take repeated action for the benefit of all creditors of the Debtor's bankruptcy estate.

42.     Based on the foregoing, the Petitioning Creditors submit that the Professional Fees detailed on Exhibit B fall within the scope of those permissible under Section 503(b)(4) and are reasonable under the applicable standard. Accordingly, the Petitioning Creditors are entitled to reimbursement of the Filing Fee and the Professional Fees pursuant to Sections 503(b)(3)(A) and 503(b)(4).

## **CONCLUSION**

WHEREFORE, the Petitioning Creditors respectfully request that the Court (i) approve the Request, pursuant to 11 U.S.C. §§ 503(b)(3)(A) and 503(b)(4), for the allowance, reimbursement

and payment of expenses and professional fees incurred in connection with filing and pursuing the involuntary Petition against the Debtor, (ii) enter the Proposed Order, in substantially the same form submitted herewith and attached as Exhibit A, and (iii) grant such other relief as is just and proper under the circumstances.

| | |
|---|---|
| February 2, 2026 | Respectfully submitted, |
| | **ARMSTRONG TEASDALE LLP** |
| | */s/ Jonathan M. Stemerman* <br> Jonathan M. Stemerman (No. 4510) <br> 1007 North Market Street, Third Floor <br> Wilmington, Delaware 19801 <br> Telephone: (302) 416-9670 <br> jstemerman@atllp.com |
| | *Counsel to the Petitioning Creditors* |