## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In Re: | ) |
| | ) Chapter 7 |
| DIAMONDHEAD CASINO | ) |
| CORPORATION, | ) C. A. No. 24-11354-JKS |
| | ) |
| | ) Objection Deadline: February 19, 2026 |
| Debtor. | ) Hearing Date: February 26, 2026 |
| | ) 11. A.M. (EST) |

**OBJECTION OF CREDITOR, DEBORAH A. VITALE, TO PETITIONING CREDITORS' FIRST MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §§ 503(b)(3)(A) AND 503(b)(4)**

Deborah A. Vitale ("Vitale"), a Creditor, respectfully submits this objection (the "Objection") to the Petitioning Creditors' First Motion for Payment of Administrative Expenses Pursuant to §503(b)(3)(A) and §503(b)(4) (the "Fee Motion") [D.I. 176].

### PRELIMINARY STATEMENT

The Petitioning Creditors seek $276,982.90 in alleged *administrative expenses*, including $270,576.00 in professional fees and $6,068.90 in expenses for work performed through January 31, 2026. The Petitioners are not entitled to the expenses sought as a matter of law under §§503(b)(3)(A) and 503(b)(4). Their request is not only grossly excessive, but it is legally impermissible and flatly prohibited under the American Rule and §503(b) and must be denied.

Under "the American Rule," each litigant pays his own attorney's fees, win or lose. *Baker Botts v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010). Courts "recognize[] departures from the American Rule only in specific and explicit provisions for the allowance of attorneys' fees under selected statutes or rules. *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975).

The Petitioners' Fee Motion represents an extraordinary and impermissible departure from the American Rule as well as an unjustified reading and expansion of §503(b)(3)(A) and §503(b)(4). Congress did not statutorily authorize prevailing petitioning creditors to shift years of litigation fees in a bankruptcy case onto the Debtor's estate. It authorized only the narrow fees and costs incurred in preparing and filing an involuntary petition and nothing more.

Petitioning creditors' fees are governed exclusively by §503(b)(3)(A) and §503(b)(4), which allow reimbursement only for expenses and attorney's fees incurred in preparing and filing the involuntary petition. Nothing else is compensable. The Petitioners' request fails as a matter of law because §503(b) does not authorize litigation fees, appellate fees, or any fees incurred *after* the filing of the involuntary petition.  Only the expenses and attorney's fees necessary to prepare and file the involuntary petition qualify as administrative expenses under §503(b)(3)(A) and §503(b)(4). No other post-filing litigation or appellate work is

compensable, let alone entitled to administrative priority. Congress created a one-way fee-shifting mechanism in §303(i) to protect debtors from abusive involuntary filings. It did not create a corresponding fee-shifting right for petitioning creditors.

A bankruptcy court's authority to award fees is strictly limited by statute. Nevertheless, the Petitioners want *this* Court to award attorneys' fees to themselves, not only for fees incurred in *this* case, but for fees incurred in cases now pending in other courts.

Once a notice of appeal is filed, the bankruptcy court is divested of jurisdiction over the matters on appeal, including any request for attorneys' fees relating to the appeal. A bankruptcy court cannot award fees for work performed in proceedings over which it has no jurisdiction. A bankruptcy court cannot award attorney's fees to a litigant in a case on appeal in another court. Nor, of course, has the Movant provided any authority for such a novel proposition. Section 503(b) simply does not permit reimbursement to Petitioning Creditors for its litigation fees in this Court, let alone, in other courts, including the appellate courts.

The Petitioners are simply trying to shift litigation fees incurred in this case and on appeal to the *Debtor's* estate.  Worse, they are trying to convert their litigation fees in this case and cases on appeal into a **priority administrative claim** against the Debtor's estate that jumps ahead of other creditors in *this* case.

3

The legal literature is replete with warnings to counsel and petitioners who seek to file an Involuntary Chapter 7 Petition regarding the dangers of doing so and the enormous financial risks such Petitioners face, even years later, if an Order for Relief is subsequently reversed on appeal. The Petitioners who file such actions assume the risk of their filing, any appeal thereof, and the legal fees related to same. The Petitioners here assumed that risk.  They cannot pass that risk off to the Debtor's estate.  They were represented by experienced bankruptcy counsel and cannot claim they were uninformed of the risks assumed in filing an Involuntary Chapter 7 Petition.

