## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | |
| ) | Chapter 7 |
| DIAMONDHEAD CASINO ) | |
| CORPORATION, ) | C. A. No. 24-11354-JKS |
| ) | |
| ) | Objection Deadline: March 5, 2026 |
| Debtor. ) | Sale Hearing Date: March 10, 2026 |
| ) | 11. A.M. (ET) |

### OBJECTION OF CREDITOR, DEBORAH A. VITALE, TO AUCTION/SALE HELD ON MARCH 4, 2026

Deborah A. Vitale ("Vitale"), Creditor, respectfully submits this Objection to the Auction/Sale conducted on March 4, 2026. and as grounds therefore states as follows:

### I. INTRODUCTION

The Auction/Sale conducted on March 4, 2026 cannot be approved because the Trustee conducted the process in a manner that was procedurally defective, value-destructive, and inconsistent with the Trustee's fiduciary obligations. The Auction/Sale was conducted in a manner that was negligent and/or grossly negligent, and inconsistent with the Trustee's fiduciary duty to maximize value for the estate. The process was tainted by, but not limited to, the following:

(1) disclosure of confidential information to a single bidder;

(2) rejection of a qualified stalking horse bidder on arbitrary terms;

1

(3) affirmative interference with competitive bidding, including ordering the largest creditor not to communicate with actual or potential bidders;

(4) lack of adequate notice of extensions and material changes to bidding procedures; and

(5) conduct that chilled bidding and reduced value.

Because the sale process was fundamentally compromised, the Court cannot approve any sale without first holding an evidentiary hearing.

## II. RELEVANT PROCEDURAL BACKGROUND

1. On February 24, 2026, the Trustee, by counsel, filed a Sixth Notice of Extended Sale Deadlines noticing an Auction for March 4, 2026. [D.I. 182]

2. On March 4, 2026, an Auction/Sale was conducted in which, upon information, there was only a single bidder.

## III. THE AUCTION/SALE PROCESS WAS DEFECTIVE AND CHILLED COMPETITIVE BIDDING

### A. Disclosure of Confidential Information to a Single Bidder

Representatives of the Trustee disclosed confidential information regarding the status of potential offers to the successful bidder. This conduct is inconsistent with a fair, competitive, and neutral auction process and undermined the integrity of the auction process.

### B. Rejection of a Qualified Stalking Horse Bidder

I was informed that a bidder offered to serve as a stalking horse bidder. I am informed that he offered to bid $15,000,000 with a 3% breakup fee and reimbursement of costs. Counsel for the Trustee rejected this bid and informed the bidder he must instead offer $17,500,000, with no breakup fee and costs capped at $150,000. As a result, the bidder became angry, declined to serve as a stalking horse, and reduced his bid to $5,000,000. Instead of maximizing the estate, the Trustee reduced it substantially.

### C. Trustee Interference With Bidders and Instructions Not to Communicate With the Largest Creditor

The undersigned brought in a bidder who posted proof of funds of $25 million during a conference call with the Trustee's representative. This bidder sought to preserve the public company and requested a copy of a stock purchase agreement that covered the public company. On February 2, 2026, the undersigned, who was afraid to do anything without the Trustee's written permission for fear he would retaliate against her, requested the Trustee's written permission to edit a prior agreement and forward it to the interested party.

The Trustee not only refused to permit the undersigned to edit the agreement and send it to the interested party, but counsel for the Trustee informed the undersigned Creditor, in writing, that she was "**not authorized to interfere with**

**the sale process, including, without limitation, speaking with any actual or potential bidders.**" (Emphasis added.)

The undersigned, who had already brought in four viable prospective bidders, immediately ceased all efforts to bring in additional bidders and ceased communicating with prospective bidders she had already been speaking with. This directive materially chilled participation.

### D. Lack of Notice of Extensions and Material Changes

The Trustee's multiple extensions were virtually useless since no one seemed to know about them and they appeared to be designed for the benefit of specific bidders. Actual and potential bidders did not receive notice of extensions of deadlines, changes in required deposits, changes in bidding procedures, and other material terms for bidding. Third persons dealing with the Trustee's representatives described the process in unflattering terms (i.e., "These guys don't know what they are doing.")

### E. Refusal to Allow Use of Creditor's Lien as Credit

The Trustee refused to allow Ms. Vitale, the largest creditor, to use her substantial lien as partial payment or credit toward the purchase price of Mississippi Gaming Corporation. This refusal further depressed competitive bidding.

### F. The Trustee Took Affirmative Steps That Minimized Value

The Trustee's actions, including restricting communication, rejecting a qualified stalking horse bidder, failing to provide adequate notice to actual or potential bidders, and disclosing confidential information, minimized the effectiveness of the auction and reduced the price obtained, in violation of the Trustee's fiduciary duties.

## IV. LEGAL STANDARD

A Chapter 7 Trustee must conduct a sale in a manner that is fair, transparent, and designed to maximize value. A sale cannot be approved where the sale process is tainted by procedural irregularities, material information is selectively disclosed, or where the process chills bidding. A sale conducted under such circumstances is voidable and cannot be approved without a full evidentiary record.

## V. REQUEST FOR RELIEF

For the reasons stated above, the undersigned respectfully requests that the Court:

1. Hold an evidentiary hearing before approving any sale;
2. Decline to approve the March 4, 2026 sale unless and until the Trustee demonstrates that the process was fair, competitive, and value-maximizing; and
3. Grant such other and further relief as the Court deems just and proper.

Dated: March 5, 2026

Respectfully submitted,
/s/ Deborah A. Vitale
Deborah A. Vitale
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2026, a true and correct copy of the foregoing, Objection of Deborah A. Vitale, to Auction/Sale held on March 4, 2026, was served on the following in the manner indicated below:

Served via Electronic Mail
Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801
Email: jstemerman@atllp.com

Served via Electronic Mail
Bradford J. Sandler, Esquire
Peter J. Keane, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
Email: pkeane@pszjlaw.com
Counsel for the Trustee

Served via Electronic Mail
Robert D. Goldberg, Esquire
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE 19899
Email: goldberg@batlaw.com
Former counsel to Debtor

Served via Electronic Mail
George L. Miller, Trustee
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd, Suite #950

Philadelphia, PA 19103
Email: gmiller@mctllp.com

<u>Served via Electronic Mail</u>
U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Email: USTPRegion03.WL.ECF@USDOJ.GOV

<u>Served via Electronic Mail</u>
Office of the United States Trustee
U.S. Trustee for Region 3
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Attn. John Lipshie
Email: jon.lipshie@usdoj.gov

/s/ Deborah A. Vitale
DEBORAH A. VITALE
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com