## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

RECEIVED

2026 MAR 16  A 10: 08

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In Re: | ) |
| | ) Chapter 7 |
| DIAMONDHEAD CASINO | ) |
| CORPORATION, | ) C. A. No. 24-11354-JKS |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |

## MOTION TO STRIKE THE TESTIMONY OF A PAID FACT WITNESS AND TO VACATE THE ORDER FOR RELIEF UNDER RULE 60

Creditor, Deborah A. Vitale ("Creditor"), respectfully moves for entry of an order (1) striking the testimony of a paid fact witness and (2) granting relief under Fed. R. Civ. P. 60(b)(3), 60(b)(6), or 60(d), as made applicable by Fed. R. Bankr. P. 9024. In support of this Motion, Creditor states as follows:

## I.    PRELIMINARY STATEMENT

This Motion arises from conduct that strikes at the heart of the judicial process. The Petitioners presented one of their own lawyers, a licensed attorney, as a fact witness, while secretly compensating him for preparing and delivering his testimony. Petitioners and their attorneys concealed the payment to a fact witness from the Court, relied on the tainted testimony to obtain an Order for Relief, and now seek to have the Debtor's estate reimburse them for payment made to a fact witness in violation of federal law.

1

Payment to a fact witness is not a technical violation or a matter of credibility. It is a violation of 18 U.S.C. §201(c), a breach of Delaware Rule of Professional Conduct 3.4(b), and constitutes conduct the Third Circuit recognizes as fraud on the court. The Third Circuit has repeatedly held that attorney-implicated fraud is uniquely corrosive and more serious than perjury because the integrity of the judicial process depends on the candor of its officers. When attorneys knowingly pay a fact witness, particularly a lawyer within their own firm, and then conceal that fact from the tribunal, the resulting taint is incompatible with a fair adjudicative process.

The nondisclosure of the payment to a fact witness, by attorneys who owed an affirmative duty of candor to the Court, constitutes the type of attorney-implicated misconduct the Third Circuit has repeatedly held requires vacatur. The concealment persisted until long after the time to appeal had expired, ensuring the tainted Order for Relief could not be challenged on this pivotal issue through ordinary appellate mechanisms.

Because the Court may not base findings on testimony that is inadmissible as a matter of law, the Order for Relief rests on evidence the Court lacked authority to consider. The testimony of the paid fact witness must be stricken, and the judgment vacated under Rule 60(b)(3), Rule 60(b)(6), and Rule 60(d)(3). The integrity of these proceedings requires no less.

## II.    RELEVANT PROCEDURAL BACKGROUND

1.  On June 12, 2024, the Petitioning Creditors filed an Involuntary Chapter 7 Petition against Diamondhead Casino Corporation. [Bankr. D.I. 1].

2.  On July 18, 2024, the Debtor filed a Motion to Dismiss the Involuntary Petition or, in the Alternative, to Convert the Case to a Chapter 11. [Bankr. D.I. 9]. On September 3, 2024, the Petitioners filed an Opposition to the foregoing Motion. [Bankr. D.I. 11].

3.  On <u>December 5, 2024</u> and <u>January 16, 2025</u>, the Bankruptcy Court held hearings on the motion. [Bankr. D.I. 25 and 32] The Debtor called three witnesses to testify on December 5, 2024. (The Court's building had to be evacuated due to a problem with burst pipes so the hearing was continued.)

4.  On January 16, 2025, the Petitioning Creditors called two witnesses to testify in their case: Messrs. Arneault and Wurst.

5.  On July 30, 2025, the Court issued an Opinion and Order <u>denying</u> the Debtor's Motion to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to Chapter 11. [Bankr. D.I. 42, 43].

6.  On July 31, 2025, the Court entered an Order for Relief in an Involuntary Case. [Bankr. D.I. 45].

**THE FEE MOTION**

7. On <u>February 2, 2026</u>, the Petitioners filed Petitioning Creditors' First Motion for Payment of Administrative Expenses Pursuant to §503(b)(3)(A) and §503(b)(4) ("the Fee Motion") [D.I. 176].

8. Petitioners sought $276,982.90 in *reimbursement* for administrative expenses, including $270,576.00 in professional fees and $6,068.90 in expenses for work performed through January 31, 2026, not only in this case, but in *other* cases in *other* courts, and in cases on appeal. [Bankr. D.I. 176].

