**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMONDHEAD CASINO CORPORATION., | Case No. 24-11354 (JKS) |
| Debtor. | **RE: D.I. No. 192** |
| | **Objection Deadline: April 14, 2026 @ 4:00 p.m.** |
| | **Hearing Dates: April 21, 2026 @ 3:00 p.m.** |

**PETITIONING CREDITORS' OBJECTON TO CREDITOR DEBORAH A. VITALE'S
MOTION TO STRIKE TESTIMONY OF PAID FACT WITNESS AND TO VACATE
THE ORDER FOR RELIEF UNDER RULE 60**

Edson Arneault, Kathleen and James Devlin, J. Steven Emerson, Emerson Partners, J. Steven Emerson as Successor to the J. Steven Emerson Roth IRA, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, Barry and Irene Stark (collectively, the "Petitioning Creditors"), by and through their undersigned counsel, hereby file this omnibus objection (the "Objection") to the creditor Debora A. Vitale's ("Vitale") *Motion to Strike the Testimony of a Paid Fact Witness and to Vacate the Order for Relief Under Rule 60* [D.I. 192 (the "Motion")]. In support of this Objection, the Petitioning Creditors aver as follows:

**PRELMINARY STATEMENT**

1. Once more, this time through the Motion, Vitale challenges this Court's denial of debtor Diamondhead Casino Corporation's ("Diamondhead" or the "Debtor") challenge [D.I. 9] (the "Motion to Dismiss") to the involuntary petition [D.I. 1] (the "Involuntary Petition") filed by the Petitioning Creditors.

2. As with her previous challenges, the Motion must be denied because Vitale lacks standing to challenge the Involuntary Petition.

1

3.     Even if she did have standing, the Motion is meritless.

4.     As set forth below, billing Petitioning Creditor's for Mr. Wurst's time for his testimony and preparation for such testimony related to the Motion to Dismiss was entirely proper and there is no basis to strike his testimony.

5.     Moreover, even if Mr. Wurst's testimony was struck, it would not materially affect this Court's denial of the Motion to Dismiss.  As such, there is no basis to vacate this Court's prior orders related to the Motion to Dismiss (collectively, the "Orders").

6.     Finally, there was no fraud on the Court nor is vacatur of any order a proper sanction in this matter, even if the conduct complained of (which was proper) is determined to be improper in any respect.

7.     For these reasons, and as more fully set forth below, the Motion must be denied.

## ARGUMENT

### A. VITALE LACKS STANDING TO BRING HER MOTION AND, THEREFORE, HER MOTION MUST BE DENIED

8.     As a threshold matter, Vitale's Motion must be denied because Vitale lacks standing to challenge the Involuntary Petition.

9.     "It is well-established that a *creditor*, in contrast [to a debtor] does not have standing to contest an involuntary bankruptcy filing. *In re QDN LLC,* 363 F. App'x 873, 875-76 3d Cir. 2010).

10.    Adhering to Third Circuit precedent, this Court has already concluded that Vitale lacks standing to contest this instant involuntary filing. *See* Sept. 3, 2025 Tr. at 46-47.

11.    Thus, Vitale cannot move to strike Mr. Wurst's testimony nor vacate any of the Orders.

12.     Because Vitale lacks standing to challenge the involuntary bankruptcy, her Motion must be denied.

### B.      THE MOTION IS MERITLESS

13.     Vitale's citations to 18 U.S.C. §§ 201(c)(2) and (c)(3) are inapposite.  Motion at 6-7.  Those sections make it a crime to purchase testimony of a fact witness.  However, Section 201 specifically provides that it does not prohibit "the payment by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred *and the reasonable value of time lost* in attendance at any such trial, hearing or proceeding...." 18 U.S.C. § 201(d) (emphasis added).

14.     Indeed, generally a fact witness may be for: (1) reasonable expenses incurred by a witness in attending trial or testifying; or (2) reasonable compensation for the loss of a witness' time in attending trial or testifying. *See Goldstein v. Exxon Research and Engineering Co.*, Civ. No. 95–2410, 1997 WL 580599, *1–2 (D.N.J. Feb. 28, 1997).

