IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DIAMONDHEAD CASINO CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11354 (JKS) |

**Objection Deadline: August 18, 2026, at 4:00 p.m. (ET)**
**Hearing Date: September 16, 2026, at 11:00 a.m. (ET)**

**MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER (I) APPROVING THE PRIVATE SALE OF DEBTOR'S ASSETS TO MISSISSIPPI GULF DEVELOPMENT LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

George L. Miller, chapter 7 trustee (the "Trustee" or "Seller") to the estate of the above-captioned debtor (the "Debtor"), hereby files this motion (the "Motion"), pursuant to sections 105, 363, 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing and approving: (i) the sale (the "Sale") of substantially all of the Debtor's assets (the "Assets") to Mississippi Gulf Development LLC (or its designee) ("Buyer"), free and clear of all liens, claims, interests, and encumbrances, (ii) granting related relief. In support of the Motion, the Trustee respectfully represents as follows:

**Preliminary Statement**

1. The Trustee seeks the Court's approval of a private sale to the Buyer for the sale price of $17.5 million through an all stock equity sale of the Debtor's wholly-owned subsidiary, Mississippi Gaming Corporation. The sale is the culmination of a process that began many months ago and has, in the Trustee's business judgment, yielded a proposed purchase price

that significantly maximizes the value of the Debtor's main asset – its interest in MGC, which holds title to the Gaming Property (defined below). While other interested parties may disagree about the value of MGC and the Gaming Property, no one can doubt that the sale process conducted has finally concluded in a real, actionable transaction that is in the best interests of creditors. Although the Sale is a private sale, the Trustee believes in his business judgment that it is the best value-maximizing transaction for the estate, and the Sale will still be subject to higher and better offers, including at the hearing on the Motion.

## Jurisdiction

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Trustee confirms his consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The predicates for the relief sought herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

## Background

5. On June 12, 2024 (the "Petition Date"), creditors Edson Arneault, Kathleen and James Devlin, Emerson Partners, J. Steven Emerson as Successor to Steven Emerson Roth IRA, J. Steven Emerson, John Hawley as Servicing Agent for Argonaut 2000 Partners, L.P., Steven Rothstein, and Barry and Irene Stark (collectively, the "Petitioning Creditors") filed an involuntary petition against the Debtor.

6. On July 18, 2024, the Debtor filed the *Motion of the Alleged Debtor, Diamondhead Casino Corporation, to Dismiss the Involuntary Bankruptcy Petition or, in the Alternative, to Convert the Case to a Chapter 11* [Docket No. 9] (the "Motion to Dismiss").

7. On July 30, 2025, the Court entered an opinion [Docket No. 42] and order [Docket No. 43] (the "MTD Order") denying the Debtor's Motion to Dismiss. On July 31, 2025, the Court entered the *Order for Relief in an Involuntary Case* [Docket No. 45].

8. The Trustee was appointed in these cases on August 1, 2025 [Docket No. 46] and is so qualified and acting.

## The Proposed Purchase Agreement

9. In accordance with Bankruptcy Rule 6004 and Local Bankruptcy Rule 6004-1, the relevant terms of the Stock Purchase Agreement ("SPA") are as follows:[1]

- Proposed Buyer. Mississippi Gulf Development LLC (or its designee)
- Sellers. George L. Miller, chapter 7 trustee to the Debtor's estate.
- Purchase Price. $17,500,000.00
- Asset Acquisition. The Purchased Assets consist of all of the issued and outstanding shares of capital stock (the "Shares") of Mississippi Gaming

[1] A copy of the executed SPA is attached to the proposed form of sale order as Exhibit 1 and is incorporated herein by reference.

Corporation, a Delaware corporation ("Mississippi Gaming" or "MGC"). SPA §2.01.[2]

- Excluded Assets. N/A
- Excluded Liabilities. N/A
- Court Orders. The Trustee is seeking entry of the proposed Order on or before September 16, 2026.
- Bidding Protections. N/A
- Deposit. $75,000.00.
- Requested Findings as to Successor Liability. For the reasons discussed below, pursuant to sections 363(f) and 105(a) of the Bankruptcy Code, the Trustee is seeking to sell the Assets free and clear of all liens, claims, and encumbrances.
- Relief from Bankruptcy Rule 6004(h). The Trustee is seeking a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) for the reasons discussed below.

