**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DIAMONDHEAD CASINO CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11354 (JKS)<br><br>**Re: Docket No. 218** |

**DECLARATION OF GEORGE L. MILLER IN SUPPORT OF MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER (I) APPROVING THE PRIVATE SALE OF DEBTOR'S ASSETS TO MISSISSIPPI GULF DEVELOPMENT LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

I, George L. Miller, declare as follows:

1. I make this declaration (this "Declaration") in support of the *Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 218] (the "Motion").[1]

2. I am the duly-appointed chapter 7 trustee (the "Trustee") to the estate of the above-captioned debtor (the "Debtor"). Since my appointment on August 1, 2025, I have familiarized myself with the Debtor's assets, liabilities, and financial affairs.

3. All facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and other information prepared or collected by my advisors, representatives, or counsel at my direction, interviews of prior management, or my opinion based on my review and analysis of the Debtor's books and records. If I were called upon to testify, I

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

could and would testify competently to the facts set forth herein, and, as the Trustee, I am the authorized representative to submit this Declaration on behalf of the Debtor's estate.

4. By the Motion, I, on behalf of the Debtor's estate, seek approval of: (i) the sale (the "Sale") of essentially all of the Debtor's assets (the "Assets") through an all stock equity sale of the Debtor's wholly-owned non-debtor subsidiary, Mississippi Gaming Corporation ("MGC"); (ii) the sale free and clear of all liens, claims, interests, and encumbrances; and (iii) related relief.

5. I filed the Motion on October 7, 2025. On November 5, 2025, the Court entered an order (the "Bid Procedures Order") approving the Bid Procedures [Docket No. 154]. The Bid Procedures Order established certain dates and deadlines in connection with the Sale.

6. I, along with my professionals at Miller Coffey Tate LLP ("MCT") Pachulski Stang Ziehl & Jones LLP ("PSZJ"), and Colliers Louisiana, LLC ("Colliers"),[2] have conducted a marketing and sale process with respect to the Assets, including the stock of the Gaming Property. After several extensions of the sale-related deadlines [*see* Docket No. 182], I ultimately noticed and conducted an auction on March 4, 2026. That auction yielded a bidder that was willing to pay $5 million for the Gaming Property. However, I adjourned the auction to provide time to address issues relating to the structure of the proposed transaction of the bid. Among other terms, the bid following the auction, through the proposed asset purchase agreement, would have required additional steps before closing to include obtaining a section 363 sale order free and clear of liens, claims, and encumbrances of the Gaming Property, which is owned by MGC and is a non-debtor wholly-owned subsidiary of the Debtor. With the assistance of my advisors, I explored the possibility of options to effectuate such transaction in good faith, but I ultimately determined that

---

2 Colliers was retained by the Trustee as real estate broker for the marketing and sale of the Assets. *See* Docket Nos. 133, 149.

the transaction structure was not workable. At the request of that bidder, I returned its deposit on or about June 15, 2026.

7. On or about June 4, 2026, Colliers received a draft stock purchase agreement ("SPA") from Mississippi Gulf Development LLC (the "Buyer"). Following receipt of the draft SPA, and with the assistance of my counsel, I negotiated changes to the draft SPA.

8. The Buyer under the proposed Sale in this Motion has structured the SPA in a way that is more acceptable than any prior proposed transaction, including any of the prior bids or offers in connection with the auction process and auction held on March 4, 2026. The Buyer has offered to pay $17.5 million for the Debtor's Assets, over three times the price of the prior $5 million bid. I believe this result is higher and better and resulted in a more acceptable and value-maximizing transaction for the Debtor's estate. First, the proposed Sale to the Buyer avoids the need to take additional, and potentially riskier steps, to effectuate the transaction so it can close. Through the SPA, I do not need to obtain a section 363 sale order free and clear of liens or claims against the Gaming Property. Second, the proposed Purchase Price is much greater than any prior bid. The proposed sale is subject to bond financing of not less than $268,500,000. I am informed that the Buyer will soon obtain necessary approvals through the City of Diamondhead, Mississippi for the proposed development project for the Gaming Property.

9. In my opinion, there are sound business reasons to justify this private Sale and to consummate the SPA. The Purchase Price is fair and reasonable consideration for the Assets in light of the circumstances.

10. I believe that the Buyer has negotiated and acted at all times in good faith and is entitled to the full protections as a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the SPA does not and will not constitute an avoidable transaction pursuant to section

363(n) of the Bankruptcy Code. The SPA and the transactions contemplated thereby present the best opportunity to maximize value for the Debtor's estate and will likely provide a full recovery for the Debtor's creditors.

11. I am informed that the Buyer is not an "affiliate" or "insider" of the Debtor as such terms are defined by the Bankruptcy Code. There has been no fraud or collusion in the Sale of the Assets or by the Buyer during the sale process. The Buyer and I have both been represented by separate advisors in connection with the negotiation and documentation of the SPA.

12. It is my position that the sale of the Assets to the Buyer free and clear of any and all liens, claims, interests, and encumbrances under section 363(f) of the Bankruptcy Code is appropriate, as notice was provided to known lienholders and prior bidders who had an opportunity to object. Moreover, any liens, claims, interests, and encumbrances will attach to the proceeds of the Sale in the same order of priority and with the same validity, force, and effect that such creditors had prior to the Sale, subject to any claims or defenses of the Debtor's estate or that I have as the Trustee.

13. Finally, I believe the circumstances support a private sale pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004(f) as opposed to a more fulsome public auction. I have already conducted a competitive sale process and an Auction with the interested bidders for the Asset, as described above. I do not believe that an additional public sale process would achieve a better result for the Debtor's estate in light of the process to date. Specifically, I believe that a long and complicated further auction and sale process is unlikely to net the estate a significant appreciable benefit through a substantially increased sale price in light of the costs and expenses for running a more fulsome and complex competitive bid and sale process.

14. However, notwithstanding the private sale nature of the requested relief, consistent with my fiduciary duties to maximize value for the Debtor's estate, I have reserved all rights to accept any higher or better offers for an alternative value-maximizing transaction for the Assets, up until the approval at the hearing on the Sale, that I determine, in the exercise of his business judgment, will provide a greater value for the estate. *See* Motion ¶36.

15. I believe that a private sale through the SPA with the Buyer offers a superior outcome over any other bids received to date, including through the prior auction process. To begin with, the prior $5 million bid was structured to require a free and clear sale of the Gaming Property, which is owned by MGC, a non-debtor subsidiary. The structure of that transaction would have required risky and potentially uncertain outcomes by either: (a) seeking to substantively consolidate MGC with the Debtor, a standard that generally requires extraordinary circumstances, among other hurdles; or (b) putting MGC into its own bankruptcy proceeding before seeking approval of such a sale. A bankruptcy of MGC would be costly, lead to further delays, and creates another layer of complexity to these proceedings. In contrast, the SPA with the Buyer is over three times the prior highest bid, does not require a section 363 free and clear sale of the Gaming Property, and is expected to be sufficient to pay off all the Debtor's creditors in full.

16. Accordingly, it is my business judgment that the SPA with the Buyer is the highest or otherwise best offer for the disposition of the Assets, the Sale of the Assets to the Buyer is in the best interests of the Debtor's estate, and the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code. For these reasons, I request that the Court authorize and approve the Sale on the terms proposed in the Motion and the SPA

17. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 14th day of September, 2026.

/s/ George L. Miller
George L. Miller