**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMONDHEAD CASINO CORPORATION, | Case No. 24-11354 (JKS) |
| Debtor. | **Re: Docket No. 218** |

**DECLARATION OF PATRICK SLAGLE IN SUPPORT OF MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER (I) APPROVING THE PRIVATE SALE OF DEBTOR'S ASSETS TO MISSISSIPPI GULF DEVELOPMENT LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

I, Patrick Slagle, declare as follows:

1. I am a Vice President and licensed real estate Broker with Colliers International DC, LLC ("Colliers DC"), which maintains an office at 1919 Pennsylvania Avenue NW, Suite 200, Washington, D.C. 20006.

2. I have 17 years of experience in the real estate industry providing capital markets advisory and strategic transaction support across a range of asset classes, including hotels, office-to-residential conversions, data centers, retail, and education facilities. Since 2009, I have worked with institutional investors, developers, and private equity sponsors to structure acquisitions, recapitalizations, and asset repositioning strategies. My expertise spans investment underwriting, financial modeling, portfolio optimization, and ground-up development planning. I hold a Bachelor of Science (BS) in Entrepreneurial & Small Business Operations from Xavier University, Cincinnati, Ohio. I am a licensed real estate broker in Washington DC and operate across the country.

3. I make this declaration (this "Declaration") in support of the *Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets*

*to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 218] (the "Motion").[1]

4. Colliers Louisiana, LLC ("Colliers LA"), which maintains an office at 650 Poydras Street, Suite 1400, New Orleans, LA 70130, was retained by the Trustee effective as of September 15, 2025, pursuant to the *Order Granting Application of George L. Miller, Chapter 7 Trustee, Pursuant To Sections 327(a) And 328 Of the Bankruptcy Code, Bankruptcy Rules 2014(a) And 2016, And Local Rule 2014-1, For Authority To Employ And Retain Colliers Louisiana, LLC as Real Estate Broker To The Chapter 7 Trustee, Effective As Of September 15, 2025* Docket No. 149]. Colliers LA has been retained to act as the Trustee's real estate broker in connection with the sale of real property (the "Gaming Property") owned by the Debtor's wholly-owned subsidiary Mississippi Gaming Corporation ("MGC").

5. I, along with Colliers DC, have been working with Colliers LA on all aspects of the marketing and sale process of the Gaming Property. (Colliers DC and Colliers LA hereafter collectively referred to as "Colliers").

6. All facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents and other information prepared or collected by Colliers, or my opinion based on my experience in the commercial real estate industry. If I were called upon to testify, I could and would testify competently to the facts set forth herein, and I am authorized to submit this Declaration on behalf of the Debtor's estate.

**Background and Marketing Process**

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

7. Colliers, along with the Trustee's professionals at Miller Coffey Tate LLP ("MCT") and Pachulski Stang Ziehl & Jones LLP ("PSZJ") have conducted a marketing and sale process with respect to the Assets, including the Gaming Property.

8. The Trustee filed the Motion on October 7, 2025. On November 5, 2025, the Court entered an order (the "Bid Procedures Order") approving the Bid Procedures [Docket No. 154]. The Bid Procedures Order established certain dates and deadlines in connection with the Sale.

9. Before and following entry of the Bid Procedures Order, Colliers engaged in an extensive marketing process for the Gaming Property and the Assets.

10. Beginning in September 2025, Colliers prepared extensive diligence materials to support a marketing effort for the Assets and the Gaming Property, including a virtual data room with various diligence materials. Colliers spearheaded an all-inclusive marketing process, which began with soliciting interest from potential financial and strategic investors for bids for the sale of the Assets and the Gaming Property. Colliers also posted information on the sale of the Gaming Property through the following listing services: (i) CoStar, the industry leading data/analytics platform; (ii) Loopnet, CoStar's public listing marketplace; (iii) LACDB (Louisiana Commercial Database), a state specific real estate listing database; (iv) CREXI, a competing real estate listing marketplace and marketing platform; (v) RCM (Real Capital Markets), a deal marketing and data room platform for investment sales; and (vi) Colliers.com, Colliers' own website for real estate listings and marketing.

