**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| DIAMONDHEAD CASINO CORPORATION, | Case No. 24-11354 (JKS) |
| Debtor. | **Re: Docket No. 218** |

**DECLARATION OF BRETT PASTRICK ON BEHALF OF MISSISSIPPI GULF DEVELOPMENT LLC IN SUPPORT OF MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ENTRY OF AN ORDER (I) APPROVING THE PRIVATE SALE OF DEBTOR'S ASSETS TO MISSISSIPPI GULF DEVELOPMENT LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; AND (II) GRANTING RELATED RELIEF**

I, Brett Pastrick, declare as follows:

1. I am a Manager of Mississippi Gulf Development LLC, a Wyoming limited liability company (the "Buyer"). I am authorized to submit this declaration (this "Declaration") on the Buyer's behalf. I was personally involved in the Buyer's evaluation of the Assets (defined below), its due diligence, and the negotiation of the SPA (defined below) with the Trustee.

2. I submit this Declaration in support of the *Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 218] (the "Motion")[1] filed by George L. Miller, the chapter 7 trustee (the "Trustee") of the estate of Diamondhead Casino Corporation (the "Debtor"), and in support of the findings in the proposed order approving the Sale (the "Sale

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the SPA, as applicable.

Order") that the Buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

3. Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or information provided to me by the Buyer's members, representatives, or advisors. If called upon to testify, I could and would testify competently to the facts set forth herein.

**The Buyer and the Assets**

4. The Buyer is a privately held development company formed for the purpose of acquiring and developing the Gaming Property. Neither the Buyer nor any of its principals has any prior relationship with the Debtor, Mississippi Gaming Corporation, or the Trustee other than as described herein.

5. Under the SPA, the Buyer will acquire all of the issued and outstanding shares of capital stock (the "Shares" or the "Assets") of Mississippi Gaming Corporation, a Delaware corporation and the Debtor's wholly-owned non-debtor subsidiary ("MGC"). MGC owns an approximately 400-acre undeveloped parcel located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (the "Gaming Property") and holds certain rights granted by the Mississippi Gaming Commission to develop the Gaming Property for gaming use. The Buyer intends to develop the Gaming Property (the "Project"), is in the process of obtaining the necessary approvals for the Project from the City of Diamondhead, Mississippi, and expects the Project to be funded through bond financing of not less than $268,500,000.

**Due Diligence and Arm's-Length Negotiation of the SPA**

6. Before submitting its offer, the Buyer conducted its own independent due diligence on MGC and the Gaming Property. The Buyer understands and agrees that it is

acquiring the Shares, and indirectly the Gaming Property, on an "as is, where is" basis, with all faults, and without any representations or warranties from the Trustee or the Debtor's estate, other than as expressly set forth in the SPA.

7. On or about June 4, 2026, the Buyer delivered a draft stock purchase agreement to Colliers. Over the following weeks, the Buyer and the Trustee, each acting through separate and independent counsel or advisors, negotiated the agreement at arm's length and in good faith. The Trustee obtained changes to the Buyer's initial draft, and the parties executed the Stock Purchase Agreement attached as Exhibit 1 to the proposed Sale Order (the "SPA").

8. Under the SPA, the Buyer will pay $17,500,000.00 (the "Purchase Price") for the Shares and has deposited $75,000.00 (the "Deposit") with the Trustee. The SPA provides the Buyer no break-up fee, expense reimbursement, or other bidding protection. The Purchase Price and the other terms of the SPA constitute the entire consideration for the Assets. There are no side agreements, undisclosed payments, or other arrangements between the Buyer and the Trustee, the Debtor, MGC, or any of their professionals relating to the Sale.

**The Buyer Is a Good Faith Purchaser**

9. The Buyer is not, and has never been, an "insider" or "affiliate" of the Debtor or MGC as those terms are defined in sections 101(31) and 101(2) of the Bankruptcy Code. Neither the Buyer nor, to my knowledge, any of its members, managers, officers, or affiliates (a) holds or has held any equity interest in, or claim against, the Debtor or MGC; (b) is or has been an officer, director, employee, or agent of the Debtor or MGC; or (c) has any familial, business, or financial relationship with the Debtor's current or former officers, directors, or controlling equity holders. Nor does the Buyer or any of its principals have any relationship with the

Trustee, Miller Coffey Tate LLP, Pachulski Stang Ziehl & Jones LLP, or Colliers, other than the arm's-length dealings described herein.

10. The Buyer has not offered or agreed to provide any employment, consulting arrangement, compensation, equity, or other benefit to the Trustee, any of the Trustee's professionals, or any current or former officer, director, or equity holder of the Debtor or MGC in connection with the Sale.

11. The Buyer has not colluded with any other bidder or potential bidder for the Assets. The Buyer has no agreement, arrangement, or understanding with any other person regarding the submission, amount, or terms of any bid or offer for the Assets, or regarding the sharing or division of the Assets following the Sale. The Buyer has not attempted to take unfair advantage of the Trustee, the estate, or any other bidder, and has engaged in no fraud or other misconduct in connection with the Sale.

12. The Buyer understands that, notwithstanding the private nature of the Sale, the Trustee has reserved the right to accept higher or better offers for the Assets up through approval of the Sale at the hearing on the Motion and may conduct a further auction. The Buyer has agreed to proceed on that basis and has done nothing to impede any competing offer.

**Financial Capability, Authority, and Reliance on the Sale Order**

13. The Buyer has the financial capability to consummate the Sale. The Buyer has funded the Deposit, and the Buyer will have at Closing sufficient funds to pay the balance of the Purchase Price and all other amounts payable under the SPA from committed financing. The Buyer is ready, willing, and able to close consistent with the terms of the SPA.

14. The Buyer has full limited liability company power and authority to execute, deliver, and perform the SPA, and its execution and performance have been duly authorized by

all necessary action on the part of the Buyer. No further consent or approval of any member, manager, or third party is required for the Buyer to consummate the Sale.

15. The Buyer would not have entered into the SPA, and will not consummate the Sale, absent (a) the transfer of the Shares free and clear of all liens, claims, interests, and encumbrances under section 363(f) of the Bankruptcy Code, and (b) the Court's findings that the Buyer is a good faith purchaser entitled to the protections of section 363(m) and that the Sale is not subject to avoidance under section 363(n) of the Bankruptcy Code. These findings were material inducements to the Buyer's agreement to pay the Purchase Price. The Buyer supports the Trustee's request for a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) and consents to the jurisdiction of this Court to resolve any dispute arising under the SPA or the Sale Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 17th day of September 2026.

/s/

Brett Pastrick
Manager, Mississippi Gulf Development LLC