# **Exhibit A**

## **Revised Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DIAMONDHEAD CASINO CORPORATION,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11354 (JKS)<br><br>**Re: Docket No. 218** |

**ORDER (I) APPROVING STOCK PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF DEBTOR'S ASSETS TO MISSISSIPPI GULF DEVELOPMENT LLC FREE AND CLEAR OF ALL LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), 363(f) AND 363(m); AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Sale Motion") filed by George L. Miller, chapter 7 trustee (the "Trustee" or "Seller") to the estate of the above-captioned debtor (the "Debtor") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (this "Order") authorizing and approving: (i) the sale (the "Sale") of substantially all of the Debtor's assets (the "Assets") to Mississippi Gulf Development LLC (or its designee) ("Buyer") free and clear of all liens, claims, and encumbrances, pursuant to the Stock Purchase Agreement ("SPA") attached to this Order as **Exhibit 1**; and (ii) granting related relief, all as more fully described in the Motion; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion and the hearing on the Motion (the "Sale Hearing") have been provided; and upon consideration of the: (i) *Declaration of George L. Miller in Support of Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 229], (ii) *Declaration of Patrick Slagle in Support of Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 230], and (iii) *Declaration of Brett Pastrick on Behalf of Mississippi Gulf Development LLC in Support of Motion of George L. Miller, Chapter 7 Trustee, for Entry of an Order (I) Approving the Private Sale of Debtor's Assets to Mississippi Gulf Development LLC Free and Clear of All Liens, Claims, Interests, and Encumbrances; and (II) Granting Related Relief* [Docket No. 231]; and the relief requested in the Motion being in the best interests of the Debtor, its estate, and creditors; and the Court having reviewed the Motion; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefor; it is hereby **FOUND AND DETERMINED THAT**:

**A. Findings and Conclusions**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the

following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.** **Jurisdiction and Venue**. The Court has jurisdiction over the Sale Motion and the Sale pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and the Court having the power to enter a final order consistent with Article III of the United States Constitution; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

**C.** **Statutory Predicates**. The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105 and 363 and Bankruptcy Rules 2002 and 6004.

**D.** **Notice**. Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the sale contemplated under the SPA (the "Sale"), the Sale Hearing, or of the entry of this Order have been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007, and Local Rule 6004-1. Such notice was good and sufficient and appropriate under the particular circumstances. No other or further notice of the Sale Motion, including, without limitation, the Sale, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

**E.** **Opportunity to Object**. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

**F.** **<u>Title to the Assets</u>**. The Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code. The Sale of the Assets is a sale "as is," "where is," and with all faults.

**G.** **<u>Business Justification</u>**. The Trustee has demonstrated a sufficient basis and compelling circumstances requiring him to enter into the SPA and sell the Assets under section 363 of the Bankruptcy Code. Such action is an appropriate exercise of the Trustee's business judgment and in the best interests of the Debtor, its estate, their creditors, and all other parties in interest.

**H.** **<u>Good Faith Purchaser</u>**. The SPA and the Sale contemplated thereby have been negotiated by the Trustee and the Buyer in good faith, at arm's length, and without collusion or fraud. The terms and conditions of the SPA and the Sale, including the total consideration to be realized by the Trustee pursuant to the SPA, are fair and reasonable, and the Sale are in the best interest of the Debtor, its creditors, and its estate. The Buyer is a "good faith purchaser" of the Assets, entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the Sale and assignment of the Assets. The Trustee and the Buyer have not engaged in any conduct that would cause or permit the SPA to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code. The Buyer is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

**I.** **<u>Free and Clear</u>**. The Sale and assignment of the Assets to the Buyer will be, as of the Closing, a legal, valid and effective transfer of such asset, and each such transfer and assignment vests or will vest the Buyer with all right, title, and interest of the Debtor to the Assets free and clear of all liens, "claims" (as defined in section 101(5) of the Bankruptcy Code), interests,

and encumbrances (collectively, "Liens, Claims and Encumbrance")) with any Liens, Claims, and Encumbrances to attach to the consideration to be received by the Trustee in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. A sale of the Assets other than one free and clear of all Liens, Claims, and Encumbrances would adversely impact the Debtor's estate and would likely yield substantially less value for the Debtor's estate, with less certainty than the Sale. Therefore, the Sale contemplated by the SPA is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

**J.** **Satisfaction of 363(f) Standards**. The Trustee may sell and assign the Assets free and clear of all Liens, Claims, and Encumbrances, because, with respect to each creditor asserting a Lien, Claim, and Encumbrance one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)–(5) has been satisfied.