The Petitioners in this case filed their Involuntary Petition based on a Judgment obtained in *Arneault, et al, v. Diamondhead Casino Corporation* (C.A. No. 1:16-cv-00989-LPS)(D. Del. 2016).   In 2023, the Debtor agreed to pay the Plaintiffs in that case $175,000 in attorneys' fees to settle that case. These attorneys' fees, assuming, *arguendo,* that the Judgment obtained in that case is not void *ab initio* and a legal nullity, represent an <u>unsecured</u> debt of the estate. The Fee Motion suggests that the Petitioners may have finally realized that an Involuntary Chapter 7 path was not a prudent way for them to proceed since the Diamondhead Property will now be auctioned off in a Chapter 7 distress auction. Their unsecured claims, including those for attorneys' fees, may never be reached in a distress sale. Thus,

4

they are now trying to recover attorneys' fees as <u>priority</u> administrative expenses ahead of other creditors.

This Fee Motion underscores the fact that this case has always been about attorneys' fees. The Debentures underlying this case were prepared by Mr. Wurst's then law firm, which neglected to include a provision for the payment of attorneys' fees in the event of any default by the Debtor. The litigation between the Debtor and Plaintiff/Petitioners has been controlled by their attempts to correct this error and get reimbursed for legal fees. Indeed, as Petitioners' own attorney testified, the Petitioners would not have even filed this case if the Debtor had agreed to pay yet another $50,000 in attorneys' fees *sixty-two days* after agreeing to pay $175,000 in attorneys' fees to settle *Arneault, et al, v. Diamondhead Casino Corporation, supra.* The Fee Motion filed herein represents just another attempt to extract even more legal fees from the Debtor's estate and ahead of the estate's other creditors.

## ARGUMENT

## I.  THE LEGAL STANDARD PRECLUDES THE RELIEF SOUGHT

While Section 303(i) allows for litigation-related fees to be awarded to a Debtor when an involuntary petition is *dismissed*, it does not provide a reciprocal statutory fee-shifting right to petitioning creditors when they succeed in obtaining an Order for Relief.  A petitioning creditor who successfully obtains an Order for Relief in an involuntary case is entitled to only <u>two</u> categories of compensation.

These are: (1) filing fees, and (2) reasonable attorneys' fees incurred in preparing and filing the Involuntary Petition. The Petitioners seek administrative expenses pursuant to §503(b)(3)(A) and §503(b)(4)(the "Fee Motion") [D.I. 176]. These statutes are strictly construed.

### 1. Section 503(b)(3)(A) is Strictly Limited to Expenses Incurred in Filing the Involuntary Petition

Section 503(b)(3)(A) is strictly limited to expenses incurred "in filing the involuntary petition." Courts uniformly hold that §503(b)(3)(A) must be narrowly construed because administrative expenses are exceptions to the Bankruptcy Code's priority scheme.

Administrative expenses are allowed only for "the actual, necessary expenses… incurred by a creditor that files a petition under section 303." 11 U.S.C. §503(b)(3)(A). This covers only: (i) the filing fee, (ii) the cost of service of process; and (iii) minimal, direct out-of-pocket expenses necessary to file the petition. Thus, the Petitioners are entitled to (i) the $338 filing fee incurred, (ii) the costs of serving the Delaware Secretary of State; and (iii) minimal, direct out-of-pocket expenses necessary to file the petition.

### 2. Section 503(b)(4) Allows for Reasonable Attorneys' Fees for Work Necessary To File the Involuntary Petition

Section 503(b)(4) allows for reasonable attorneys' fees for work necessary "to file" the Involuntary Petition. Therefore, the Petitioners may only recover reasonable

attorneys' fees for: (i) drafting the Involuntary Petition, (ii) researching eligibility and numerosity, (iii) preparing exhibits for the filing, (iv) coordinating with other Petitioners; and (v) filing and serving the Petition. The cutoff date for fees incurred is June 12, 2024, the date the Petition was filed.

The Involuntary Petition lists only Jonathan Stemerman as counsel for Petitioners. [Bankr. 1] The Involuntary Petition was a short, check-the-box, three-page form (Official Form 205) followed by forms with the names of the Petitioners and counsel for the Petitioners. No exhibits or copies of the debentures on which the claims were based were filed with the Petition.