9. Attached to the Fee Motion were approximately forty-two pages of invoices. [Bankr. D.I. 176-2].[1]

10. On February 19, 2026, the undersigned Creditor filed an Objection to the Fee Motion on grounds that, except for a maximum of $10,712.50, Petitioners were not statutorily entitled to reimbursement for the fees and expenses sought. [D.I. 179].

---

[1] Because these invoices are already available at D.I. 176-2 and duplicating 42 pages of invoices would unnecessarily burden the Court, the Movant cites to the existing docket entry rather than re-attaching the same invoices.

## III.    THE PETITIONERS' OWN FEE MOTION REVEALS THAT MR. WURST WAS A PAID FACT WITNESS

### A.    The Invoices Document Payment to a Fact Witness for Testimony

On February 2, 2026, the Petitioners filed their Fee Motion [D.I. 176]. The Fee Motion was accompanied by forty-two pages of itemized invoices for work performed by Armstrong Teasdale LLP. [D.I. 176-2]  In that filing, Petitioners sought to convert their litigation fees in this case, in *other* cases in *other* courts, and in cases on appeal, into a priority administrative claim against the Debtor's estate in *this* case that would take precedence over other creditors.

These invoices include multiple entries showing that Jeffrey Wurst, presented to this Court *solely* as a **fact witness**, billed for preparing and presenting fact testimony. Mr. Wurst's billings begin shortly before the filing of the Involuntary Petition and continue through March 5, 2025.[2]

The relevant entries are not ambiguous. They include the following eleven separate billings for preparing to testify or for testifying:

(1) On November 19, 2024, Mr. Wurst billed $1,750, in part, for **"[p]reparation for and deposition of me** by alleged debtor ..." (Emphasis added.) [D.I. 176-2, p. 11 of 42].

---

[2] By April of 2025, Mr. Wurst was no longer with Armstrong Teasdale LLP, but was with Bodner Law PLLC.

(2)  On November 22, 2024, Mr. Wurst billed $1,050, in part, to "**commence preparation for 12/4 hearing**" [D.I. 176-2, p. 12 of 42].

(3)  On November 27, 2024, Mr. Wurst billed $5,250 as "**Trial preparation**…" (Emphasis added.)[D.I. 176-2, p. 12 of 42].

(4)  On December 1, 2024, Mr. Wurst billed $5,687.50 for "Trial preparation" including "**drafting and revising Wurst proffer.**" (Emphasis added.) [D.I. 176-2, p. 12 of 42].

(5)  On December 2, 2024, Mr. Wurst billed $2,362.50 for "Attention to **trial exhibits…**" [D.I. 176-2, p. 12 of 42].

(6)  On December 3, 2024, Mr. Wurst billed $3,675 to "**Review and revise Jon's draft of the Wurst proffer; review Wurst deposition transcript**; review Arneault proffer; continue **trial preparation**…" (Emphasis added.) [D.I. 176-2, p. 12-13 of 42].

(7)  On December 4, 2024, the first day of the evidentiary hearing, Mr. Wurst billed $6,562.50 for "**Continued prep for hearing (review of depo transcripts while travelling to DE); court appearance on debtor's motion to dismiss case.**" (Emphasis added.) [D.I. 176-2, p. 13 of 42].

(8)  On January 13, 2025, Mr. Wurst billed $612.50 for "**Review of previously drafted proffer and draft some additional language.** (Emphasis added.) [D.I. 176-2, p. 14 of 42].

(9)  On January 14, 2025, Mr. Wurst billed $700.00 to "**Review revised proffers and revise accordingly."** (Emphasis added.) [D.I. 176-2, p. 14 of 42].

(10)  On January 15, 2025, Mr. Wurst billed $1,312.50 for "**Trial preparation,** communication with the court, Ted Arneault, Harold Bordwin." (Emphasis added.) [D.I. 176-2, p. 15 of 42].

(11)  On January 16, 2025, the second day of the evidentiary hearing, when he testified, Mr. Wurst billed **$6,125.00** for "**Preparation for and appearance at evidentiary hearing** as well as follow up meetings and correspondence." (Emphasis added.)[D.I. 176-2, p. 15 of 42].

Actually, Mr. Wurst did not appear at the evidentiary hearing on January 16, 2025. He testified via zoom from his cabin on a cruise ship while on vacation.