15.     The conduct complained of falls squarely in this category.

16.     Mr. Wurst—an attorney for Petitioning Creditors, though not counsel of record in this case—was not paid for his testimony but rather billed the Petitioning Creditors for time he would have otherwise spent billing clients for other matters.  All of which is allowable. This includes not only testifying time, but time spent preparing for such testimony. *See, e.g. Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 682 (D. Kansas 2000) (pointing to absence of authority "supporting their argument that a person violates the anti-gratuity statute by paying a fact witness reasonable compensation for time spent in connection with legitimate, non-testifying activities such as reviewing documents in preparation for the deposition and meeting with lawyers in preparation for the deposition. In fact, the only authority the court has uncovered on this issue

suggests that such compensation is lawful. *See, e.g.*, ABA Comm. on Ethics and Professional Responsibility, Formal Op. 96–402 (1996) (Under [Model] Rule 3.4(b), occurrence witnesses may be reasonably compensated for time spent in attending a deposition or trial; for time spent in pretrial interviews with the lawyer in preparation for testifying; and for time spent in reviewing and researching records that are germane to his or her testimony).

17.     Delaware Rule of Professional Conduct 3.4(b) states that "A lawyer shall not … (b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."  Del. L. Rule Prof'l Conduct 3.4(b).  Here, Mr. Wurst billing for his time preparing or testifying is not prohibited by law.

18.     Moreover, Mr. Wurst was not directly compensated for his testimony, as Mr. Wurst did not directly receive payment from Petitioning Creditors.  Mr. Wurst received a salary from his then-employer, Armstrong Teasdale.  Armstrong Teasdale charged Petitioning Creditors for Mr. Wurst's testimony and preparation for such testimony, but Mr. Wurst did not directly receive that payment.  This arrangement is acknowledged by Vitale in her Motion.  *See* Motion at 9 (alleging that "Mr. Wurst billed for preparing and delivering testimony and that his own law firm accepted payment for those charges.").

19.     As such, charging Petitioning Creditors for Mr. Wurst's time spent preparing and testifying did not violate federal law or any ethical rules, was not fraud on the Court and does not provide a basis for striking his testimony or vacating any order of this Court.

20.     Even if Mr. Wurst's testimony was struck—and again, there is no basis to do so— it would not have any material effect on this Court's denial of Diamondhead's motion to dismiss the involuntary petition.

21.     Vitale's Motion makes no assertion that any of Mr. Wurst's testimony was false. Nor does Vitale even cite to any of Mr. Wurst's testimony.  That is because none of Mr. Wurst's testimony was material to the ultimate determination of this Court regarding the Motion to Dismiss or, if material, was not otherwise supported by the trial record.

22.     Vitale's requested remedy is also inappropriate.  Vitale's lone case supporting vacating this Court's prior orders, *In re Bressman*, 874 F.3d 142 (3d Cir. 2017),[1] is easily distinguishable.  In *Bressman*, after the court instructed the plaintiffs to submit an affidavit detailing their damages in support of their default judgment request, the plaintiffs' attorney deliberately withheld the existence of a settlement agreement and payment which offset the amount owed by the defendant *Id.* at 145.  The court further ordered a separate affidavit supporting RICO damages, which trebled the judgment amount, but also failed to disclose the settlement agreement and offsetting payment. *Id.* at 145-46.  With treble damages, the court entered a default and awarded over $15 million in damages and almost $1 million in attorneys' fees. *Id.* at 146.  After failing to collect for over ten years, the plaintiffs' attorney submitted *ex parte* applications to recover almost $31 million, accounting for post-judgment interest and, without mentioning the settlement payment, falsely stated in an affidavit that "Plaintiffs have not seen a dime of that amount." *Id.*  Based on the attorneys' conduct, the bankruptcy court vacated the default judgment, *id.*, which the Third Circuit affirmed on an abuse of discretion standards. *Id.* at 153.

23.     Here, the fact that Mr. Wurst—an attorney for the Petitioning Creditors—billed for his testimony and preparation for testimony, even if determined to be improper (which it is not) does not nearly rise to the level justifying vacatur of any orders as a proper sanction.

---

[1] Motion at 19.

## CONCLUSION

Wherefore, for the foregoing reasons, this Court must deny the Motion.

**ARMSTRONG TEASDALE, LLP**


_/s/ Jonathan M. Stemerman_____
Jonathan M. Stemerman (No. 4510)
1007 North Market Street, Third Floor
Wilmington, Delaware 19801
Telephone: (302) 416-9670
jstemerman@atllp.com

*Counsel to Petitioning Creditors*


Dated: April 14, 2026
    Wilmington, Delaware