10. The Sale is intended to be a private sale. However, the Trustee reserves all rights to accept higher and better offers for the Assets up until the hearing on the Motion.

[2] Mississippi Gaming is the owner of an approximate 400-acre undeveloped property located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (the "Gaming Property"), and holds certain rights granted by the Mississippi Gaming Commission to develop the Gaming Property for gaming use.

## Basis for Relief Requested

### A. Approval of the Sale is Warranted Under Sections 105 and 363 of the Bankruptcy Code

11. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under section 105(a) of the Bankruptcy Code, the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of section 363. 11 U.S.C. § 105(a).

12. Although the Bankruptcy Code does not explicitly set forth a standard for determining when it is appropriate for a court to authorize the sale of property of the estate, courts in this district and elsewhere have found that a debtor's sale of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Eagle Picher Holdings, Inc.*, 2005 Bankr. LEXIS 2894, at *3 (Bankr. S.D. Ohio 2005); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Boston Generating, LLC*, 440 B.R. 302, 321 (Bankr. S.D.N.Y. 2010). Once the debtor articulates a valid business justification for the sale, the business judgment rule acts as "a presumption that in making the business decision the directors of [the] corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a Debtor's management decisions.").

13. The sale of a debtor's assets is appropriate where there are sound business reasons behind such a determination. *See Myers*, 91 F.3d at 395; *see also Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (sale of substantially all assets of estate authorized where "a sound business purpose dictates such action").

14. The Trustee proposes to sell the Assets to the Buyer and has concluded that the private Sale, as set forth in the SPA, is supported by a number of sound business reasons. The purchase price represents what the Trustee believes is fair market value for the Assets. In addition, the Sale is still conditioned on the Trustee's ability to accept any higher or better offers up until the hearing on the Motion.

15. The Court previously entered a bid procedures order and approved a sale and auction process. *See* Docket No. 154. Under that process, the Trustee, with the assistance of his broker, Colliers International, marketed the Debtor's assets, including the Gaming Property. After several extensions of the sale-related deadlines, the Trustee ultimately noticed and conducted an auction on March 4, 2026. That auction yielded a high bidder that was willing to pay $5 million for the Assets. The Trustee, however, adjourned the auction to provide time to address issues relating to the structure of the proposed transaction of the high bid. Among other terms, the high bid following the auction, through the proposed asset purchase agreement, would have required additional steps before closing to include obtaining a section 363 sale order free and clear of liens, claims, and encumbrances of MGC, a non-debtor. While the Trustee explored the possibility of options to effectuate such transaction in good faith, it was ultimately not workable and, at the request of the then-high bidder, the Trustee returned its deposit.

16. The Buyer under the proposed Sale in this Motion has structured the SPA in a simpler way and has offered to pay $17.5 million, over three times the price of the prior highest bid. The Trustee believes this result is better and value-maximizing for the Debtor's estate. First, the proposed Sale to the Buyer avoids the need to take additional, and potentially riskier steps, to effectuate the transaction so it can close. The Trustee does not need to obtain a section 363 sale order free and clear of a liens or claims against the non-debtor subsidiary. Second, the proposed Purchase Price is much greater than prior highest bid. The proposed sale is subject to bond financing of not less than $268,500,000. The Trustee is informed that the Buyer will soon obtain necessary approvals through the City of Diamondhead, Mississippi for the proposed development project for the Gaming Property.

17. Thus, the Trustee believes there are sound business reasons to justify this private Sale and to consummate the SPA. The Purchase Price is fair and reasonable consideration for the Assets in light of the circumstances..

18. For the reasons noted above, the immediate sale of the Assets and closing under the SPA is supported by sound business reasons and is in the best interests of the Debtor's estate. Accordingly, the Trustee requests approval of the Sale under section 363(b) of the Bankruptcy Code.

**B. <u>The Sale of the Assets is Free and Clear of All Liens, Claims, and Encumbrances</u>**

19. The Buyer is only willing to purchase the Assets if those are sold free and clear of all liens, claims, and encumbrances. Accordingly, the Trustee is seeking authorization to sell the Assets free and clear of all liens, claims, and encumbrances to maximize value.

20. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in a bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
> > 11 U.S.C. § 363(f).