11. Beginning on or about November 6, 2025, Colliers contacted 922 potential bidders. Of those parties contacted: 42 potential bidders reviewed the non-disclosure agreement required to access the full marketing materials; 30 potential bidders executed nondisclosure agreements so that they could secure access to the data room to continue their diligence processes; 35 individual

users[2] were approved and given access to the data room; and 27 users downloaded documents from the data room.

12. Given a number of pending ongoing discussions and at the request of certain bidders on the Gaming Property and the Assets, Colliers recommended certain extensions of the sale process milestones set forth in the Bid Procedures Order to permit Colliers and the Trustee additional time to conduct due diligence and have further discussions. As a result, the deadlines associated with the sale process were extended a number of times. Most recently, on February 24, 2026, the Trustee filed the *Sixth Notice of Extended Sale Deadlines* [Docket No. 182] extending certain deadlines and scheduling the Auction for the Assets on March 4, 2026.

13. Ultimately, as of the date of the Auction, Colliers received six (6) letters of intent or formal bid packages from unique interested parties for the Assets and Gaming Property, and the Trustee deemed each of those bids/offers as Qualified Bidders for purposes of the Auction.

14. On March 4, 2026, an Auction was conducted beginning at approximately 10:44 a.m. (ET) and adjourned at approximately 11:41 a.m. (ET) the same day. A stenographic record was made of the Auction proceedings. In addition, Colliers engaged in negotiations and discussions with all Qualified Bidders before and throughout the Auction in an effort to promote the highest or best outcome for the Debtor and its estate.

15. At the adjournment of the auction, a high bidder was willing to pay $5 million for the Assets. The Auction was adjourned to address issues relating to the structure of the proposed transaction of the high bid. Among other terms, I understand that the high bid following the Auction, through the proposed asset purchase agreement, would have required additional steps before closing to include, on information and belief, obtaining a section 363 sale order free and

[2] Individual "users" include potential bidders as well as representatives of Colliers and the Trustee.

clear of liens, claims, and encumbrances of the Gaming Property, which is owned by MGC, a non-debtor wholly-owned subsidiary of the Debtor.

16. Following the March 4, 2026 auction, Colliers continued to market the Gaming Property and the Assets. Colliers continued to receive interest from certain other potential bidders on the Gaming Property and the Assets, and 2 additional letters of intent with offers greater than the high bidder were received. While the additional offers showed initial proof of funds, Colliers was not able to determine if the parties would be able to perform.

17. On or about June 4, 2026, Colliers received a draft stock purchase agreement ("SPA") from Mississippi Gulf Development LLC (the "Buyer").

18. Following receipt of the draft SPA, the Trustee and his counsel negotiated changes to the draft SPA. I am informed the Trustee ultimately determined to move forward with a private sale of the Assets, including the Gaming Property, through the SPA with the Buyer. I am also informed that the Assets, including the Gaming Property, remain subject to higher or better offers for an alternative value-maximizing transaction for the Assets, up until the hearing to approve the Sale, that the Trustee determines, in the exercise of his business judgment, will provide a greater value for the estate.

**The SPA Is Value-Maximizing, Contains Fair and Reasonable Terms, and Should Be Approved**

19. In my opinion, the SPA maximizes the value of the Gaming Property and the Assets. Accordingly, the SPA—the culmination of a successful marketing process —should be approved and authorized.

20. I arrived at this conclusion based upon my review of all expressions of interest or bids submitted for the Gaming Property received during these cases. Colliers has held discussions with various interested purchasers regarding the Assets, including the Gaming Property. In my

professional opinion and judgment, the SPA maximizes the value of the Gaming Property following a thorough, transparent, and open marketing process. Any and all prospective purchasers have had an extensive opportunity to access Colliers' data room, to conduct diligence on the Gaming Property, and to submit indications of interest or offers to the Trustee.

21. In my professional opinion and judgment, the terms and provisions of the SPA with the Buyer are fair and reasonable, the Gaming Property has been sufficiently and thoroughly marketed to enable me to conclude that the SPA maximizes the value of the Gaming Property. Based on the foregoing, the Court should approve the proposed Sale.

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 15 day of September 2026.

/s/ ____________________
Patrick Slagle
Colliers International DC, LLC