**K.** **Compliance with Bankruptcy Code.** The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), and 363(m) and all of the applicable requirements of such sections have been or will be complied with in respect of the Sale as of the effective date of assignment. The Sale contemplated by the SPA (as it relates to the Debtor and the Assets) are in the best interests of the Debtor and its estate, creditors, interest holders and all other parties in interest herein; and it is therefor,

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. **Relief Granted**. The relief requested in the Sale Motion is granted as set forth herein.

2. **Objections Overruled**. All objections and responses to the Sale Motion, this Order, or the relief granted herein that have not been overruled, withdrawn, waived, settled, or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3. **Notice**. The form and manner of notice of the Motion and the proposed Sale under the SPA is hereby approved as providing good and sufficient notice to all creditors and parties in interest pursuant to the Bankruptcy Rules and the Local Rules.

4. **Approval**. The Sale and the SPA, in substantially the form attached hereto as **Exhibit 1**, and all of the terms and conditions thereof, are approved. The Trustee is hereby authorized and empowered to enter into, and to perform the obligations under, the SPA and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the SPA.

5. **Business Justification**. The relief requested in the Sale Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest. Upon the record made at the Sale Hearing, the Trustee has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion. The Trustee's decision to enter into the SPA and perform thereunder is a reasonable exercise of his business judgment.

6. **Good Faith Purchaser**. The Buyer is a good faith purchaser of the Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the SPA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order or the SPA, as the case may be.

7. **Section 363(n) of the Bankruptcy Code**. The Sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8. **Valid Transfer**. Effective as of the Closing (a) the sale and assignment of the Asset by the Trustee to the Buyer shall constitute a legal, valid and effective transfer of the Assets and vests the Buyer with all right, title, and interest of the Debtor in and to the Assets, free and clear of all Liens, Claims, and Encumbrances, pursuant to section 363(f) of the Bankruptcy Code.

9. **No Bulk Sale**. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the transactions contemplated by the SPA.

10. **Free and Clear**. Upon the Closing, the Trustee is authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and assign the Assets to the Buyer. Following the Closing, no holder of any Lien, Claim, or Encumbrance on the Assets may interfere with the Buyer's use and enjoyment of the Assets based on or related to such Lien, Claim, or Encumbrance, and no interested party may take any action to prevent, interfere with, or otherwise enjoin consummation of the Sale.

11. **Transfer of Title and Interests**. All of the Debtor's interests in the Assets to be acquired by the Buyer under the SPA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Assets acquired by the Buyer under the SPA and/or a bill of sale or assignment transferring indefeasible title and interest in the Assets to the Buyer.

12. **Cooperative Energy Easement**. The Trustee is authorized to execute any necessary documentation to complete the granting of an easement (the "Easement") in favor of

Cooperative Energy on the property owned by Mississippi Gaming Corporation, consisting of certain real property consisting of an approximate 400-acre undeveloped property known as and located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (including any related or contiguous parcels, all improvements now or hereafter made, and all appurtenances thereto, the "Gaming Property"), pursuant to orders entered by the Special Court of Eminent Domain of Hancock County, Mississippi, Case No. 23CO1:23-cv-00153, captioned *Cooperative Energy, a Mississippi Electric Cooperative v. Mississippi Gaming Corporation, et al.* The Buyer acknowledges it has had the chance to review documents regarding the Easement in conducting due diligence in preparing for the Sale, and the Buyer agrees that the Assets, including the Gaming Property, are being purchased subject to the Easement, notwithstanding any other findings or provisions of this Order.

13. **No Successor Liability**. The Buyer shall not have any liability for any obligation of the Debtor arising under or related to any of the Assets prior to the date of Closing. Without limiting the generality of the foregoing, the Buyer shall not be liable for any claims against the Debtor or any of its predecessors or affiliates solely by virtue of its acquisition of the Assets. By virtue of the Sale, the Buyer and its affiliates, successors, and assigns shall not be deemed or considered to (a) be a legal successor, or otherwise be deemed a successor to the Debtor; (b) have, *de facto* or otherwise, merged with or into the Debtor; or (c) be a continuation or substantial continuation, or be holding itself out as a mere continuation, of the Debtor or its estate, business, or operation, or any enterprise of the Debtor, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtor or the Debtor's estate. The Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor, or transferee

liability, labor law, *de facto* merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date.