The Petitioners' own invoices confirm that the work necessary to prepare and file the involuntary petition was minimal and completed by June 12, 2024. Based on the Movant's Invoice No. 3237168, dated July 3, 2024, for the period through June 30, 2024, all fees billed from March 20, 2024 through **June 12, 2024**, the date the Involuntary Petition was filed, total $10,770.00 [Bankr. D.I. 176-2, Exhibit B, pp. 2-5] Additional fees relating to service of process incurred on June 13, 2024 total $905.00. [D.I. 176-2, p. 4-5 of 42]. Thus, the maximum amount Petitioners could possibly claim for <u>fees</u> related to filing and serving the Involuntary Petition is a total of **$11,675.00.**

However, even this amount includes non-compensable fees that have nothing to do with filing an involuntary petition (i.e., $700 for talking to a prospective

purchaser on 4/03/24; $262.50 for correspondence with John SR re offer to settle on 5/22/24). Thus, after deducting these non-petition-related fees, the maximum amount due for fees related to filing and serving the Involuntary Petition would be **$10,712.50.**

Courts uniformly hold that petitioning creditors may recover only the expenses and attorney's fees necessary to prepare and file the involuntary petition. Fees incurred litigating the case or litigating against a creditor are not compensable. Yet, the Petitioning Creditors, represented by experienced bankruptcy counsel, seek litigation fees for numerous reasons, including but not limited to: (i) opposing the Debtor's and Vitale's motions in this Court, (ii) opposing the Debtor's and Vitale's appeals, (iii) preparing for and taking depositions, (iv) preparing for and attending evidentiary hearings, (v) engaging in extensive litigation strategy, (vi) communicating with their own clients, (vii) communicating with potential purchasers, (viii) communicating with brokers, (ix) preparing declarations and exhibits, (x) communicating with other courts, (xi) and drafting appellate filings. None of these items are compensable under any reading of §503(b)(3)(A) or §503(b)(4).

**The Cases Cited by Petitioners Provide No Support for Their Claim for Additional Fees**

The Petitioners cite four cases in support of their contention that they are entitled to professional fees other than those incurred to prepare and file the

involuntary petition. None of these cases arise from the Third Circuit. The cases cited are remote from the case at bar and provide no support for an award of additional fees in this case.

The Petitioners primarily rely on *In re Westek Georgia, LLC*, 317 B.R. 567 (Bankr. M.D. Ga. 2004), in support of their contention they are entitled to additional legal fees for prosecuting the case. [Fee Motion, Bankr. 176, at ¶par. 38]. Petitioners' reliance is misplaced. *Westek* not only fails to support the Petitioners' position, it undermines it. The *Westek* court applied the narrow statutory allowance in §§503(b)(3)(A) and 503(b)(4) for expenses and attorney's fees "in connection with the filing of the petition." The court permitted only those fees necessary to prepare and file the involuntary petition in that case and expressly <u>declined</u> to expand administrative priority beyond the limited categories Congress enumerated.

The Court also expressly declined to allow fees for professional services sought by the applicant for services rendered in a state court. Thus, *Westak* also does not support Petitioners' request for fees incurred in other courts. Moreover, the *Westek* Court expressly noted that "[i]f Applicants incurred professional fees both for bringing the involuntary petition and for other activity in the case, only the former is compensable as an administrative expense." Citing 4 *Collier on Bankruptcy*, at ¶11503.113. *Westek*, *supra*, at 570.

The Petitioners also cite *In re On Tour, LLC*, 276 B.R. 407 (Bankr. D. Md. 2002). This case is an extreme outlier where there was no trustee, the debtor was non-responsive and the petitioning creditors "alone were responsible for the effective administration of this case for the 180 creditors scheduled." *Id.* at 417. Here, the Petitioning Creditors are not administering the estate. Here, a Chapter 7 Trustee, counsel for the Trustee, and the Trustee's accounting firm, are administering the estate, the Debtor is responsive and the petitioning creditors have had no role in administering the estate. Presumably, the Trustee will be submitting a motion for attorneys' fees and other expenses incurred by his accounting firm and counsel to the Trustee for administering the estate. Thus, the case at bar is remote from *On Tour* which provides no support for Petitioners' position.