As the foregoing invoices reveal, Mr. Wurst billed for preparing for and attending his deposition, drafting and revising his proffer, reviewing trial exhibits, reviewing his deposition transcript, preparing for the evidentiary hearing, and for appearing and testifying at the evidentiary hearing, via zoom. The foregoing entries are clear and unambiguous. They document payment to a fact witness for testifying and preparing to testify which is prohibited as a matter of law.

Fact witnesses may not be paid.  And while expert witnesses may be paid, Mr. Wurst (i) was not designated as an expert witness, (ii) was not qualified as an expert witness, (iii) was not offered to the Court as an expert witness, and (iv) was not

accepted by the Court as an expert witness under Rule 702. The invoices therefore establish that Mr. Wurst was a paid fact witness.

## B.   The Payments Were Concealed Until February 2026

Ironically, the fact that Petitioners paid their own fact witness would have remained hidden had Petitioners not filed their recent Fee Motion. The concealment continued until long after the time to appeal the Order for Relief had expired, thus ensuring that the tainted testimony could not be challenged through ordinary appellate mechanisms.

## C.   Petitioners Authorized and Sought Reimbursement for the Ilegal Payments

The billing entries for Mr. Wurst's testimony were submitted to the Petitioners, who paid (or agreed to pay), the charges that compensated their own fact witness. Petitioners then submitted the same invoices to this Court and sought reimbursement from the Debtor's estate for those illegal payments. [D.I. 176, D.I. 176-2]. Petitioners therefore not only knew their fact witness was being paid, but they attempted to convert those unlawful payments into a priority administrative claim against the Debtor's estate. [D.I. 176]. This conduct places the fraud squarely at the feet of the Petitioners and their attorneys.

## IV.  PAYMENT TO A FACT WITNESS IS PROHIBITED UNDER 18 U.S.C. §201(c) AND DELAWARE RULE OF PROFESSIONAL CONDUCT 3.4(b)

### A.    Federal Law Prohibits Payment to a Fact Witness

Federal law, with exceptions not applicable here, independently prohibits payment to a fact witness. Under 18 U.S.C. § 201(c)(2), it is unlawful, "directly or indirectly," to give "anything of value to any person" for testimony given. Likewise, under 18 U.S.C. § 201(c)(3), it is unlawful, "directly or indirectly," to receive, accept, or agree to receive or accept anything of value as a witness. The statute does not require proof of payment. The offense is complete the moment a person offers, agrees to give, or a witness agrees to accept anything of value. The statute reaches the promise, agreement, or attempt to compensate a witness, even if no money ever changes hands. The illegality lies in the offer and agreement to compensate a fact witness.

The invoices submitted by Petitioners show by clear, unequivocal and convincing evidence that Mr. Wurst billed for preparing and delivering testimony and that his own law firm accepted payment for those charges. This is precisely the type of payment for testimony that 18 U.S.C. §§ 201(c)(2) and (3) prohibit. The penalty for violation includes fine or imprisonment for not more than two years, or both. While a Court need not find criminal intent to grant relief under Rule 60, the statute reflects Congress's judgment that paid factual testimony is inherently corrupting and incompatible with the truth-seeking function of a federal tribunal.

A lawyer-witness cannot avoid the prohibition by simply characterizing the payment as "legal fees" and routing the payment through his law firm. The fact that the law firm, rather than the lawyer, received the payment does not alter the analysis. Compensation to a fact witness, whether direct or indirect, is prohibited, regardless of the billing conduit. The statute prohibits giving or receiving anything of value "for or because of" testimony regardless of the conduit. The presence of conduct falling within the scope of a criminal statute underscores the egregiousness of the conduct here and why the testimony must be stricken and the Order for Relief vacated.

## B. Delaware Rule of Professional Conduct 3.4(b) Prohibits Paying a Fact Witness

Delaware Rule of Professional Conduct 3.4(b), with limited exceptions not applicable here, prohibits offering any inducement to a witness that is prohibited by law. Fact witnesses may not be compensated for preparing or giving factual testimony. Compensation renders the testimony inadmissible.

Since the prohibition is so well understood and the consequences for violation so severe, cases dealing with such conduct are extremely rare. However, the Delaware Court of Chancery's decision in *BAE Systems Information & Electronic Systems Integration, Inc. v. Lockheed Martin Corp.*, 2011 Del. Ch. LEXIS 117, addressed a situation similar to that involved here. The case involved a consultant wearing two hats, one as a consultant and one as a fact witness. Vice Chancellor

Noble makes it clear that fact witnesses cannot be paid for their testimony or preparing to testify. The Court held that, while a consultant may be paid for his consulting work, he could <u>not</u> be paid for time spent as a fact witness. (*Id.* at pp. 9-10).