21. Section 363(f) of the Bankruptcy Code provides for the sale of property "free and clear of any interests." The term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code. *Folger Adam Sec. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 259 (3d Cir. 2000). In *Folger Adam*, the Third Circuit specifically addressed the scope of the term "any interest." *Id.* at 258. The Third Circuit observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is toward "a broader interpretation which includes other obligations that may flow from ownership of the property." *Id.* (citing 3 Collier on Bankruptcy 363.06[1]). As determined by the Fourth Circuit in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996), a case cited approvingly and extensively by the Third Circuit in *Folger Adam*, the scope of section 363(f) of the Bankruptcy Code is not limited to *in rem* interests. Thus, the Third Circuit in *Folger Adam* stated that *Leckie* held that the debtors "could sell their assets under § 363(f) free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

22. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the Assets free and clear of all liens, claims, and encumbrances. *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same). Moreover, a trustee or debtor in possession has broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

23. The Trustee submits that it is appropriate to sell the Assets on a final "as is," "where is," and "how is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code, because one or more of the tests of section 363(f) are satisfied with respect to such Sale. In particular, known lienholders will receive notice and will be given sufficient opportunity to object to the relief requested. Such lienholders that do not object to the Sale should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) (citations omitted) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold."); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that a creditor's failure to object to a sale free and clear of liens, claims, and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same).

24. In addition, the Trustee proposes that any liens, claims, and encumbrances asserted against the Assets will be transferred to and attach to the proceeds of such Sale in the same order of priority and with the same validity, force, and effect that such creditor had prior to the Sale, subject to any claims and defenses that the Trustee and the Debtor's estate may have with respect thereto. *See Folger Adam*, 209 F.3d at 259; *In re Elliot*, 94 B.R. at 345; *In re Circus Time, Inc.*, 5 B.R. 1, 7 (Bankr. D. Me. 1979). Therefore, the Trustee may sell the Assets free and clear of all liens, claims, and encumbrances on the terms set forth in the SPA.

**C. Good Faith of Buyer Under Section 363(m) of the Bankruptcy Code**

25. Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Third Circuit in *Abbotts Dairies* has held that:

> The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

*Abbotts Dairies*, 788 F.2d at 147 (citations omitted); *see also Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.");

*In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998); *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate Real Property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

26. The SPA was a negotiated, arm's-length transaction in which the Buyer acted in good faith and in compliance with the *Abbotts Dairies* standards. The Buyer is not a current "insider" or "affiliate" as defined in section 101 of the Bankruptcy Code. The Trustee thus requests that the Court find that the Buyer is acquiring the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

27. Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Specifically, section 363(m) provides "the reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." *See Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001) ("To promote certainty and finality in bankruptcy sales, § 363(m) prohibits the reversal of a sale to a good faith purchaser of bankruptcy estate property if a party failed to obtain a stay of the sale."); *In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("[P]ursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal.").

28. Although neither the Bankruptcy Code nor the Bankruptcy Rules define "good faith purchaser," the United States Court of Appeals for the Third Circuit has held that the misconduct that would destroy a purchaser's good faith status at a judicial sale typically involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies*, 788 F.2d 143, 147-48 (3d Cir. 1986) (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.*, 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 833, 839 (D.N.J. 1995); *Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.*, 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a [buyer]'s good faith status at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In re Bakalis*, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

29. The terms and conditions of the Sale to are to be negotiated by the Trustee and Buyer at arm's-length and in good faith with each of the parties represented by counsel. Accordingly, the Trustee will request the Court determine at the Sale Hearing that the winning bidder and proposed buyer be entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

**D. A Private Sale is Appropriate**

30. Bankruptcy Rule 6004(f) and Local Rule 6004-1(b)(iv)(D) permit a debtor to conduct a private sale pursuant to section 363 of the Bankruptcy Code. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1); *see also Berg v. Scanlon (In re Alisa*

*P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the discretion of the trustee . . . .").

31. Accordingly, in light of Bankruptcy Rule 6004(f) and the case law regarding section 363 sales, a trustee may conduct a private sale if a good business reason exists. *See, e.g.*, *In re MF Glob., Inc.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) ("The business judgment of a trustee is entitled to great deference."); *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing a private sale of the debtors' tire company where the "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming the right of a chapter 11 debtor to transfer assets by private sale).

32. Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) of the Bankruptcy Code when there has been a valid business reason for not conducting an auction. *See, e.g.*, *In re Aquion Energy, Inc.*, No. 17-10500 (KJC) (Bankr. D. Del. May 30, 2017) (approving a private sale of machinery and equipment for over $400,000); *In re Evergreen Int'l Aviation, Inc.*, No. 13-13364 (MFW) (Bankr. D. Del. Feb. 26, 2014) (approving private sale of helicopters for $350,000); *In re Buffets Holdings, Inc.*, No. 08-10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving a private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving a private sale of real property for approximately $3.8 million); *In re Wellman,*

*Inc.*, No. 08-10595 (SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving a private sale of an industrial complex for $17.9 million).

33. The Trustee submits that the proposed private Sale to the Buyer in accordance with the SPA is appropriate in light of the facts and circumstances of these chapter 7 cases. Specifically, the Trustee already conducted a court-approving marketing and sale process, following this Court's entry of a bid procedures order. *See* Docket No. 154 (the "Bid Procedures Order"). As noted above, an auction was conducted pursuant to the Bid Procedures Order and resulted in a high bidder; however, the proposed transaction structure would have required a more complicated process and additional hurdles before closing on such a sale. Unfortunately, that proposed transaction structure created too many risks and was ultimately not actionable, and the Trustee returned that bidder's deposit as requested.

34. Here, the proposed private Sale to the Buyer requested in this Motion is simpler in structure (an all equity sale of the Debtor's shares) and higher in price ($17.5 million) by over three times the previous highest bidder. As a result, the Trustee believes the proposed Sale requested in this Motion is the best value-maximizing transaction for the Debtor's estate in these circumstances. A further long and complicated sale process under the Bid Procedures Order and associated bidding procedures and conducting an auction is unlikely to net the estate a significant appreciable benefit through a substantially increased sale price, and, importantly, there would be no guarantee that another bidder would agree to a similar transaction structure. Finally, the Sale remains subject to higher or better bids up until the sale hearing, based upon the Purchase Price.

35. As a result, the transaction with the Buyer allows the Trustee to maximize the value of the Debtor's assets and provides a significant benefit to the Debtor's estate. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Trustee believes that

the Buyer's offer is the highest and best offer for the Assets at this time, the Trustee requests that the Court approve the proposed private Sale to the Buyer in accordance with the SPA.

**Reservation of Rights**

36. Notwithstanding the requested relief for approval of the Sale as a private sale, the Trustee reserves all rights, in the exercise of his business judgment, to accept any higher or better offers for an alternative value-maximizing transaction for the Assets, up until the hearing to approve the Sale, that the Trustee determines, in the exercise of his business judgment, will provide a greater value for the estate. Any such offers shall be subject to the Bid Procedures Order and the associated bidding procedures, and the Trustee reserves all rights to conduct a further auction in the exercise of his business judgment.

**Waiver of Bankruptcy Rule 6004(h)**

37. The Buyer is ready, willing, and able to close the Sale. Because the liens, claims, and encumbrances will attach to the sale proceeds, the Trustee submits that there is no prejudice to creditors by having an order approving the Motion become effective immediately upon its entry. Accordingly, the Trustee is requesting a waiver of the fourteen-day stay requirement under Bankruptcy Rule 6004(h).

**Notice**

38. The Trustee will provide notice of this Motion by serving a copy of the Motion via email if available (or first class mail if email is not available) upon: (a) the Office of the United States Trustee; (b) all persons and entities known by the Trustee to have expressed an interest to the Trustee in the Assets since the Petition Date; (c) all persons and entities known by the Trustee to have asserted any lien, claim, interest, or encumbrance in the Assets; and (d) parties requesting notice in these cases pursuant to Bankruptcy Rule 2002.

**No Prior Relief**

39. No previous motion for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Trustee respectfully requests that the Court: (a) grant the Motion; (b) enter the Order approving the Sale; and (c) grant such other and further relief that the Court deems proper and just.

Dated: August 4, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Peter J. Keane*

Bradford J. Sandler (DE Bar No. 4142)
Peter J. Keane (DE Bar No. 5503)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: bsandler@pszjzjlaw.com
pkeane@pszjzjlaw.com
ecorma@pszjlaw.com

*Counsel to George L. Miller, Chapter 7 Trustee*