14. If any person or entity that has filed statements (including UCC-1 financing statements) or other documents or agreements evidencing encumbrances on, or interests in, all or any portion of the Assets shall not have delivered to the Trustee, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of encumbrances, or any other documents necessary for the purpose of documenting the release of all encumbrances or interests that the person or entity has or may assert, the Trustee is hereby authorized, and the Buyer is hereby authorized on behalf of the Debtor's estate and the Trustee, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Assets.

15. This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title to or interest in any of the Assets.

16. The failure specifically to include any particular provision of the SPA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that that SPA be authorized and approved in its entirety; *provided, however*, that this Order shall govern if there is any inconsistency between the SPA and this Order.

17. **Buyer Standing**. The Buyer is a party in interest and shall have standing to appear and be heard on all issues related to or otherwise connected with this Order, the Sale, or the SPA.

18. **Immediate Effect**. Notwithstanding any applicability of Bankruptcy Rules 6004, 6006, 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

19. **Amendments**. The SPA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

20. **Time Periods**. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

21. **Governing Terms**. To the extent this Order is inconsistent with any prior order these cases, the terms of this Order shall govern. To the extent there is any inconsistency with between the terms of this Order and the terms of the SPA (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

22. **Retention of Jurisdiction**. The Court shall retain jurisdiction to: (a) interpret, implement and enforce the terms and provisions of this Order and the SPA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects; and (b) to decide any disputes concerning this Order and the SPA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the SPA and this Order.

# **Exhibit 1**

**SPA**

# STOCK PURCHASE AGREEMENT

between

**GEORGE L. MILLER, AS CHAPTER 7 TRUSTEE OF DIAMONDHEAD CASINO CORPORATION**

and

**MISSISSIPPI GULF DEVELOPMENT LLC**

dated as of

July 30, 2026

# STOCK PURCHASE AGREEMENT

This STOCK PURCHASE AGREEMENT (this "**Agreement**"), dated as of July 30, 2026, is entered into between MISSISSIPPI GULF DEVELOPMENT LLC, a Wyoming limited liability company ("**Buyer**"), and George L. Miller, solely in his capacity as Chapter 7 trustee (in such capacity, "**Seller**" or the "**Trustee**" and, together with Buyer, the "**Parties**") for the bankruptcy estate of DIAMONDHEAD CASINO CORPORATION, a Delaware corporation (the "**Estate**") in Case No. 24-11354-JKS (the "**Bankruptcy Case**") pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

## Recitals

WHEREAS, the Estate owns all of the issued and outstanding shares of common stock (the "**Shares**"), of Mississippi Gaming Corporation, a Delaware corporation (the "**Company**");

WHEREAS, the Company is the owner of an approximate 400-acre undeveloped property located at 7051 Interstate 10, Diamondhead, Mississippi 39525 (the "**Property**"); and

WHEREAS, Seller wishes to cause the Estate to sell to Buyer, and Buyer wishes to purchase from the Estate, the Shares, subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

The following terms have the meanings specified or referred to in this Article ARTICLE I:

"**Affiliate**" of a Person means any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

"**Agreement**" has the meaning set forth in the preamble.

"**Approval Order**" has the meaning set forth in Section 5.01.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

"**Bidding Procedures**" means the bidding procedures attached as Exhibit 1 to the Procedures Order.

"**Business Day**" means any day except Saturday, Sunday or any other day on which commercial banks located in New York, New York are authorized or required by Law to be closed for business.

"**Buyer**" has the meaning set forth in the preamble.

"**Closing**" has the meaning set forth in Section Section 2.04.

"**Closing Date**" means the date on which the Closing occurs.

"**Company**" has the meaning set forth in the recitals.

"**Confidentiality Agreement**" means, if applicable, the Confidentiality Agreement entered into between Buyer and Seller.

"**Disclosure Schedules**" means the Disclosure Schedules delivered by Seller and Buyer concurrently with the execution and delivery of this Agreement.

"**Encumbrance**" means any lien, pledge, mortgage, deed of trust, security interest, charge, claim, easement, encroachment or other similar encumbrance.

"**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

"**Governmental Order**" means any order, writ, judgment, injunction, decree, stipulation, determination or award entered by or with any Governmental Authority.

"**Knowledge of Seller or Seller's Knowledge**" or any other similar knowledge qualification, means the actual knowledge of the Trustee, without any duty of inquiry.