The Petitioners also rely on *In re Hanson Industries, Inc.*, 90 B.R. 405 (Bankr. D. Minn. 1988). This case also involved an absent chapter 7 trustee. *Id*. at 417. The petitioning creditors in the case were forced to perform the debtor's duties, including preparing schedules. The case involved an untruthful debtor who refused to cooperate, refused to answer questions at his deposition, diverted corporate assets to himself and a family member, and refused to convert to Chapter 11, instead of opposing the involuntary petition. The case bears no relationship to the case at bar where a trustee is actively administering the estate, the petitioning creditors were not forced to perform the Debtor's duties, the Debtor has not refused to cooperate or

answer questions, and the Debtor has not diverted assets. Nor has this Debtor refused to convert to Chapter 11. On the contrary, in the case at bar, the Debtor moved to convert to a Chapter 11. The Petitioners here opposed the motion and the motion was denied.

The Petitioners also rely on *In re Rorabaugh*, 62 B.R. 623 (Bankr. D.Kan. 1986). This case also involves an unresponsive debtor where petitioning creditors were required to perform core administrative tasks because the debtor failed to do so, including preparing schedules and statements of financial affairs. The case at bar does not involve an unresponsive Debtor, the trustee is actively administering the estate, and the petitioning creditors were not required to perform core administrative tasks.

The foregoing cases involved absent or non-functioning trustees or non-functioning debtors where petitioning creditors were forced to administer the estate and perform the trustee's or debtor's functions. These cases bear no resemblance to the case at bar and provide no support for any award of attorneys' fees other than for those incurred in preparing and filing the involuntary petition. No case cited by Petitioners supports an award of additional fees in the circumstances present here.

## II. THE INVOICES SUBMITTED ARE DEFECTIVE, EXCESSIVE, DUPLICATIVE, IMPROPER AND UNREASONABLE

Even if a Petitioning Creditors' litigation fees were legally compensable, and they are not, the invoices submitted are defective, excessive, duplicative, improper and unreasonable. The invoices show no benefit to the estate whatsoever. Administrative expenses require a demonstrable and direct benefit to the estate, and the Petitioners have shown none. The invoices confirm that the entries were for the benefit of the Petitioners, not the estate. The Petitioners seem to be impliedly suggesting that the fact that they prevailed in obtaining an Order for Relief "benefited" the estate in this case. If that were the case, every Petitioning Creditor who obtained an Order for Relief would be entitled to litigation fees for prosecuting the case to a successful conclusion.

On the other hand, the invoices clearly show multiple attorneys billing for the same task, internal conferences, strategy sessions, billing for clerical tasks, billing for all types of communications, and billing for administrative purposes. The invoices are replete with deletions. Exhibit B, as filed with the Court, [Bankr. D.I. 176-2] and the hard copy mailed to the undersigned, contain numerous blacked-out entries throughout. A reviewing Court could not possibly consider fees for entries it cannot even see. None of the entries in Exhibit B are tied to any estate benefit. A fee applicant cannot meet its burden of proof when it withholds the very information

the Court must evaluate. The Petitioners should be required to provide copies of the invoices without any blacked-out entries.

The invoices submitted are also replete with block billing. Block billing is particularly improper in bankruptcy cases because the applicant bears the burden of proving reasonableness with specificity. Even if the fees were theoretically compensable, which they are not, block billing alone warrants denial. Given the extensive block billing, there is no way for a reviewing court to determine what work was actually done, how long each task took, whether the time spent was reasonable, and whether the work benefited the estate. Courts routinely deny fees where block billing is used. Bankruptcy courts require detailed, itemized time entries. Block billing is the opposite. Block billing makes it impossible to determine the necessity for or reasonableness of the services. Inasmuch as the Petitioners bear the burden of proving reasonableness, the application, even if legally allowed, would have to be denied.

**The Petitioning Creditors Improperly Seek Compensation for Work Performed by Jeffrey Wurst, Esquire, Who Testified as a Witness**

The invoices include substantial time billed for Jeffrey Wurst, Esquire. The Petitioners called two witnesses in their case. Mr. Wurst was one of them. In fact, he was their principal witness.