Here, the violation was far more serious. The witness was not a consultant, but a licensed attorney and a partner in the very law firm representing Petitioners. Both he and his law firm billed for his time spent preparing as a fact witness and testifying as a fact witness. This was a direct violation of Rule 3.4(b) making his testimony inadmissible at its inception.

## C. The Lawyer-Witness Conflict of Interest is Non-Waivable

The payments to Mr. Wurst here also created a serious, non-waivable, conflict of interest. By billing for his own testimony, the witness, his co-counsel, and their law firm, were not only on both the "giving" and "receiving" ends of a prohibited payment, but they required their own clients to make the payment, thereby involving their own clients in conduct prohibited by 18 U.S.C. § 201(c). The attorneys used their own clients as part of the payment conduit.

No informed consent could cure such a conflict. A lawyer cannot obtain valid consent to engage in conduct that violates federal law, professional ethics or the duty of candor to the tribunal. The conflict is non-waivable. The notion that any informed consent could legitimize such conduct is untenable.

## V.  LEGAL STANDARD

### A.  Relief is Warranted Under Rule 60

Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into the Federal Rules of Bankruptcy Procedure.  In this case, Rule 60 permits relief from an Order based on:

(i)    Rule 60(b)(3): fraud, misrepresentation, or misconduct by an opposing party,

(ii)   Rule 60(b)(6): any other reason justifying relief, and

(iii)  Rule 60(d)(3): the Court's inherent power to set aside a judgment for fraud on the court.

A motion under Rule 60(b) must be filed within a reasonable time and under Rule 60(b)(3), no more than one year after entry of the order. Here, the Order for Relief was entered on July 31, 2025. [D.I. 45]. Thus, this motion is timely under Rule 60(b)(3) and (6). There is no time limit for fraud on the court under Rule 60(d).

### 1.  Rule 60(b)(3): Fraud, Misrepresentation, or Misconduct

Rule 60(b)(3) authorizes relief where an opposing party engages in fraud, misrepresentation, or misconduct that prevents the moving party from fully and fairly presenting its case. Concealment of material facts constitutes misconduct. Here, Petitioners concealed that their own lawyer was a paid fact witness, depriving the Court of information essential to evaluate admissibility.

## 2. Rule 60(b)(6): Extraordinary Circumstances

Rule 60(b)(6) is a catch-all provision reserved for "extraordinary circumstances." Payment to a fact witness who is an attorney, concealment of that payment, and reliance on testimony that was inadmissible at its inception constitute precisely the type of extraordinary circumstances that warrant relief. The Third Circuit has repeatedly emphasized that attorney-implicated misconduct strikes at the very integrity of the judicial process.

## 3. Rule 60(d)(3): Fraud on the Court

Rule 60(d)(3) preserves the court's inherent power to set aside a judgment for fraud on the court. Fraud on the court includes corruption of the judicial process, concealment of material facts, and attorney-implicated misconduct that deceives the tribunal.

The Third Circuit has held that fraud on the court occurs when an officer of the court engages in egregious misconduct that undermines the court's ability to perform its impartial adjudicative function. Relief requires clear, unequivocal, and convincing evidence of: (1) intentional fraud; (2) by an officer of the court; (3) directed at the court itself; and (4) that successfully deceived the court. All four elements are present here.

## B.  Strict Disclosure Obligations in Bankruptcy Proceedings Are Required

Bankruptcy courts depend on full, candid, and timely disclosure of all compensation paid to professionals and disclosure of any conflicts of interest. This duty is self-executing and nondisclosure is sanctionable.

Messrs. Stemerman and Wurst, both experienced bankruptcy attorneys, were uniquely aware of these obligations. Their failure to disclose that a partner in their own firm was a paid fact witness deprived the Court of material information necessary to evaluate the admissibility of testimony. Because the Court relied on testimony that was inadmissible at its inception, the Order for Relief is irreparably tainted.