"**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

"**Material Adverse Effect**" means any event, occurrence, fact, condition or change that is materially adverse to (a) the value of the Property, or (b) the ability of Seller to consummate the transactions contemplated hereby; *provided, however,* that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting property located in the geographic region in which the Property is located; (iii) any changes in financial, banking or securities markets in general, including any disruption thereof and any decline in the price of any security or any market index or any change in prevailing interest rates; (iv) acts of war (whether or not declared), armed hostilities or terrorism, or the escalation or worsening thereof; (v) any action required or permitted by this Agreement or any action taken

(or omitted to be taken) with the written consent of or at the written request of Buyer; (vi) any matter of which Buyer is aware on the date hereof; (vii) any changes in applicable Laws or accounting rules (including GAAP); (viii) the announcement, pendency or completion of the transactions contemplated by this Agreement; (ix) any natural or man-made disaster or acts of God; or (x) any epidemics, pandemics, disease outbreaks, or other public health emergencies. For the avoidance of doubt, neither the filing or pendency of the Bankruptcy Case nor any actions taken in furtherance of the Bankruptcy Case or the transactions contemplated by this Agreement, nor the consequences or effects of or changes or developments arising from the filing or any such actions shall be deemed to be or to give rise to a Material Adverse Effect for purposes of this Agreement.

"**Outside Date**" has the meaning set forth in Section 2.04.

"**Procedures Order**" means the order entered by the Bankruptcy Court [Docket No. 154] approving the Bidding Procedures.

"**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

"**Seller**" has the meaning set forth in the preamble.

"**Shares**" has the meaning set forth in the recitals.

"**Transactions**" means the sale of the Shares pursuant to this Agreement.

## ARTICLE II
## PURCHASE AND SALE

**Section 2.01 Purchase and Sale.** Upon the terms and subject to the conditions set forth in this Agreement and entry of the Approval Order, on the Closing Date, Seller shall sell, assign, transfer, convey and deliver (pursuant to Sections 363 and 365 of the Bankruptcy Code) to the Buyer, free and clear of all Encumbrances to the extent provided in the Approval Order, the Estate's right, title and interest in the Shares, for the consideration specified in Section Section 2.02.

**Section 2.02 Purchase Price.**

(a) The aggregate purchase price for the Shares shall be $17,500,000 (the "**Purchase Price**").

(b) In accordance with the requirements of the Bidding Procedures, Buyer has deposited with the Trustee an amount equal to $75,000 (the "**Deposit**") in immediately available funds. The Deposit shall become nonrefundable upon the termination of the transactions contemplated by this Agreement (the "**Transactions**") by reason of Buyer's

default of any obligation hereunder, including, without limitation, Buyer's failure to consummate the Closing when required hereunder and any termination of this Agreement pursuant to Section 7.01(c) below (a "**Buyer Default Termination**"). At the Closing, the Deposit shall be credited and applied toward payment of the Purchase Price. In the event the Deposit becomes nonrefundable by reason of a Buyer Default Termination, the Trustee shall retain the Deposit for the benefit of the Estate. If this Agreement is terminated other than as a result of a Buyer Default Termination, the Trustee shall return the Deposit to Buyer.

**Section 2.03 Transactions to be Effected at the Closing.** At the Closing:

(a) Buyer shall deliver to Seller the Purchase Price, less the Deposit, by wire transfer of immediately available funds to an account designated in writing by Seller to Buyer prior to the Closing;

(b) Seller shall deliver to Buyer stock certificates evidencing the Shares, free and clear of all Encumbrances to the extent provided in the Approval Order, duly endorsed in blank or accompanied by stock powers or other instruments of transfer duly executed in blank.

**Section 2.04 Closing.** The Closing of the transactions provided for herein (the "**Closing**") shall take place remotely by electronic delivery of the documents to be executed and delivered at the Closing or at such place or places and in such other manner as the Parties may mutually agree upon. The Closing shall be held upon the earlier to occur of (i) the second Business Day following the satisfaction of the last of the conditions set forth in Article VI below, and (ii) sixty (60) days following the date of this Agreement (as such date may be extended pursuant to this Section 2.04 or by mutual written agreement of the Parties, the "**Outside Date**"); provided, however, Seller, in its sole and absolute discretion, shall have the right and option, upon written notice delivered to Buyer, to extend the Outside Date by up to a period of thirty (30) days. Until this Agreement is terminated, the Parties shall continue to work to satisfy all conditions to Closing and the transaction contemplated herein shall close as soon as such conditions are satisfied or waived.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF SELLER

Except as set forth in the Disclosure Schedules, Seller represents and warrants to Buyer that the statements contained in this Article ARTICLE III are true and correct as of the date hereof.