The dual role of advocate and witness is prohibited under well-established rules. Delaware Lawyers' Rule of Professional Conduct 3.7, which applies to all

13

attorneys who appear or participate in proceedings before this Court, provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. This rule applies equally to out-of-state attorneys who participate in a matter through association with Delaware counsel or through their firm's representation of a party. Mr. Wurst was a member of the law firm that represented the Petitioners at trial. Courts consistently hold that a lawyer who testifies as a fact witness cannot simultaneously serve as litigation counsel and fees incurred in violation of Rule 3.7 are not compensable. The rule exists because a lawyer-witness's dual role creates an inherent conflict, undermines the reliability of the testimony, and compromises the integrity of the proceeding.

Here, Mr. Wurst testified as a fact witness in this case. Yet, the Petitioners seek to recover his legal fees for work performed in the same matter, including time he billed for preparing for his own deposition, preparing his own witness proffer, and testifying and "appearing in Court and testifying" as a witness.

A lawyer who serves as a fact witness cannot simultaneously bill as litigation counsel for the same matter, let alone for time spent preparing his own proffer and testifying in the case. Mr. Wurst was presented to this Court as a witness in this case, not as counsel in the case and not as an expert witness. His dual role in this case and the fact that he was being paid as an attorney in the case and while testifying as a witness in the case was improper. The Petitioners now want the Debtor's estate to

pay this witness's legal fees, not only for serving as counsel in the case, but for preparing for his own deposition, preparing his own testimony (proffer), and while testifying. The following invoices submitted by Petitioners confirm this.

(1) On November 19, 2024, Mr. Wurst billed $1,750, in part, for "[p]reparation for and deposition of **me** by alleged debtor …" (Emphasis added.) [D.I. 176-2, p. 11 of 42].

(2) On November 22, 2024, Mr. Wurst billed $1,050, in part, to "commence preparation for 12/4 hearing" [D.I. 176-2, p. 12 of 42].

(3) On November 27, 2024, Mr. Wurst billed $5,250 as "Trial preparation….." [D.I. 176-2, p. 12 of 42].

(4) On December 1, 2024, Mr. Wurst billed $5,687.50 for "Trial preparation" including "**drafting and revising Wurst proffer."** (Emphasis added.) [D.I. 176-2, p. 12 of 42]

(5) On December 2, 2024, Mr. Wurst billed $2,362.50 for "Attention to trial exhibits…" [D.I. 176-2, p. 12 of 42].

(6) On December 3, 2024, Mr. Wurst billed $3,675 to "**Review and revise Jon's draft of the Wurst proffer;** review Wurst deposition transcript; review Arneault proffer; continue trial preparation…" (Emphasis added.) [D.I. 176-2, p. 12-13 of 42].

15

(7) On December, 4, 2024, the first day of the evidentiary hearing, Mr. Wurst billed $6,562.50 for "Continued prep for hearing (review of depo transcripts while travelling to DE); **court appearance on debtor's motion to dismiss case**." (Emphasis added.) [D.I. 176-2, p. 13 of 42].

(8) On January 13, 2025, Mr. Wurst billed $612.50 for "**Review of previously drafted proffer and draft some additional language**. [D.I. 176-2, p. 14 of 42].

(9) On January 14, 2025, Mr. Wurst billed $700.00 to "**Review revised proffers and revise accordingly.**" [D.I. 176-2, p. 14 of 42]

(10)   On January 15, 2025, Mr. Wurst billed $1,312.50 for "Trial preparation, communication with the court, Ted Arneault, Harold Bordwin." [D.I. 176-2, p. 15 of 42]

(11)   On January 16, 2025, the second day of the evidentiary hearing, when he testified, Mr. Wurst billed $6,125.00 for "Preparation for **and appearance at evidentiary hearing** as well as follow up meetings and correspondence." (Emphasis added.)[D.I. 176-2, p. 15 of 42].

Actually, Mr. Wurst did not "appear[] at [the] evidentiary hearing." He testified via zoom from his cabin on a cruise ship.

As Petitioners' own records confirm, Mr. Wurst was paid for preparing his own proffer and for "appearing at the evidentiary hearing" and testifying as a witness. This was improper.

The undersigned reserves all rights to seek appropriate relief regarding the admissibility, weight, and propriety of Mr. Wurst's testimony.  The undersigned does not request that the Court resolve these ethical issues in connection with this Fee Motion. She merely notes that the Petitioners' invoices raise serious concerns that further underscore why the fees requested cannot be allowed as "administrative expenses."