## ARGUMENT

### A. Payment to a Fact Witness Constitutes Fraud on the Court

The Petitioners knew that Mr. Wurst was being paid for preparing and testifying as a fact witness. Mr. Wurst knew he was being paid as a fact witness. Mr. Stemerman, his co-counsel, knew he was being paid as a fact witness. Armstrong Teasdale LLP knew Mr. Wurst was being paid as a fact witness. The Court did not know Mr. Wurst was being paid as a fact witness because this critical fact was deliberately concealed from the Court by those who did know.

The billings were not isolated errors.  There are at least eleven separate entries where Mr. Wurst billed for preparing to testify or testifying. These billings extend

over a significant period of time and the amounts billed are substantial. The intent to bill for such time is unmistakable. Indeed, Mr. Wurst's entry for "[p]reparation for and deposition of me" reflects a conscious awareness that he was charging for his role as a witness.

Likewise, his co-counsel and his law firm knew Mr. Wurst was billing for testifying and preparing to testify and allowed him to do so. They prepared the invoices, reviewed them, and submitted them to their clients for payment and are responsible for them. The fact that they attached the invoices to their Fee Motion further indicates that, although they had a final opportunity to delete the billings for Mr. Wurst's testimony, they chose not to do so. Instead, they allowed the illegal and unethical billings to stand so as to obtain additional legal fees.

## B. The Third Circuit's Fraud-on-the-Court Doctrine Requires Vacatur Under Rule 60(d)

"[T]he inherent power of federal courts to vacate a fraudulently obtained judgment-even years after the judgment was entered-has long been recognized by the Supreme Court." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S.238, 248-49 (1944). The Third Circuit applies the Supreme Court's fraud-on-the-court doctrine where attorney-implicated misconduct "directly affects the integrity of the judicial process" and prevents the court from performing its impartial adjudicative function. *Herring v. United States*, 424 F.3d 384, 386-87 (3d Cir. 2005) (citing *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

Fraud on the court includes the corruption or fabrication of evidence, concealment of material facts, and misconduct by attorneys that deceives the tribunal. The Third Circuit has no tolerance for fraud on the court committed by an attorney. Indeed, the Third Circuit considers it to be even worse than perjury. "There is an important distinction between perjury that is committed by a witness and fraudulent conduct that is directed at the court by one of its own officers. The latter has a much greater likelihood of undermining the working of the normal process of adjudication because courts rely on the integrity of their officers." *In re Bressman. (Baxter v. Baxter)*, 874 F.3d 142, 152 (3d Cir. 2017) (vacating a default judgment and dismissing an adversary complaint with prejudice *fourteen years* after it was entered due to fraud on the court by an attorney

Under controlling Third Circuit precedent, a court may set aside a judgment based upon its finding of fraud on the court when an officer of the court has engaged in "egregious misconduct." Such a finding must be supported by clear, unequivocal and convincing evidence of (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) where the conduct has successfully deceived the court. *Id.* at 150.

All four elements are satisfied here. Here, the conduct was clearly "egregious." It involved two officers of the Court and their law firm and constituted a violation of 18 U.S.C. §201(c) and Rule 3.4(b). The conduct is supported by

Petitioners' own documentation which was filed as an exhibit to the Petitioners' motion for administrative expenses [D.I. 176-2]. The documentation is clear, unequivocal and convincing evidence of the following:

## C. The Conduct was Intentional, Attorney-Implicated, and Directed at the Court

The conduct involved here was intentional. The billings are not the product of an isolated mistake. There are at least eleven separate entries where Mr. Wurst billed for preparing to testify or testifying. These billings extend over a significant period of time and the amounts billed are substantial. The fact that they repeatedly billed for payment to a fact witness for preparing to testify and testify underscores the fact that the billings were intentional.

This case does not involve fraud by a single officer of the Court. It involves fraud by at least two officers of the Court and their law firm. Both Mr. Wurst and Mr. Stemerman had an affirmative obligation to inform this Court that Mr. Wurst was a paid fact witness. They deliberately hid the fact from this Court knowing that had they disclosed the illegal and unethical payments, the witness would have been disqualified. Both attorneys owed a duty of candor to the tribunal which both violated. Instead, they allowed the Court to receive and rely on testimony that was inadmissible from its inception.

The misconduct was directed at the Court. Mr. Wurst's testimony was presented to the Court which served as fact-finder in this case. The Petitioners called

only two witnesses and Mr. Wurst's testimony was central to their case. The concealment deprived the Court of the ability to determine the admissibility of his testimony.