**Section 3.01 Organization and Authority.** The Estate is a corporation duly organized under the Laws of the state of Delaware. Subject to entry of the Approval Order, Seller has all necessary corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. This Agreement has been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) subject to the entry of the Approval Order, this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms, except

as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 3.02 Organization, Authority and Qualification of the Company.** The Company is a corporation duly organized under the Laws of the state of Delaware.

**Section 3.03 Capitalization.**

(a) All of the outstanding shares of capital stock of the Company the ("Shares") are owned by the Seller. All of the Shares have been duly authorized, are validly issued, fully paid and non-assessable, and are owned of record and beneficially by the Estate, free and clear of all Encumbrances, other than those Encumbrances set forth in Section Section 3.03(a) of the Disclosure Schedules.

(b) There are no outstanding or authorized options, warrants, convertible securities or other rights, agreements, arrangements or commitments of any character relating to the capital stock of the Company or obligating the Company to issue or sell any shares of capital stock of, or any other interest in, the Company.

**Section 3.04 No Conflicts; Consents.** Subject to the entry of the Approval Order, the consummation of the Transactions, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not: (i) conflict with or result in a breach of the articles of incorporation, by-laws or operating agreement, as applicable, of the Estate; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority, or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which the Estate is a Party, except in the case of clauses (ii) and (iii) hereof, as would not reasonably be expected to have a Material Adverse Effect.

**Section 3.05 Legal Proceedings; Governmental Orders.** Except for the Bankruptcy Case and except as set forth on **Error! Reference source not found.**3.05 of the Disclosure Schedules, to Seller's Knowledge, there is no litigation or investigation pending or threatened against or materially adversely affecting the Property, before any court or Governmental Authority, except in each case as would not reasonably be expected to have a Material Adverse Effect. To Seller's Knowledge, except for the Bankruptcy Case, the Company is not subject to any outstanding Litigation or Order, which, individually or in the aggregate, would prevent, or materially delay Seller from consummating the Transactions.

**Section 3.06 Brokers.** Except for Colliers Louisiana, LLC, no broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

**Section 3.07 No Other Representations and Warranties.** Except for the representations and warranties contained in this Article ARTICLE III (including the related portions of the Disclosure Schedules), none of Seller, the Estate, the Company or any other Person has made or makes any other express or implied representation or warranty, either written

or oral, on behalf of Seller, the Estate or the Company, including any representation or warranty as to the accuracy or completeness of any information regarding the Company furnished or made available to Buyer and its Representatives, or any representation or warranty arising from statute or otherwise in law.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this Article ARTICLE IV are true and correct as of the date hereof.

**Section 4.01 Organization and Authority of Buyer.** Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of the state of Delaware. Buyer has all necessary corporate power and authority to enter into this Agreement, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery by Buyer of this Agreement, the performance by Buyer of its obligations hereunder and the consummation by Buyer of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement constitutes a legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar Laws affecting creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding at law or in equity).

**Section 4.02 No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement, and the consummation of the transactions contemplated hereby, do not and will not: (a) result in a violation or breach of any provision of the certificate of formation or limited liability company agreement of Buyer; (b) result in a violation or breach of any provision of any Law or Governmental Order applicable to Buyer; or (c) other than the Approval Order, require the consent, notice or other action by any Person under, conflict with, result in a violation or breach of, constitute a default under or result in the acceleration of any agreement to which Buyer is a party, except in the cases of clauses (b) and (c), where the violation, breach, conflict, default, acceleration or failure to give notice would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby. Other than the Approval Order, no consent, approval, Permit, Governmental Order, declaration or filing with, or notice to, any Governmental Authority is required by or with respect to Buyer in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

**Section 4.03 Investment Purpose.** Buyer is acquiring the Shares solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof. Buyer acknowledges that the Shares are not registered under the Securities Act of 1933, as amended, or any state securities laws, and that the Shares may not be transferred or sold except pursuant to the registration provisions of the Securities Act of 1933, as amended or pursuant to an applicable exemption therefrom and subject to state securities laws and regulations, as applicable. Buyer is able to bear the economic risk of holding the Shares for an indefinite period (including total loss of its investment), and has sufficient knowledge and

experience in financial and business matters so as to be capable of evaluating the merits and risk of its investment.