These irregularities are compounded by the fact that the Petitioners' filing is itself procedurally deficient. The Petitioners' offer Exhibit B as a business record. However, there is no custodial declaration, no declaration authenticating the invoices, no statement of reasonableness, and no evidence of reliability. These defects alone require denial of the motion.

The Fee Motion was obviously submitted with the expectation that it would not be scrutinized because the fees it seeks are so far outside the scope of compensable petition-related fees and expenses allowed under §503(b)(3)(A) and §503(b)(4). The Petitioners filed this Fee Motion knowing that any creditor wishing to object to the Fee Motion would be forced to incur substantial fees to retain Delaware counsel to review the Fee Motion, research the applicable law relating to

the Fee Motion, and analyze more than forty-two pages of heavily redacted, block-billed invoices. The Petitioners rightfully assumed that most creditors would not expend the substantial funds necessary to retain counsel to do so within the short period of time allowed for filing an objection.

The Petitioners' attempt to improperly shift the cost of their own litigation fees onto the Debtor's estate by submitting fee requests and invoices that require other creditors to expend substantial sums just to review them or oppose them, should not be condoned. There was simply no statutory or other legal basis for the extraordinary fees sought here. The Bankruptcy Court should not allow a legally unjustified fee application to be filed with impunity, especially one that imposes unnecessary financial burdens on the very creditors whose recoveries would be diminished and subordinated to such legally unjustified claims.

## CONCLUSION

The Petitioners ask this Court to ignore the American Rule, ignore the Bankruptcy Code, and turn §503(b)(3)(A) and §503(b)(4) into an unfettered right for a petitioning creditor in an involuntary bankruptcy case to obtain attorneys' fees incurred in litigating a case, not only in the Bankruptcy Court, but on appeal in other courts. The Petitioners want the Debtor's estate to underwrite the very litigation they instituted in this Court, to completely eliminate their financial litigation risks, and

18

convert legal fees that are not even recoverable under the Bankruptcy Code into priority administrative claims that would leapfrog every other creditor in this case.

Granting this Motion would be contrary to the American Rule and the Bankruptcy Code, would completely distort the Code's priority scheme, and would create a fee-shifting right Congress did not authorize. Moreover, it would set a dangerous precedent that would only encourage petitioners to file involuntary petitions knowing they could use §503(b) as an unlimited litigation-funding mechanism.

The only allowable expenses here are the filing fee, service costs, minimal out-of-pocket filing expenses, and the limited professional fees directly tied to preparing the involuntary petition. All other amounts must be denied in full.

## RELIEF REQUESTED

For the reasons stated above, the undersigned respectfully requests that the Court:

(1)  Deny the Motion in its entirety, except for: (i) the $338 filing fee incurred, (ii) the costs of serving the Delaware Secretary of State; (iii) minimal, out-of-pocket expenses necessary to file the petition; and (iv) professional fees not to exceed $10,712.50; and

(2)  Grant such other relief as the Court deems just and proper.

Dated: February 19, 2026

Respectfully submitted,
/s/ Deborah A. Vitale
Deborah A. Vitale
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

# CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, a true and correct copy of the foregoing, OBJECTION OF CREDITOR, DEBORAH A. VITALE, TO PETITIONING CREDITORS' FIRST MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. §§ 503(b)(3)(A) AND 503(b)(4), was served on the following in the manner indicated below:

Served via Electronic Mail
Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801
Email: jstemerman@atllp.com

Served via Electronic Mail
Bradford J. Sandler, Esquire
Peter J. Keane, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
Email: pkeane@pszjlaw.com
Counsel for the Trustee

Served via Electronic Mail
Robert D. Goldberg, Esquire
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE  19899
Email: goldberg@batlaw.com
Former counsel to Debtor

Served via Electronic Mail
George L. Miller, Trustee
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd, Suite #950
Philadelphia, PA 19103
Email: gmiller@mctllp.com

Served via Electronic Mail
U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Email: USTPRegion03.WL.ECF@USDOJ.GOV

Served via Electronic Mail
Office of the United States Trustee
U.S. Trustee for Region 3
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Attn. John Lipshie
Email: jon.lipshie@usdoj.gov

/s/ Deborah A. Vitale
DEBORAH A. VITALE
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com