## D. The Concealment Successfully Deceived the Court

The concealment was successful. The Petitioners prevailed. The Court issued an Opinion and Order based on testimony that was inadmissible as a matter of law. The payments remained a secret until February 2, 2026, long after the time to appeal had expired, when Petitioners themselves inadvertently revealed the misconduct in their Fee Motion.

The witness was not a layperson unfamiliar with the rules governing testimony. He was a licensed attorney, a partner in the law firm representing the Petitioners, and an officer of the court. Likewise, his co-counsel was a seasoned bankruptcy attorney. Both knew full well that a fact witness could not be paid. Yet, both allowed the Court to expend substantial time and resources drafting its Opinion without knowing it did so based on the testimony of a paid fact witness whose testimony should never have been admitted.

## E. Attorney-Implicated Fraud Is the Most Serious Form of Fraud on the Court

Fraud committed by an attorney-witness is uniquely serious because it represents not merely a lapse in judgment, but a breach of professional duty by someone who understood the rules and chose to deliberately disregard them. The

financial motive makes the fraudulent conduct even more egregious inasmuch as both the witness, his co-counsel, and the law firm profited from the fraud. This was opportunism, calculated to convert fact testimony into additional legal fees. Such conduct is extraordinary, not only because it is so rare, but because it represents a conscious decision on the part of both attorneys to place financial gain above ethical duty.

The circumstances are further aggravated by the fact that Armstrong Teasdale, an experienced bankruptcy firm, condoned the unethical conduct so as to increase the firm's billings.  In essence, the witness was billing for testifying and the law firm was profiting from the witness's illegal and unethical billing. The conduct evinces a conscious decision on the part of the law firm to ignore its ethical obligations for financial gain.

As the foregoing demonstrates, the requirements to satisfy a fraud on the Court by an officer of the Court are satisfied here. The Third Circuit has repeatedly held that attorney-implicated fraud is the most serious form of fraud on the court and that where it does occur, vacatur is appropriate. "When [] counsel has failed to act with candor, preservation of the integrity of the judicial process may require courts to depart from their usual adherence to the principle that final judgments should be left undisturbed." *In re Bressman, (Baxter v. Baxter)*, 874 F.3d 142, 150 (3d Cir. 2017). Because the Court relied on testimony procured under circumstances the

Third Circuit recognizes as fraud on the court, vacatur is warranted under Rule 60(d)(3).

## VI.    THE ORDER FOR RELIEF IS IRREPARABLY TAINTED AND VACATUR THE ONLY REMEDY

The Petitioners presented only two witnesses at the evidentiary hearing. Thus, Mr. Wurst's testimony was central to the Court's findings of fact. Had Mr. Wurst's status as a paid fact witness been disclosed prior to testifying, he would not have been permitted to testify in the first place. Had his status been disclosed following his testimony, his testimony would have been stricken immediately. The concealed payment to a fact witness deprived the Court of critical, disqualifying information regarding one of only two witnesses presented by Petitioners and deprived the Debtor of a fair evidentiary hearing.

The damage cannot be undone. The Petitioners cannot plausibly contend that the Court did not rely on Mr. Wurst's testimony. Nor does Rule 60 permit a party to retroactively reweigh evidence or declare tainted testimony "unnecessary" after the fact. Once testimony is admitted and considered, particularly where it comes from one of only two witnesses, the testimony becomes part of the evidentiary foundation of the judgment. Because Mr. Wurst's testimony was inadmissible at its inception, the Court lacked competent evidence on which to base its findings.

Fraud on the court is never harmless and post-hoc rationalizations cannot cure a corrupted evidentiary record. Fraud on the court is not subject to harmless-error

review. The Third Circuit has made clear that once fraud on the court is established, the inquiry does not turn to whether the judgment might have been sustainable on other grounds or whether the misconduct ultimately altered the outcome. Fraud on the court "strikes at the integrity of the process itself" and therefore cannot be excused as harmless or cured by post-hoc reweighing of the evidence. Because the taint infects the tribunal's ability to perform its impartial adjudicative function, the judgment must be vacated without regard to whether the remaining evidence might independently support the result.

An order based on inadmissible testimony, procured in violation of a criminal statute and in violation of basic ethical obligations to the Court, simply cannot stand. The evidentiary record is irreparably tainted and the only remedy capable of restoring integrity to the process requires that the paid witness' testimony be stricken and the Order for Relief be vacated.