**Section 4.04 Brokers.** No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

**Section 4.05 Sufficiency of Funds.** Buyer has sufficient cash on hand or other sources of immediately available funds to enable it to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement.

**Section 4.06 Legal Proceedings.** There are no actions, suits, claims, investigations or other legal proceedings pending or, to Buyer's knowledge, threatened against or by Buyer or any Affiliate of Buyer that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

**Section 4.07 Independent Investigation.** Buyer has conducted its own independent investigation, review and analysis of the Property and the Company, and acknowledges that it has been provided adequate access to the personnel, properties, assets, premises, books and records, and other documents and data of Seller and the Company for such purpose. Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated hereby, Buyer has relied solely upon its own investigation and the express representations and warranties of Seller set forth in Article ARTICLE III of this Agreement (including the related portions of the Disclosure Schedules); and (b) none of Seller, the Company or any other Person has made any representation or warranty as to Seller, the Company or this Agreement, except as expressly set forth in Article ARTICLE III of this Agreement (including the related portions of the Disclosure Schedules).

## ARTICLE V
## ADDITIONAL AGREEMENTS

**Section 5.01 Bankruptcy Matters.**

(a) **Approval Order**. In accordance with the Procedures Order, Seller shall seek an order from the Bankruptcy Court authorizing and approving this Agreement and the transaction contemplated herein, which order shall be in substantially the form and content attached as Exhibit A hereto (the "**Approval Order**"). Seller shall use commercially reasonable efforts to obtain the Approval Order and, without limiting Buyer's obligations under the immediately preceding sentence, Buyer shall reasonably cooperate, if requested by Seller, in such efforts. If the Bankruptcy Court refuses to issue the Approval Order by the Outside Date, then Buyer or Seller may terminate this Agreement in accordance with Article VII. In the event that a third party is approved by the Bankruptcy Court as the purchaser of the Shares, notwithstanding anything to the contrary in this Agreement, this Agreement shall not terminate, but rather shall become a "back-up bid" which shall remain open for acceptance by Seller for a period of fifteen (15) days following the Outside Date.

(b) **Procedures Order**. The transaction contemplated by this Agreement shall be conducted in all respects in accordance with the process and procedures established in and the provisions of the Procedures Order and Buyer agrees to be bound by the Procedures Order and the obligations thereunder, including in connection with, among other things, bidding, overbidding, the sale auction, refraining from collusion, return of deposits, and standing as a backup bidder for the Shares.

(c) **Competing Bids**. This Agreement and the transactions contemplated hereby are subject to Seller's right and ability to consider higher or better competing bids with respect to the Shares in accordance with the Procedures Order. In furtherance thereof, Seller shall have the right to, and may cause its Representatives and Affiliates to, (a) initiate contact with, solicit or encourage submission of any inquiries, proposals, offers or bids by, and negotiate with, any Person (in addition to Buyer and its Affiliates) in connection with any sale or other disposition of the Shares and (b) respond to any request for information or due diligence inquiry, or make management available for such purposes, to any such Person.

**Section 5.02 Confidentiality.** Buyer acknowledges and agrees that the Confidentiality Agreement remains in full force and effect and, in addition, covenants and agrees to keep confidential, in accordance with the provisions of the Confidentiality Agreement, information provided to Buyer pursuant to this Agreement. If this Agreement is, for any reason, terminated prior to the Closing, the Confidentiality Agreement and the provisions of this Section Section 5.02 shall nonetheless continue in full force and effect.

**Section 5.03 Transfer Taxes.** All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement (including any real property transfer tax and any other similar tax) shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees.

## ARTICLE VI
## CONDITIONS TO CLOSING

**Section 6.01 Conditions to Obligations of Buyer.** The obligations of Buyer to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Buyer's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Seller contained in Article ARTICLE III shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date), except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect.

(b) Seller shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date.

(c) The Bankruptcy Court shall have entered the Approval Order, and the Approval Order shall be unstayed and in full force and effect as of the Closing Date.