Because the fraud was committed by the Petitioners and their law firm, and not by the Trustee or the estate, equity requires that any administrative costs incurred as a result of vacating the tainted Order for Relief should be borne solely by the Petitioners and their law firm. Equity does not permit shifting the financial burden of their misconduct onto the Trustee or the estate. The estate and the Trustee and his representatives should be made whole, and the costs of remedying the fraud should fall squarely on the parties who caused it.

## CONCLUSION

The evidentiary record in this case was corrupted by undisclosed payment to a fact witness whose testimony was inadmissible at its inception. Petitioners concealed those payments, relied on the tainted testimony to obtain an Order for Relief, and are now seeking reimbursement from the estate for the illegal payments. Such actions undermine the integrity of the judicial process and deprive both the Debtor and the Court of the fair, transparent proceeding that the law requires.

Because the Order for Relief rests on testimony procured in violation of federal law and ethical rules, and because the resulting prejudice cannot be cured, the testimony of the witness must be stricken and the Order for Relief vacated. Vacatur is the sole remedy for fraud of this magnitude and the only remedy capable of restoring integrity to these proceedings.

Wherefore, Creditor Deborah A. Vitale respectfully requests that the Court:

(1)  Strike the testimony of Mr. Wurst in its entirety.

(2)  Vacate the Order for Relief in an Involuntary Case [D.I. 45].

(3)  Vacate the Order appointing a Trustee [D.I. 46].

(4)   Dismiss the case.

(5)  Require Petitioners and Armstrong Teasdale LLP to pay fees, costs and expenses incurred by the Trustee and his representatives since the Trustee was appointed.

(6)  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Deborah A. Vitale
DEBORAH A. VITALE
Creditor, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

Dated: March 11, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2026, a true and correct copy of the foregoing, Motion to Strike the Testimony of a Paid Fact Witness and to Vacate the Order for Relief Under Rule 60 and a [Proposed] Order, were served on the following in the manner indicated below:

Served via Electronic Mail
Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801
Email: jstemerman@atllp.com



Served via Electronic Mail
Bradford J. Sandler, Esquire
Peter J. Keane, Esquire
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, DE 19801
Email: bsandler@pszjlaw.com
Email: pkeane@pszjlaw.com
Counsel for the Trustee

Served via Electronic Mail
Robert D. Goldberg, Esquire
Biggs & Battaglia
921 N. Orange Street
Wilmington, DE  19899
Email: goldberg@batlaw.com
Former counsel to Debtor

Served via Electronic Mail
George L. Miller, Trustee
Miller Coffey Tate LLP
8 Penn Center
1628 John F Kennedy Blvd, Suite #950

Philadelphia, PA 19103
Email: gmiller@mctllp.com

Served via Electronic Mail
U.S. Trustee
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Email: USTPRegion03.WL.ECF@USDOJ.GOV

Served via Electronic Mail
Office of the United States Trustee
U.S. Trustee for Region 3
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
Attn. John Lipshie
Email: jon.lipshie@usdoj.gov

/s/ Deborah A. Vitale
DEBORAH A. VITALE
Creditor, Pro Se
1013 Princess Street
Alexandria, Virginia 22314
Telephone: (727) 510-1412
Email: vitaledav@aol.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In Re:                                          )
                                                )
 DIAMONDHEAD CASINO                             )
CORPORATION,                                    )       C. A. No. 24-11354-JKS
                                                )
        DEBTOR.                                 )       Chapter  7

## [PROPOSED] ORDER

Upon consideration of the Motion to Strike the Testimony of a Paid Fact Witness and to Vacate the Order for Relief Under Rule 60 (the "Motion") filed by Creditor, Deborah A. Vitale, and the opposition thereto, and the Court having determined that good cause exists to grant the relief requested;  IT IS HEREBY ORDERED that:

1. The Motion is GRANTED.

2. The testimony of Jeffrey Wurst is stricken in its entirety.

3. The Order for Relief in an Involuntary Case entered on July 31, 2025 [D.I. 45] is VACATED.

4. The Order appointing a Trustee entered on August 1, 2025 [D.I. 46] is VACATED.

5. The case is DISMISSED.

6. Petitioners and Armstrong Teasdale LLP are ordered to pay all fees, costs, and expenses incurred by the Trustee and his representatives since the Trustee was appointed.

7. The Court shall retain jurisdiction to interpret and enforce this Order and to grant any further relief deemed appropriate.

Dated: _____, 2026.

_____
J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE

2