(d) Buyer shall have obtained bond financing of not less than

$ 268,500,000.00

**Section 6.02 Conditions to Obligations of Seller.** The obligations of Seller to consummate the transactions contemplated by this Agreement shall be subject to the fulfillment or Seller's waiver, at or prior to the Closing, of each of the following conditions:

(a) The representations and warranties of Buyer contained in Article ARTICLE IV shall be true and correct in all respects as of the Closing Date with the same effect as though made at and as of such date (except those representations and warranties that address matters only as of a specified date, which shall be true and correct in all respects as of that specified date), except where the failure of such representations and warranties to be true and correct would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated hereby.

(b) Buyer shall have duly performed and complied in all material respects with all agreements, covenants and conditions required by this Agreement to be performed or complied with by it prior to or on the Closing Date.

(c) The Bankruptcy Court shall have entered the Approval Order, and the Approval Order shall be unstayed and in full force and effect as of the Closing Date.

## ARTICLE VII
## TERMINATION

**Section 7.01 Termination.** This Agreement may be terminated at any time prior to the Closing:

(a) by the mutual written consent of Seller and Buyer;

(b) by Buyer by written notice to Seller if:

(i) Buyer is not then in material breach of any provision of this Agreement and there has been a material breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Seller pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Article ARTICLE VI and such breach, inaccuracy or failure cannot be cured by Seller by the Outside Date; or

(ii) any of the conditions set forth in **Error! Bookmark not defined.Error! Reference source not found.** shall not have been fulfilled by the Outside Date, unless such failure shall be due to the failure of Buyer to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by it prior to the Closing;

(c) by Seller by written notice to Buyer if:

(i) Seller is not then in material breach of any provision of this Agreement and there has been a material breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by Buyer pursuant to this Agreement that would give rise to the failure of any of the conditions specified in Article ARTICLE VI and such breach, inaccuracy or failure cannot be cured by Buyer by the Outside Date; or

(ii) any of the conditions set forth Section 6.02 shall not have been fulfilled by the Outside Date, unless such failure shall be due to the failure of Seller to perform or comply with any of the covenants, agreements or conditions hereof to be performed or complied with by it prior to the Closing;

(d) by Buyer or Seller in the event that:

(i) there shall be any Law that makes consummation of the transactions contemplated by this Agreement illegal or otherwise prohibited; or

(ii) any Governmental Authority shall have issued a Governmental Order restraining or enjoining the transactions contemplated by this Agreement, and such Governmental Order shall have become final and non-appealable; or

(e) by Seller or Buyer, if the Bankruptcy Court does not issue the Approval Order in accordance with Section 5.01(a) by the Outside Date, subject to this Agreement becoming a "back-up" bid under certain circumstances consistent with the requirements of the Procedures Order.

**Section 7.02 Effect of Termination.** In the event of the termination of this Agreement in accordance with this Article, this Agreement shall forthwith become void and there shall be no liability on the part of any Party hereto except (a) as set forth in this Article ARTICLE VII, Section 2.02(b) and Article ARTICLE VIII hereof; and (b) the Confidentiality Agreement shall survive any termination of this Agreement in accordance with its terms.

## ARTICLE VIII
## MISCELLANEOUS

**Section 8.01 Survival.** The representations and warranties of Seller and, except as provided in the last sentence of this Section 8.01, the covenants and agreements of Seller, contained in this Agreement and in any certificate delivered pursuant to this Agreement shall terminate and cease to be of any further force or effect whatsoever upon the Closing. Seller shall have no liability after the Closing for any inaccuracy in or breach of such representations and warranties. None of Buyer, or any of its Affiliates or their respective Representatives shall have recourse against Seller or the Estate under this Agreement following the Closing for any breach of or inaccuracy in any such representation or warranty or any breach or nonfulfillment of covenant, condition or agreement required to be performed or fulfilled prior to the Closing. The representations and warranties of Buyer shall survive for a period of one (1) year after the

Closing Date and, except as provided in the last sentence of this Section 8.01, the covenants and agreements of Buyer contained in this Agreement and in any certificate delivered pursuant to this Agreement shall otherwise terminate upon the Closing. Only the covenants and agreements that by their terms survive the Closing (or that contemplate action or impose obligations after the Closing) shall so survive the Closing in accordance with their respective terms.

**Section 8.02 Expenses.** Except as otherwise expressly provided herein, all costs and expenses, including, without limitation, fees and disbursements of counsel, financial advisors and accountants, incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the Party incurring such costs and expenses, whether or not the Closing shall have occurred.

**Section 8.03 Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next Business Day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective Parties at the following addresses (or at such other address for a Party as shall be specified in a notice given in accordance with this Section 8.03):

| | |
|---|---|
| If to Seller: | George L. Miller, Trustee<br>8 Penn Center, Suite 950<br>1628 John F. Kennedy Boulevard<br>Philadelphia, PA 19103<br><br>E-mail: gmiller@mctllp.com |
| with a copy to: | Pachulski Stang Ziehl & Jones LLP<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Attn: Bradford J. Sandler<br>E-mail: bsandler@pszjlaw.com |
| If to Buyer: | Mississippi Gulf Development LLC<br>10404 N 38th Street<br>Phoenix, AZ 85028<br>E-mail: bpastrick@gmail.com; and<br>davidsomealty@earthlink.net<br>Attention: Brett Pastrick and Jack Davidson |

**Section 8.04 Interpretation.** For purposes of this Agreement: (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires,

references herein: (x) to Articles, Sections, Disclosure Schedules and Exhibits mean the Articles and Sections of, and Disclosure Schedules and Exhibits attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting an instrument or causing any instrument to be drafted. The Disclosure Schedules and Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 8.05 Disclosure Schedules.** All section headings in the Disclosure Schedules correspond to the sections of this Agreement, but information provided in any section of the Disclosure Schedules shall constitute disclosure for purposes of each section of this Agreement where such information is relevant. Unless the context otherwise requires, all capitalized terms used in the Disclosure Schedules shall have the respective meanings assigned to such terms in this Agreement. Certain information set forth in the Disclosure Schedules is included solely for informational purposes, and may not be required to be disclosed pursuant to this Agreement. No reference to or disclosure of any item or other matter in the Disclosure Schedules shall be construed as an admission or indication that such item or other matter is required to be referred to or disclosed in the Disclosure Schedules. No disclosure in the Disclosure Schedules relating to any possible breach or violation of any agreement or Law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred. The inclusion of any information in the Disclosure Schedules shall not be deemed to be an admission or acknowledgment by Seller that in and of itself, such information is material to or outside the ordinary course of the business or is required to be disclosed on the Disclosure Schedules. No disclosure in the Disclosure Schedules shall be deemed to create any rights in any third party.

**Section 8.06 Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 8.07 Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

**Section 8.08 Entire Agreement.** This Agreement (including the Exhibits and Disclosure Schedules), together with the Confidentiality Agreement, constitute the entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement, the Exhibits and Disclosure

Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 8.09 Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Neither Party may assign its rights or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 8.10 No Third-Party Beneficiaries.** This Agreement is for the sole benefit of the Parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 8.11 Amendment and Modification; Waiver.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each Party hereto. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 8.12 Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.**

(a) This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (whether of the State of Delaware or any other jurisdiction).

(b) Any suit, action or other proceeding arising out of or relating to this Agreement or any transaction contemplated hereby shall be brought exclusively in the shall be brought exclusively in the Bankruptcy Court. Each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court for the purpose of any such suit, action or other proceeding. A final judgment in any such suit, action or other proceeding may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in such court, and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. Each Party further agrees that service of any process, summons, notice or document by U.S. registered mail to such Party's respective address set forth herein shall be effective service of process for any such action, suit or proceeding. Nothing in this Section 8.12(b), however, shall affect the right of any Party to serve legal

process in any other manner permitted by Law. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY OR THE ACTIONS OF SUCH PARTY IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE AND ENFORCEMENT HEREOF.

**Section 8.13 Specific Performance.** The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

**Section 8.14 Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**Section 8.15 No-recourse to Trustee.** The Buyer expressly acknowledges and agrees that the Seller is executing this Agreement and participating in the Transactions solely in his capacity as the Chapter 7 trustee of the Estate, and that in the event of any default by the Seller under this Agreement or in the event that any other claim is asserted against the Seller, the Estate or the Company in connection with this Agreement, the Seller shall in no event have any personal liability whatsoever (whether in his individual capacity or otherwise), it being expressly understood and agreed that the Buyer's sole recourse, if any, in such event shall be to the assets of the Estate.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

George L. Miller, as Chapter 7 Trustee of
Diamondhead Casino Corporation

Mississippi Gulf Development, LLC
By:_"SEE SIGNATURE BELOW
Name: Brett Pastrick
Title: Manager

Mississippi Gulf Development, LLC
By:____________
Name: Jack Davidson
Title: Manager

